UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| HARDWARE RESOURCES, INC. )<br>)<br>            Plaintiff, )<br>)<br>    v. )<br>)<br>UNITED STATES, )<br>)<br>            Defendant. )<br>) | Ct. No. 23-00150 |

# COMPLAINT

Plaintiff Hardware Resources, Inc, by and through its counsel, alleges and states as follows:

## I.   PROCEEDING UNDER REVIEW

1. This action seeks judicial review of the final scope ruling determination issued by the U.S. Department of Commerce ("Commerce") on August 2, 2023 concerning the antidumping ("AD") and countervailing duty ("CVD") orders on wood mouldings and millwork products ("WMMP") from the People's Republic of China.  See Mem. from Henry Wolfe to James Maeder re: Final Scope Ruling on the Antidumping and Countervailing Duty Orders on Wood Mouldings and Millwork Products from the People's Republic of China: Request by Hardware Resources, Inc. (Aug. 2, 2023) ("Scope Ruling").

## II.   JURISDICTION AND STANDARD OF REVIEW

2. Plaintiffs bring this action pursuant to the Tariff Act of 1930, as amended (the "Act"), sections 516A(a)(2)(A)(ii) and (B)(vi), 19 U.S.C. §§ 1516a(a)(2)(A)(ii) and (B)(vi).  This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c).

3. The standard of review, as set forth in section 516A(b)(1)(B)(i) of the Act, 19 U.S.C. § 1516a(b)(1)(B)(i), is whether the determinations, findings or conclusions of

Commerce are "unsupported by substantial evidence on the record, or otherwise not in accordance with law."

### III. STANDING

4.  Plaintiff is a U.S importer of edge-glued boards that Commerce has held to be within the scope of the scope of the AD/CVD orders on WMMP from China in Commerce's scope ruling.  See Wood Mouldings and Millwork Products From the People's Republic of China: Amended Final Antidumping Duty Determination and Antidumping Duty Order, 86 Fed. Reg. 9,486 (Feb. 16, 2021) ("AD Order"); Wood Mouldings and Millwork Products From the People's Republic of China: Countervailing Duty Order, 86 Fed. Reg. 9,484 (Feb. 16, 2021) ("CVD Order") (collectively, "Orders").  Plaintiff is, therefore, an interested party within the meaning of 19 U.S.C. § 1677(9)(A) and has standing to commence this action pursuant to 28 U.S.C. § 2631(c) and 19 U.S.C. § 1516a(d).

### IV. TIMELINESS OF THIS ACTION

5.  Plaintiff commenced this action by filing a summons on August 4, 2023, which was within thirty days after the date of mailing of Commerce's scope ruling.  See 19 U.S.C. § 1516a(a)(2)(A)(ii); Summons (Aug. 4, 2023), ECF No. 1.

6.  Pursuant to 28 U.S.C. § 2636(c), a complaint in a civil action brought under 28 U.S.C. § 1581(c) must be filed in accordance with Rule 3(a)(2) of the Rules of the U.S. Court of International Trade, requiring that a complaint be filed within thirty days of the summons.  This complaint is therefore timely filed pursuant to 19 U.S.C. § 1516a(a)(2)(A) and Rule 3(a)(2) of the U.S. Court of International Trade.

## V.     STATEMENT OF FACTS

7. On February 16, 2021, Commerce issued the Orders on WMMP from China. The Orders describe the scope as follows:

> The merchandise subject to the Orders consists of wood mouldings and millwork products that are made of wood (regardless of wood species), bamboo, laminated veneer lumber (LVL), or of wood and composite materials (where the composite materials make up less than 50 percent of the total merchandise), and which are continuously shaped wood or finger-jointed or edge-glued moulding or millwork blanks (whether or not resawn). The merchandise subject to the Orders can be continuously shaped along any of its edges, ends, or faces. The percentage of composite materials contained in a wood moulding or millwork product is measured by length, except when the composite material is a coating or cladding. Wood mouldings and millwork products that are coated or clad, even along their entire length, with a composite material, but that are otherwise comprised of wood, LVL, or wood and composite materials (where the non-coating composite materials make up 50 percent or less of the total merchandise) are covered by the scope.
>
> The merchandise subject to the Orders consists of wood, LVL, bamboo, or a combination of wood and composite materials that is continuously shaped throughout its length (with the exception of any end-work/dados), profiled wood having a repetitive design in relief, similar milled wood architectural accessories, such as rosettes and plinth blocks, and finger-jointed or edge-glued moulding or millwork blanks (whether or not resawn). The scope includes continuously shaped wood in the forms of dowels, building components such as interior paneling and jamb parts, and door components such as rails, stiles, interior and exterior door frames or jambs (including split, flat, stop applied, single- or double-rabbeted), frame or jamb kits, and packaged door frame trim or casing sets, whether or not the door components are imported as part of a door kit or set. The covered products may be solid wood, laminated, finger-jointed, edge-glued, face-glued, or otherwise joined in the production or remanufacturing process and are covered by the scope whether imported raw, coated (e.g., gesso, polymer, or plastic), primed, painted, stained, wrapped (paper or vinyl overlay), any combination of the aforementioned surface coatings, treated, or which incorporate rot-resistant elements (whether wood or composite). The covered products are covered by the scope whether or not any surface coating(s) or covers obscure the grain, textures, or markings of the wood, whether or not they are ready for use or require final machining (e.g., endwork/dado, hinge/strike machining, weatherstrip or application thereof, mitre) or packaging.
>
> All wood mouldings and millwork products are included within the scope even if they are trimmed; cut-to-size; notched; punched; drilled; or have undergone other forms of minor processing.

Subject merchandise also includes wood mouldings and millwork products that have been further processed in a third country, including but not limited to trimming, cutting, notching, punching, drilling, coating, or any other processing that would not otherwise remove the merchandise from the scope of the Orders if performed in the country of manufacture of the in-scope product. Excluded from the scope of the Orders are countertop/butcherblocks imported as a full countertop/butcherblock panel, exterior fencing, exterior decking and exterior siding products (including solid wood siding, non-wood siding (e.g., composite or cement), and shingles) that are not LVL or finger jointed; finished and unfinished doors; flooring; parts of stair steps (including newel posts, balusters, easing, gooseneck, risers, treads, rail fittings and stair stringers); picture frame components three feet and under in individual lengths; and lumber whether solid, finger-jointed, or edge-glued. To be excluded from the scope, finger-jointed or edge-glued lumber must have a nominal thickness of 1.5 inches or greater and a certification stamp from an American Lumber Standard Committee-certified grading agency. The exclusion for lumber whether solid, finger-jointed, or edge-glued does not apply to screen/"surfaced on 4 sides" (S4S) and/or "surface 1 side, 2 edges" (SlS2E) stock (also called boards) that are finger-jointed and/or edge-glued, or to finger-jointed and/or edge-glued moulding or millwork blanks (whether or not resawn). Accordingly, S4S and S1S2E stock/boards that are not finger-jointed or edge glued are excluded from the scope of the Orders.

Also excluded from the AD Order are all products covered by the scopes of the antidumping duty orders on: (1) hardwood plywood from the People's Republic of China, (2) multilayered wood flooring from the People's Republic of China, (3) wooden cabinets and vanities from the People's Republic of China, and (4) wooden bedroom furniture from the People's Republic of China.

Also excluded from the CVD Order are all products covered by the scopes of the countervailing duty orders on: (1) hardwood plywood from the People's Republic of China, (2) multilayered wood flooring from the People's Republic of China, and (3) wooden cabinets and vanities from the People's Republic of China.

Imports of wood mouldings and millwork products are primarily entered under the following Harmonized Tariff Schedule of the United States (HTSUS) numbers: 4409.10.0500, 4409.10.1020, 4409.10.1040, 4409.10.1060, 4409.10.1080, 4409.10.4010, 4409.10.4090, 4409.10.4500, 4409.10.5000, 4409.10.9020, 4409.10.9040, 4409.22.0590, 4409.22.1000, 4409.22.4000, 4409.22.5000, 4409.22.5020, 4409.22.5040, 4409.22.5060, 4409.22.5090, 4409.22.9000, 4409.22.9020, 4409.22.9030, 4409.22.9045, 4409.22.9060, 4409.22.9090, 4409.29.0665, 4409.29.1100, 4409.29.4100, 4409.29.5100, 4409.29.9100, 4412.99.5115, 4412.99.9500, 4418.91.9095, and 4421.91.9780. Imports of wood mouldings and millwork products may also enter under HTSUS numbers: 4409.10.6000, 4409.10.6500, 4409.22.6000, 4409.22.6500, 4409.29.6100, 4409.29.6600, 4412.41.0000, 4412.42.0000, 4412.49.0000, 4412.91.5115, 4412.92.5215, 4412.99.9700, 4418.20.4000, 4418.20.8030, 4418.20.8060,

4418.91.9195, 4418.99.9095, 4418.99.9195, 4421.91.9880, 4421.99.9780, and 4421.99.9880. While the HTSUS subheadings are provided for convenience and customs purposes, the written description of the scope of the Orders is dispositive.

Scope Ruling at 2-4; see also AD Order, 86 Fed. Reg. at 9,488-89; CVD Order, 86 Fed. Reg. 9,485-86.

8. On March 9, 2023, Hardware Resources filed a scope ruling application asking Commerce to determine that Hardware Resources' edge-glued boards imported from China are not covered by the scope of the Orders. See Letter on Behalf of Hardware Resources to Dep't of Commerce re: Scope Ruling Application at 1-29 (Mar. 9, 2023) (Public Version) ("Scope Ruling Application").

9. In its Scope Ruling Application, Hardware Resources described the merchandise subject to the ruling as:

> solid edge-glued boards made of white birch measuring 8-feet in length and 5/8-inches thick. The height of each board varies from 2.5 to 12 inches. The boards are finger-jointed and edge-glued. A UV coating is applied to the boards except the bottom edge that is left uncoated/unfinished. The corners of the boards are lightly sanded to smooth the corners to 1/16 of an inch. The edge-glued boards are raw materials that will be further processed into cabinet parts upon importation to the United States.
>
> At the time of import into the United States, the boards have a small mark ("score") of approximately 1 mm that has been added by a straight saw along the length of the one side of the board that is of superior wood. This mark is later used by Hardware Resources (or its customer) to know which side of the board is to be used to place the groove that is added after import. The marking is removed when a groove is added after importation into the United States.

Id. at 4-5 (emphasis added). Hardware Resources further stated that "{t}he marking has no function other than as a visual guide for where a groove will be cut after importation." Id. at 7.

10. In its Scope Ruling Application, Hardware Resources explained that after importation into the United States, the edge-glued boards will be further processed into cabinet

5

parts, specifically drawer sides, through post-importation further processing including dovetailing as well as additional machine processing such as notching and drilling. See id. at 6.

11. In its Scope Ruling Application, Hardware Resources argued that, based on the sources identified in 19 C.F.R. § 351.225(k)(1), the edge-glued boards are not subject to the scope of the Orders because they are not wood moulding or millwork products. See id. at 13-17. Specifically, the edge-glued boards are not in-scope merchandise because they are not continuously shaped wood or edge-glued wood moulding or millwork blanks. See id. Hardware Resources also explained in its Scope Ruling Application that, unlike WMMP that are intended to be used as covering for floors, walls, doors and other areas in residential and non-residential construction, the edge-glued boards are raw materials that are later produced into cabinet parts following importation. See id.

12. Hardware Resources further demonstrated that the edge-glued boards are not in-scope wood moulding or millwork blanks covered because the boards are not later machined or moulded into a final profile. See id. at 16. In addition, Hardware Resources explained that its edge-glued boards are physically distinguishable from in-scope WMMP by virtue of the UV coating because mouldings and millwork products are generally not coated with UV as they are intended to be stained or painted. Id. at 18.

13. As further support showing that the edge-glued boards are not subject to the scope based on past Commerce rulings (a source identified in 19 C.F.R. § 351.225(k)(1)), Hardware Resources cited to a past scope ruling in which Commerce found that products are not considered wood mouldings or millwork blanks where they "are not intended to be later manufactured into a moulding or piece of millwork, nor are {they} 'finger jointed or edge-glued.'" Scope Ruling Application at 16 (citing Mem. from Max Goldman to James Maeder re: Final Scope Ruling on

the Antidumping and Countervailing Duty Orders on Wood Mouldings and Millwork Products from the People's Republic of China: Request by Loveday Lumber Company, Inc. (May 16, 2022) ("Loveday Lumber Scope Ruling")).  Commerce also considered that Loveday Lumber's products are not continuously shaped because they are "produced using a straight saw, rather than a moulder or radial saw (i.e., equipment used to shape the wood)." Loveday Lumber Scope Ruling at 9.

14.     Hardware Resources further argued that the edge-glued boards are not in the scope of the Orders based on the 19 C.F.R. § 351.225(k)(2) sources because they have distinct physical characteristics, expectation of ultimate users, ultimate uses, channels of trade and manner in which they are advertised and displayed from WMMP.  See Scope Ruling at 17-22.   Specifically, Hardware Resources showed that (1) the edge-glued boards do not share the same physical characteristics as in-scope WMMP because, unlike mouldings and millwork products, the edge-glued boards are scored with a straight saw and do not have decorative profiles on their face; (2) the expectation of the ultimate users of Hardware Resources' edge-glued boards are different from the expectations of ultimate users of in-scope merchandise because purchasers of WMMP would expect to use WMMP primarily in residential and non-residential construction to adorn walls and other structural parts of a building; (3) the edge-glued boards have different ultimate uses from in-scope WMMP in that the edge-glued boards are used as raw materials that are further processed into cabinet parts after importation whereas in-scope WMMP are used in residential and non-residential construction; (4) the edge-glued boards are not sold in the same channels of trade as in-scope merchandise in that in-scope WMMP are sold through distributors, retail, or direct to end users, as well as to construction companies and contractors, lumber wholesalers, door manufacturers and home improvement retailers whereas Hardware Resources internally processes the edge-glued boards in the United States including adding a groove, dovetailing and other further

7

processing to produce cabinet parts; and (5) the edge-glued boards are advertised and displayed in a different manner than in-scope WMMP because unlike in-scope merchandise that is advertised for moulding and millwork applications, Hardware Resources does not advertise or display the edge-glued boards in the condition that they are imported because the boards are generally processed into cabinets or sold to downstream customers for that same use after importation.

15. On August 2, 2023, Commerce issued its final ruling on Hardware Resources' Scope Ruling Application. Referencing the sources identified in 19 C.F.R. § 351.225(k)(1), Commerce determined that the edge-glued boards are covered by the Orders because they "match the physical characteristics of merchandise subject to the Orders, as they are made of wood, finger jointed, and edge glued." Scope Ruling at 9. Commerce also stated that the edge-glued boards are covered by the scope because "they are made of wood, continuously shaped wood, finger-jointed, and edge-glued mouldings or millwork blanks (whether or not resawn)" and there was no limitation on end-use of the products in the scope. Id. at 9-11.

16. Commerce further determined that the 1 mm mark results in the boards being continuously shaped because the mark is considered a groove. See id. at 8-9. Commerce also suggested that the Loveday Lumber Scope Ruling was distinguishable because "although a similar straight saw is used, the saw is used to make a groove that creates a product that is indistinguishable from a millwork product at time of entry" and "there is no limitation to the type of tools that can be used to produce subject merchandise." Id. at 9.

17. Commerce then declined to consider the (k)(2) factors on the basis that it found the "sources provided in 19 CFR 225(k)(1) . . . are dispositive." Id. at 8.

## VI.     STATEMENT OF THE CLAIMS

### COUNT I: Commerce's Finding that Hardware Resources' Edge-Glued Boards Are "Moulding and Millwork Products" and Thus Subject to the Scope Is Unsupported by Substantial Evidence and Contrary To Law

18.     Plaintiff incorporates herein by reference paragraphs 1-17 of this complaint.

19.     Commerce's determination that edge-glued boards are subject to the Orders because they are "wood, finger jointed, and edge-glued" is unsupported by substantial evidence and otherwise not in accordance with law because Commerce unreasonably concluded that wood boards used to produce downstream cabinet products are wood "moulding and millwork" products, contrary to the plain language of the scope and the other sources set forth in 19 C.F.R. § 351.225(k)(1), including the petition, the proceedings before the International Trade Commission and other information submitted during the investigation phase.

### COUNT II: Commerce's Finding that Hardware Resources' Edge-Glued Boards Are "Continuously Shaped" and Thus Subject to the Scope Is Unsupported by Substantial Evidence and Contrary To Law

20.     Plaintiffs incorporate herein by reference paragraphs 1-19 of this complaint.

21.     Commerce's determination that edge-glued boards are subject to the AD/CVD orders on WMMP from China is unsupported by substantial evidence and otherwise not in accordance with law because Commerce unreasonably concluded that wood boards used to produce downstream cabinet products are "continuously shaped" and thus subject to the scope based on a 1 mm marking used by the downstream U.S. producer that shows where to cut a groove placed <u>after importation</u>.

22.     Commerce's determination that the edge-glued boards are "continuously shaped" because the mark constitutes a groove has no reasonable basis in the plain language of the scope,

9

the petition or other sources set forth in 19 C.F.R. § 351.225(k)(1), further rendering its decision unsupported by substantial evidence and otherwise not in accordance with law.

### COUNT III: Commerce's Finding that Hardware Resources' Edge-Glued Boards Are Subject to the Scope Is Unsupported by Substantial Evidence and Contrary To Law Based on Commerce's Prior Loveday Scope Ruling

23. Plaintiff incorporates herein by reference paragraphs 1-22 of this complaint.

24. Commerce's determination that edge-glued boards are subject to the Orders is unsupported by substantial evidence and otherwise not in accordance with law because Commerce unreasonably disregarded and distinguished and failed to follow its prior scope ruling issued to Loveday Lumber in which it had found that Loveday Lumber's products are not considered mouldings or millwork blanks because they "are not intended to be later manufactured into a moulding or piece of millwork, nor are {they} 'finger jointed or edge-glued'" and are not continuously shaped because they are "produced using a straight saw, rather than a moulder or radial saw (i.e., equipment used to shape the wood)." Loveday Lumber Scope Ruling at 9. As with Loveday Lumber's product, Hardware Resources' edge-glued boards are not intended to be later manufactured into a moulding or piece of millwork and are produced using a straight saw and not a moulder or radial saw.

### COUNT IV: Commerce's Failure to Consider the (k)(2) Factors Is Unsupported by Substantial Evidence and Contrary To Law

25. Plaintiff incorporates herein by reference paragraphs 1-24 of this complaint.

26. Commerce's determination that the edge-glued boards are subject to the Orders is unsupported by substantial evidence and otherwise not in accordance with law because Commerce unreasonably concluded that it did not need to examine the 19 C.F.R. § 351.225(k)(2) factors given its erroneous and unreasonable conclusion that the 19 C.F.R. § 351.225(k)(1) sources were "dispositive."

27. Application of the 19 C.F.R. § 351.225(k)(2) factors demonstrates that Hardware Resources' edge-glued boards are not subject to the scope of the Orders because (1) the edge-glued boards do not share the same physical characteristics as in-scope WMMP because, unlike mouldings and millwork products, the edge-glued boards are scored with a straight saw and do not have decorative profiles on their face; (2) the expectation of ultimate users of Hardware Resources' edge-glued boards are different from the expectations of ultimate users of in-scope merchandise because purchasers of WMMP would expect to use WMMP primarily in residential and non-residential construction to adorn walls and other structural parts of a building; (3) the ultimate uses of Hardware Resources' edge-glued boards are different from in-scope WMMP because the edge-glued boards are not used in exterior and interior applications in residential and non-residential construction like in-scope WMMP but instead the edge-glued boards are further processed into cabinet parts after importation into the United States; (4) Hardware Resources' edge-glued boards are not sold in the same channels of trade as in-scope merchandise in that in-scope WMMP are sold through distributors, retail, or direct to end users, as well as to construction companies and contractors, lumber wholesalers, door manufacturers and home improvement retailers whereas Hardware Resources internally processes the edge-glued boards after importation into the United States including adding a groove, dovetailing and other further processing to produce cabinet parts; and (5) Hardware Resources' edge-glued boards are advertised and displayed in a different manner than in-scope WMMP because unlike in-scope merchandise that is advertised for moulding and millwork applications, Hardware Resources does not advertise or display the edge-glued boards in the condition that they are imported because the boards are generally processed into cabinets after importation or sold to downstream customers for that same use.

28.   Had Commerce properly considered the 19 C.F.R. § 351.225(k)(2) factors it would have found that Hardware Resources' edge-glued boards are not subject to the scope, and Commerce's failure to consider these factors and its finding that the edge-glued boards are subject to the Orders is unsupported by substantial evidence and otherwise not in accordance with law for this reason as well.

## DEMAND FOR JUDGMENT AND PRAYER FOR RELIEF

WHEREFORE, and as challenged herein, Plaintiffs respectfully pray that this Court:

(1) declare Commerce's actions as described in Counts I-IV unsupported by substantial evidence and otherwise not in accordance with law;

(2) remand to Commerce with instructions to determine that Hardware Resources' edge-glued boards are not covered by the Orders;

(3) order Commerce to issue cash deposit instructions to CBP consistent with this Court's decision; and

(4) provide such other relief as this honorable Court deems proper.

Respectfully submitted,

/s/ Jeffrey S. Grimson
Jeffrey S. Grimson
Kristin H. Mowry
Jill A. Cramer
Bryan P. Cenko
**Mowry & Grimson, PLLC**
*Counsel to Plaintiff*

Date: September 1, 2023