**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: THE HONORABLE TIMOTHY M. REIF, JUDGE

| | | |
|---|---|---|
| HARDWARE RESOURCES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Court No. 23-00150 |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| COALITION OF AMERICAN MILLWORK | ) | |
| PRODUCERS, | ) | |
| | ) | |
| Defendant-Intervenor. | ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S**
**MOTION FOR JUDGMENT ON THE AGENCY RECORD**

Of Counsel:

LESLIE M. LEWIS
Attorney
Department of Commerce
Office of Chief Counsel for Trade
Enforcement & Compliance
1401 Constitution Avenue, NW
Washington, DC 20005

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

CLAUDIA BURKE
Deputy Director

EMMA E. BOND
Trial Attorney
Commercial Litigation Branch
U.S. Department of Justice
P.O. Box 480 | Ben Franklin Station
Washington, D.C. 20044
202-305-2034 | emma.e.bond@usdoj.gov

March 26, 2024

*Attorneys for Defendant*

**TABLE OF CONTENTS**

                                                                                            **PAGE**

INTRODUCTION ................................................................................................................. 1

RULE 56.2 STATEMENT ................................................................................................... 2

    I.    The Administrative Determination Under Review ................................................ 2

    II.    Issue Presented For Review ................................................................................. 2

STATEMENT OF FACTS .................................................................................................... 2

    I.    Commerce Issues Antidumping And Countervailing Duty Orders
        Covering Wood Mouldings And Millwork Products From China ....................... 2

    II.    Hardware Files A Scope Ruling Application ....................................................... 4

    III.    Commerce Initiates A Scope Inquiry .................................................................. 6

        A.    The Petitioner Argues That Hardware's Edge-Glued Boards Satisfy
                All Physical Characteristics Required By The Scope Language .............. 6

        B.    Hardware Contends That The Scope Contains An End-Use Restriction ... 7

    IV.    Commerce Issues A Final Scope Ruling That Hardware's Edge-Glued Boards
        Are Covered By The Antidumping And Countervailing Duty Orders On Wood
        Mouldings & Millwork Products From China .................................................... 7

SUMMARY OF ARGUMENT ............................................................................................ 9

ARGUMENT ..................................................................................................................... 11

    I.    Legal Standards ................................................................................................. 11

        A.    Standards Governing Scope Rulings ....................................................... 11

        B.    Standard of Review ................................................................................. 13

    II.    Commerce's Scope Determination Is Lawful And Supported By Substantial
        Evidence ........................................................................................................... 14

A.    Commerce Correctly Determined That The Scope Language
      Referencing "Moulding And Millwork Products" Does Not
      Incorporate An End-Use Restriction .......................................................16

      1.    Commerce Will Not Find A Product Is Excluded From
            Scope Based On End-Use Absent "Clear Exclusionary
            Language" ...................................................................................16

      2.    Commerce Correctly Determined The Scope Contains
            No Clear End-Use Restriction .....................................................18

      3.    Hardware's Plain Meaning Arguments Are Unpersuasive .......... 20

      4.    Hardware's Resort To The (k)(1) Factors Fails To Support
            An End-Use Limitation ................................................................23

B.    Substantial Evidence Supports Commerce's Finding That
      Hardware's Edge-Glued Boards Are Continuously Shaped....................27

C.    Commerce Reasonably Explained That The UV Coating On
      Hardware's Edge-Glued Boards Does Not Remove Them From
      The Scope Of The Orders ...................................................................... 31

D.    There Is No Need For The Court To Reach Hardware's
      Arguments Based On The (k)(2) Factors.................................................32

E.    Hardware's Industry Arguments Are Irrelevant ..................................... 33

CONCLUSION..............................................................................................................33

**TABLE OF AUTHORITIES**

<u>**CASES**</u>                                                                        <u>**PAGE(S)**</u>

*Am. Silicon Techs. v. United States*,
   261 F.3d 1371 (Fed. Cir. 2001)................................................................13

*Consol. Edison v. NLRB*,
   305 U.S. 197 (1938)...............................................................................13, 31

*Crawfish Processors Alliance v. United States*,
   483 F.3d 1358 (Fed. Cir. 2007)..........................................................13, 31

*Downhole Pipe & Equip. v. United States*,
   776 F.3d 1369 (Fed. Cir. 2015)................................................................30

*Fedmet Res. Corp. v. United States*,
   755 F.3d 912 (Fed. Cir. 2014) ...........................................................passim

*Fujitsu Gen. Ltd. v. United States*,
   88 F.3d 1034 (Fed. Cir. 1996) .................................................................13

*Global Commodity Group LLC v. United States*,
   709 F.3d 1134 (Fed. Cir. 2013)................................................................13

*Goldlink Indus. Co. v. United States*,
   431 F. Supp. 2d 1323 (Ct. Int'l Trade 2006) .........................................14

*King Supply Co. LLC v. United States*,
   674 F.3d 1343 (Fed. Cir. 2012).........................................................passim

*Kisor v. McDonough*,
   995 F.3d 1347 (Fed. Cir. 2021)................................................................28

*Lamie v. U.S., Tr.*,
   540 U.S. 526 (2004) ..................................................................................22

*Magnum Magnetics Corp. v. United States*,
   657 F. Supp. 3d 1387 (Ct. Int'l Trade 2023) .........................................20

*Marx v. Gen. Revenue Corp.*,
   568 U.S. 371 (2013) ..................................................................................28

*Meridian Prods., LLC v. United States*,
   851 F.3d 1375 (Fed. Cir. 2017)................................................... 11, 13, 32

*Mid Continent Nail Corp. v. United States,*
    725 F.3d 1295 (Fed. Cir. 2013) ............................................................................13

*Nan Ya Plastics Corp. v. United States,*
    810 F.3d 1333 (Fed. Cir. 2016) ............................................................................30

*OMG, Inc. v. United States,*
    972 F.3d 1358 (Fed. Cir. 2020) ............................................................................11

*Oregon Steel Mills, Inc. v. United States,*
    862 F.2d 1541 (Fed. Cir. 1988) ............................................................................23

*QVD Food Co. v. United States,*
    658 F.3d 1318 (Fed. Cir. 2011) ............................................................................30

*Sandvik Steel Co. v. United States,*
    164 F.3d 596 (Fed. Cir. 1998) ..............................................................................13

*Sango Int'l L.P. v. United States,*
    484 F.3d 1371 (Fed. Cir. 2007) ................................................................ 12, 13, 32

*Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States,*
    776 F.3d 1351 (Fed. Cir. 2015) ............................................................................11

*SKF USA Inc. v. United States,*
    263 F.3d 1369 (Fed. Cir. 2001) ............................................................................26

*Tak Fat Trading Co. v. United States,*
    396 F.3d 1378 (Fed. Cir. 2005) ............................................................................12

*United Steel & Fasteners, Inc. v. United States,*
    947 F.3d 794 (Fed. Cir. 2020) ........................................................................ 13, 32

*Universal Camera Corp. v. NLRB,*
    340 U.S. 474 (1951) ..............................................................................................13

**<u>STATUTE</u>**

19 U.S.C. § 1516a ............................................................................................. 11, 13, 30

19 U.S.C. § 1671e(a)(2) .............................................................................................11

**<u>REGULATIONS</u>**

19 C.F.R. § 351.225(a) ...............................................................................................33

19 C.F.R. § 351.225(d) .................................................................................................6

19 C.F.R. § 351.225(e)...........................................................................................12

19 C.F.R. § 351.225(k).....................................................................................passim

## **ADMINISTRATIVE DETERMINATIONS**

*Engineered Process Gas Turbo–Compressor Systems, Whether Assembled or Unassembled, and Whether Complete or Incomplete, from Japan,*
   62 Fed. Reg. 32,584 (Dep't Commerce, June 16, 1997) .........................................17

*Certain Softwood Lumber Products from Canada,*
   67 Fed. Reg. 36,070 (Dep't Commerce, May 22, 2002) .........................................17

*Live Swine from Canada,*
   70 Fed. Reg. 12,181 (Dep't Commerce, Mar. 11, 2005).........................................17

*China: Antidumping Duty Order,*
   85 Fed. Reg. 22,126 (Dep't Commerce, Apr. 21, 2020).................................1, 19, 25

*Wooden Cabinets and Vanities and Components Thereof from China: Antidumping Duty Order,*
   85 Fed. Reg. 22,126 (Dep't Commerce, Apr. 21, 2020).........................................19

*Wooden Cabinets and Vanities and Components Thereof from China: Countervailing Duty Order,*
   85 Fed. Reg. 22,134 (Dep't Commerce, Apr. 21, 2020).................................4, 5, 25

*Wood Mouldings and Millwork Products From China: Amended Final Antidumping Duty Determination and Antidumping Duty Order,*
   86 Fed. Reg. 9,486 (Dep't Commerce, Feb. 16, 2021) ............................................1

*Wood Mouldings and Millwork Products China: Countervailing Duty Order,*
   86 Fed. Reg. 9,484 (Dep't Commerce, Feb. 26, 2021) ............................................ 1

*Final Scope Ruling on the Antidumping and Countervailing Duty Orders on Wood Mouldings and Millwork Products from China* (Dep't Commerce, Aug. 2, 2023) ....................................... 2

*Regulations To Improve Administration and Enforcement of Antidumping and Countervailing Duty Laws,*
   86 Fed. Reg. 52,300 (Dep't Commerce, Sept. 20, 2021) ........................................11

*Final Scope Ruling on the Antidumping and Countervailing Duty Orders on Wood Mouldings and Millwork Products from China: Request by Loveday Lumber Company, Inc.*
   (Dep't Commerce, May 16, 2022) .........................................................................25

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: THE HONORABLE TIMOTHY M. REIF, JUDGE

| | | |
|---|---|---|
| HARDWARE RESOURCES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Court No. 23-00150 |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| COALITION OF AMERICAN MILLWORK | ) | |
| PRODUCERS, | ) | |
| | ) | |
| Defendant-Intervenor. | ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S
MOTION FOR JUDGMENT ON THE AGENCY RECORD**

Pursuant to Rule 56.2 of the Rules of the United States Court of International Trade, defendant, the United States, respectfully responds to the motion for judgment on the administrative record filed by plaintiff, Hardware Resources, Inc. (Hardware). The case concerns a scope ruling determination by the U.S. Department of Commerce (Commerce) finding that Hardware's edge-glued boards are covered by the scope of the antidumping and countervailing duty orders on wood mouldings and millwork products from the People's Republic of China (China). *See Wood Mouldings and Millwork Products From China: Amended Final Antidumping Duty Determination and Antidumping Duty Order* (Antidumping Duty Order), 86 Fed. Reg. 9,486 (Dep't Commerce, Feb. 16, 2021); *Wood Mouldings and Millwork Products China: Countervailing Duty Order* (Countervailing Duty Order), 86 Fed. Reg. 9,484 (Dep't Commerce, Feb. 26, 2021) (collectively, Orders). Because Commerce's determination is supported by substantial evidence and in accordance with law, we

respectfully request that the Court deny Hardware's motion, sustain Commerce's

determination, and enter judgment for the United States.

RULE 56.2 STATEMENT

I.      The Administrative Determination Under Review

This action challenges Commerce's final scope ruling that Hardware's edge-glued boards

are covered by the scope of the antidumping and countervailing duty orders on wood mouldings

and millwork products from China.  *See Final Scope Ruling on the Antidumping and*

*Countervailing Duty Orders on Wood Mouldings and Millwork Products from China* (Aug. 2,

2023) (P.R. 25) (Final Scope Ruling).

II.     Issue Presented For Review

Whether Commerce's determination that Hardware's edge-glued boards are covered by

the scope of the antidumping and countervailing duty orders on wood mouldings and millwork

products from China is lawful and supported by substantial evidence.

STATEMENT OF FACTS

I.      Commerce Issues Antidumping And Countervailing Duty Orders Covering Wood
        Moundings And Millwork Products From China

In February 2021, Commerce published antidumping and countervailing duty orders

covering wood mouldings and millwork products from China.  *See* Antidumping Duty Order, 86

Fed. Reg. at 9,486; Countervailing Duty Order, 86 Fed. Reg. at 9,484.  In general, the scope of

the Orders covers "wood mouldings and millwork products" from China.  *See* Final Scope

Ruling at 1-2.  The scope sets forth physical characteristics of the subject merchandise, including

that it must be "made of wood (regardless of wood species), bamboo, laminated veneer lumber

(LVL), or of wood and composite materials (where the composite materials make up less than 50

percent of the total merchandise)."  *See* Final Scope Ruling at 2.  Further, the subject products

2

must be "continuously shaped wood or finger-jointed or edge-glued moulding or millwork

blanks{.}" *Id.* "The merchandise subject to the Orders can be continuously shaped along any of

its edges, ends, or faces{.}" *Id.* (italics omitted).  Subject products may also be "coated or clad,

even along their entire length, with a composite material," so long as they are "otherwise

comprised of" wood, laminated veneer lumber, or qualifying wood and composite materials.  *Id.*

Specifically, the scope provides, in relevant part:

> The merchandise subject to this order consists of wood mouldings and millwork products that are made of wood (regardless of wood species), bamboo, laminated veneer lumber (LVL), or of wood and composite materials (where the composite materials make up less than 50 percent of the total merchandise), and which are continuously shaped wood or finger-jointed or edge-glued moulding or millwork blanks (whether or not resawn). The merchandise subject to this order can be continuously shaped along any of its edges, ends, or faces.
>
> . . . Wood mouldings and millwork products that are coated or clad, even along their entire length, with a composite material, but that are otherwise comprised of wood, LVL, or wood and composite materials (where the non-coating composite materials make up 50 percent or less of the total merchandise) are covered by the scope.

Countervailing Duty Order, 86 Fed. Reg. 9,484; Antidumping Duty Order, 86 Fed. Reg. 9,486.

The scope language also lists products explicitly excluded from the scope, including

certain countertops; certain exterior fencing, decking, and siding; certain lumber; and products

covered by several other antidumping or countervailing duty orders:

> Excluded from the scope of the *Orders* are countertop / butcherblocks imported as a full countertop/butcherblock panel, exterior fencing, exterior decking and exterior siding products (including solid wood siding, non-wood siding (e.g., composite or cement), and shingles) that are not LVL or finger jointed; finished and unfinished doors; flooring; parts of stair steps (including newel posts, balusters, easing, gooseneck, risers, treads, rail fittings and stair stringers); picture frame components three feet and under in individual lengths; and lumber whether solid, finger-jointed, or edge-glued. To be excluded from the scope, finger-jointed or edge-

> glued lumber must have a nominal thickness of 1.5 inches or
> greater and a certification stamp from an American Lumber
> Standard Committee-certified grading agency. The exclusion for
> lumber whether solid, finger-jointed, or edge-glued does not apply
> to screen/"surfaced on 4 sides" (S4S) and/or "surface 1 side, 2
> edges" (S1S2E) stock (also called boards) that are finger-jointed
> and/or edge-glued, or to finger-jointed and/or edge-glued moulding
> or millwork blanks (whether or not resawn). Accordingly, S4S and
> S1S2E stock/boards that are not finger-jointed or edge glued are
> excluded from the scope of the *Orders*.
>
> Also excluded from the *AD Order* are all products covered by the
> scopes of the antidumping duty orders on: (1) hardwood plywood
> from the People's Republic of China, (2) multilayered wood
> flooring from the People's Republic of China, (3) wooden cabinets
> and vanities from the People's Republic of China, and (4) wooden
> bedroom furniture from the People's Republic of China.
>
> Also excluded from the *CVD Order* are all products covered by the
> scopes of the countervailing duty orders on: (1) hardwood plywood
> from the People's Republic of China, (2) multilayered wood
> flooring from the People's Republic of China, and (3) wooden
> cabinets and vanities from the People's Republic of China.

Final Scope Ruling at 3-4 (citations omitted).  The scope language specifically excludes products

covered by the antidumping and countervailing duty orders on wooden cabinets and vanities and

components thereof from China.  *Id.* (citing, *e.g.*, *Wooden Cabinets and Vanities and*

*Components Thereof from China: Countervailing Duty Order*, 85 Fed. Reg. 22,134 (Dep't

Commerce Apr. 21, 2020); *Wooden Cabinets and Vanities and Components Thereof from China:*

*Antidumping Duty Order*, 85 Fed. Reg. 22,126 (Dep't Commerce, Apr. 21, 2020)).

II.    Hardware Files A Scope Ruling Application

On March 9, 2023, Hardware filed with Commerce a scope ruling application requesting

a decision that its edge-glued boards are not covered by the Orders.  Scope Ruling Application

(Mar. 9, 2023) (P.R. 1, C.R. 1).  Hardware described its merchandise as "solid edge-glued boards

made of white birch measuring 8 feet in length and 5/8 inches thick."  *Id.* at 4.  Hardware further

described its product as made from "pieces of wood scraps" that are "finger-jointed and edge-glued together to form boards." *Id.* at 9. "A {ultraviolet (UV)} coating is applied to the boards," except for the bottom edge, which is "left uncoated / unfinished." *Id.* at 4. "The corners of the boards are lightly sanded to smooth the corners to 1/16 of an inch." *Id.* "At the time of import into the United States, the boards have a small mark ('score') of approximately 1 {millimeter} that has been added by a straight saw along the length of the one side of the board," to mark the location for a "groove that is added after import." *Id.* at 5 (emphasis omitted).

In the application, Hardware raised two primary arguments that its merchandise was not covered by the Orders. First, Hardware argued that its merchandise could not be "wood moulding or millwork products" because its products were not "used as" moulding or millwork products. *Id.* at 14. Instead, Hardware claimed that its products were "later produced into cabinet parts following processing after import into the United States." *Id.* According to Hardware, its edge-glued boards were "raw materials that will be further processed into cabinet parts upon importation to the United States." *Id.* at 4. Despite claiming that its products should be excluded from the wood mouldings and millworks products Orders due to later use as cabinet parts, Hardware did not argue that its merchandise was covered by the scope of the antidumping and countervailing duty orders on wooden cabinets and vanities and components thereof from China. *Id.* at 6 n.5, 14-17; *see also* Final Scope Ruling at 3-4 (excluding merchandise covered by the antidumping and countervailing duty orders covering wooden cabinets and vanities from China).

Second, Hardware argued that its boards "are not continuously shaped." Scope Ruling Application at 15 (P.R. 1, C.R. 1). Hardware contended that its "edge-glued boards are scored

with a straight saw and do not have radius edges with fine details to be considered continuously

shaped wood." *Id.* at 17.

III.    Commerce Initiates A Scope Inquiry

On March 28, 2023, Commerce issued a supplemental questionnaire to Hardware, and

Hardware responded on April 3, 2023.  Final Scope Ruling at 1-2 (citing Supp. Scope

Questionnaire (P.R. 11, C.R. 5); Hardware Supp. Resp. (P.R. 12, C.R. 6)).  Commerce initiated

the scope inquiry on April 10, 2023.  *Id.* at 2 (citing Initiation of Scope Inquiry (P.R. 13)); *see*

*also* 19 C.F.R. § 351.225(d)(1)(ii).

Commerce received comments and factual information from the petitioner, Coalition of

American Millwork Producers, and from Hardware.  *See* Final Scope Ruling at 2 (citing

Petitioner's Cmts. on Scope Ruling Application (P.R. 15, C.R. 7) (Pet'r Cmts.); Hardware

Rebuttal Cmts. (P.R. 20, C.R. 8) (Rebuttal Cmts.)).

A.    The Petitioner Argues That Hardware's Edge-Glued Boards Satisfy All Physical
Characteristics Required By The Scope Language

On May 10, 2023, the Coalition of American Millwork Producers (coalition or petitioner)

submitted comments arguing that the products described in the request fall "within the scope of

the antidumping and countervailing duty orders" at issue.  Pet'r Cmts. at 1 (P.R. 15).  The

coalition argued that Hardware's edge-glued boards "explicitly meet the physical characteristics

of subject merchandise described in the scope."  *Id.* at 4.  It contended that "these products are

'made of wood' and are continuously shaped throughout their length{.}"  *Id.*  Further, "{t}he

production process for the boards" (including "finger-jointing and edge-gluing, planing, coating,

lengthwise cutting, sanding, and scoring") "matches the production process for other in-scope wood mouldings and millwork products." *Id.*

In response to Hardware's position that its merchandise is not "wood moulding or millwork," the coalition stated that this argument "actually go{es} to end use." *Id.* The coalition argued that the end use of the merchandise should not be considered when the primary and secondary interpretive sources were dispositive. *Id.* at 5; *see also* 19 C.F.R. § 351.225(k)(1).

> B.    Hardware Contends That The Scope Contains An End-Use Restriction

In rebuttal comments filed on May 31, 2023, Hardware argued that "an end-use analysis is central to distinguishing wood mouldings and millwork products from other wood products." Rebuttal Cmts. at 2, 5 (P.R. 20). Hardware argued that its "edge-glued boards are not millwork products (blanks or otherwise) but instead raw materials used to manufacture cabinet parts after further processing in the United States." *Id.* at 12-13. At the same time, Hardware maintained that "at the time of import," its merchandise was also "not subject to the scope of the {antidumping and countervailing duty} orders on wooden cabinets and vanities and components thereof from China." *Id.* at 21-22 (capitalization altered).

IV.    Commerce Issues A Final Scope Ruling That Hardware's Edge-Glued Boards Are Covered By The Antidumping And Countervailing Duty Orders On Wood Mouldings & Millwork Products From China

After considering the submissions by both interested parties, Commerce issued a scope ruling on August 2, 2023, determining that, based on Hardware's product description, its edge-glued boards are covered by the antidumping and countervailing duty orders on wood mouldings and millwork products from China. *See generally,* Final Scope Ruling at 8-11. In the Final Scope Ruling, pursuant to the regulatory framework set forth in 19 C.F.R. § 351.225(k)(1) (2023), Commerce determined that Hardware's merchandise satisfied the physical characteristics

required by the scope language. *Id.* at 11; *see also id.* at 8-11. Specifically, upon examining the record evidence and (k)(1) interpretative sources—*e.g.*, the plain language of the scope, descriptions of the merchandise in the petition and initial investigation, and Commerce's previous scope rulings—Commerce determined that the (k)(1) sources are dispositive in determining that Hardware's edge-glued boards are wood mouldings or millwork products within the scope of the Orders. Final Scope Ruling at 8-11. Accordingly, Commerce found it unnecessary to analyze the additional factors listed in 19 C.F.R. § 351.225(k)(2). *Id.* at 11.

As an initial matter, Commerce explained that there was no dispute that Hardware's merchandise was "made of wood, finger jointed, and edge-glued," as required by the scope language. Final Scope Ruling at 9 (citing Scope Ruling Application at 4, 5 (P.R. 1, C.R. 1)). These physical characteristics were "not in dispute." *Id.*

Commerce also determined that the merchandise satisfied the requirement for "continuously shaped wood." Final Scope Ruling at 8-9. Commerce explained that phrase— "continuously shaped"—was not defined by the Orders. *Id.* Based on descriptions of the merchandise in the petition and during the investigation, Commerce determined that continuously shaped wood included "grooved" wood that is cut with, or parallel to, the grain. *Id.* at 8-9 (citations omitted). Commerce found that Hardware's merchandise satisfied this

requirement because it included a "1 mm mark ('score') . . . along the length of one side of the board."  Scope Ruling at 9 (citing Scope Ruling Application at 4-5 (P.R. 1, C.R. 1)).

Further, because the scope of the Orders expressly included products with or without surface coatings, Commerce determined that the UV coating did not remove the merchandise from the scope of the Orders.  *Id.* at 9.

Finally, Commerce rejected Hardware's argument to limit the scope language based upon the end use of the product—namely, its stated intent to further manufacture the merchandise into cabinet parts.  Final Scope Ruling at 10.  As Commerce explained, its "practice is not to make scope inclusion or exclusion decisions based on end-use requirements absent clear scope language indicating otherwise."  *Id.* (citing *King Supply Co. LLC v. United States*, 674 F.3d 1343, 1349 (Fed. Cir. 2012) (*King Supply*)).  In this case, "the scope contain{ed} no clear end-use restriction."  *Id.*  Further, although the intended end use of the merchandise is one of the factors that may be considered if the sources listed in section 351.225(k)(1) of Commerce's regulation are not dispositive, Commerce explained that, in this case, the (k)(1) sources were dispositive.  Scope Ruling at 8, 10-11.  As a result, in accordance with the regulatory framework set forth in 19 C.F.R. § 351.225(k)(1) and (k)(2), Commerce did not analyze the (k)(2) factors. *Id.*

<u>SUMMARY OF ARGUMENT</u>

Commerce's determination that Hardware's edge-glued boards are within the scope of the Orders is supported by substantial evidence and in accordance with law.  Pursuant to 19 C.F.R. § 351.225(k)(1), Commerce reasonably determined that Hardware's products are made of wood, finger-jointed, edge-glued, and continuously shaped, and thus are covered by the wood mouldings and millwork products Orders.

Hardware's challenges to Commerce's scope ruling lack merit. As an initial matter, Hardware is incorrect in claiming that its edge-glued boards are excluded from the scope based on their end use. Commerce's practice is not to make scope inclusion or exclusion decisions based on end-use requirements, absent clear scope language indicating otherwise. Commerce correctly explained that the scope of the Orders lacks such clear exclusionary language.

Hardware's argument that its products are not continuously shaped likewise fails to establish any error in Commerce's scope ruling. Hardware does not dispute that grooving is a type of continuous shaping, and instead challenges the finding that its edge-glued boards are grooved. This factual finding is reviewed pursuant to the deferential substantial evidence standard. Commerce reasonably found that the one millimeter score along the edge of Hardware's edge-glued boards constitutes a groove, and thus satisfies the continuous shaping requirement.

The remaining challenges are similarly unpersuasive. Hardware is incorrect in arguing that its product's UV coating removes it from the scope of the Orders. To the contrary, the scope language is clear that surface coatings do not remove an otherwise subject product from the scope. Finally, Commerce reasonably determined that the sources listed in 19 C.F.R. 351.225(k)(1) are dispositive in this case. Thus, Commerce correctly declined to reach the factors listed in section 351.225(k)(2), and Hardware's reliance on the (k)(2) factors lacks merit.

<u>ARGUMENT</u>

I.    <u>Legal Standards</u>

A.    <u>Standards Governing Scope Rulings</u>

By statute, any antidumping or countervailing duty order must contain a "description of the subject merchandise" covered by the order, describing "the class or kind of merchandise that

is within the scope" of the order.  19 U.S.C. §§ 1671e(a)(2), 1673e(a)(2), 1677(25).  Commerce

has authority to issue scope rulings determining "whether a particular type of merchandise" is

within the scope of an existing order.  *See* 19 U.S.C. § 1516a(a)(2)(B)(vi) (explaining that such

decisions are "reviewable" in this Court).  However, no specific statutory provision "governs the

interpretation of the scope of antidumping or countervailing orders."  *Meridian Prods., LLC v.*

*United States*, 851 F.3d 1375, 1379 (Fed. Cir. 2017) (quoting *Shenyang Yuanda Aluminum*

*Indus. Eng'g Co. v. United States*, 776 F.3d 1351, 1354 (Fed. Cir. 2015)).  Thus, Commerce has

filled the statutory gap with a regulation that sets forth a two-step test for answering scope

questions.  *See* 19 C.F.R. § 351.225(k); *Meridian Prods.*, 851 F.3d at 1379.

In 2021, Commerce amended its regulation for answering scope questions.  *See*

*Regulations To Improve Administration and Enforcement of Antidumping and Countervailing*

*Duty Laws,* 86 Fed. Reg. 52,300, 52,322-52,323 (Dep't Commerce, Sept. 20, 2021); 19 C.F.R. §

351.225(k) (2022).[1]  Pursuant to the amended regulation, Commerce may determine whether a

product is within the scope of an order by relying on the scope language alone, if such language

is dispositive.  19 C.F.R. § 351.225(k)(1).  Commerce also has the discretion to consider the

additional primary and secondary sources listed in section 351.225(k)(1).  The primary (k)(1)

sources include descriptions from the petition and investigation, prior Commerce determinations

relating to the same order or other orders with similar language, or prior International Trade

---

[1]    Before Commerce amended the regulations in 2021, various Federal Circuit cases
reflected differing views on whether the sources under the then-current § 351.225(k)(1) were
"used to interpret the 'plain meaning' of the text of the scope, or whether the plain meaning
analysis comes first{.}"  *Regulations To Improve Administration and Enforcement of*
*Antidumping and Countervailing Duty Laws*, 86 Fed. Reg. 52,300, 52,322-52,323 (Dep't
Commerce, Sept. 20, 2021) (citing, *e.g.*, *Fedmet Res. Corp. v. United States*, 755 F.3d 912, 918
(Fed. Cir. 2014); *OMG, Inc. v. United States*, 972 F.3d 1358, 1363-66 (Fed. Cir. 2020)).
Commerce's amended regulation clarifies the appropriate analysis.  *See* 19 C.F.R. § 351.225(k)
(2022).

Commission (ITC) determinations relating to the same order.  19 C.F.R. § 351.225(k)(1)(i).
Secondary (k)(1) sources include other Commerce or Commission determinations, industry
usage, and dictionaries.  19 C.F.R. § 351.225(k)(1)(ii)).  To the extent such secondary sources
conflict with the primary sources, however, the primary sources "will normally control."  *Id.*
(citing 19 C.F.R. § 351.225(k)(1)(ii)).

If Commerce determines that descriptions of the merchandise contained in the (k)(1)
sources are dispositive, Commerce issues a final scope ruling deciding whether the product falls
within the order's scope.  *See* 19 C.F.R. § 351.225(e); *see also Tak Fat Trading Co. v. United
States*, 396 F.3d 1378, 1382 (Fed. Cir. 2005).  The (k)(1) sources are "dispositive" when they
"definitively answer the scope question."  *Sango Int'l L.P. v. United States*, 484 F.3d 1371, 1379
(Fed. Cir. 2007).

Finally, only if the (k)(1) sources are not dispositive will Commerce consider the five
additional factors set forth in section 351.225(k)(2), known as the (k)(2) sources.  19 C.F.R.
§ 351.225(k)(2); *Fedmet Res. Corp. v. United States*, 755 F.3d 912, 919-22 (Fed. Cir. 2014).
These factors include, "(A) the physical characteristics of the merchandise; (B) expectations of
the ultimate purchasers; (C) the ultimate use of the product; (D) the channels of trade in which
the product is sold; and (E) the manner in which the product is advertised and displayed."  19
C.F.R. § 351.225(k)(2)(i).

B.    Standard of Review

The Court grants "significant deference to Commerce's interpretation of a scope
order{.}"  *Mid Continent Nail Corp. v. United States*, 725 F.3d 1295, 1300 (Fed. Cir. 2013)
(quoting *Global Commodity Group LLC v. United States*, 709 F.3d 1134, 1138 (Fed. Cir. 2013)).
This is because a scope ruling involves "a highly fact-intensive and case-specific determination,"

*King Supply*, 674 F.3d at 1345, making it "particularly within the expertise of {Commerce}," *Sandvik Steel Co. v. United States*, 164 F.3d 596, 600 (Fed. Cir. 1998).

The Court "must uphold a scope ruling unless {it finds the ruling} to be 'unsupported by substantial evidence on the record, or otherwise not in accordance with law.'" *Sango Int'l*, 484 F.3d at 1378 (quoting 19 U.S.C. § 1516a(b)(1)(B)). The Court reviews "Commerce's analysis of the (k)(1) sources against the product in question" as an issue of fact under the substantial evidence standard. *United Steel & Fasteners, Inc. v. United States*, 947 F.3d 794, 799 (Fed. Cir. 2020) (citing *Meridian Prods.*, 851 F.3d at 1382; *Fedmet Res. Corp.*, 755 F.3d at 919-22).

"'Substantial evidence' means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Crawfish Processors Alliance v. United States*, 483 F.3d 1358, 1361 (Fed. Cir. 2007) (quoting *Consol. Edison v. NLRB*, 305 U.S. 197, 229 (1938)); *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951) (stating "{s}ubstantial evidence is more than a mere scintilla"). "Even if it is possible to draw two inconsistent conclusions from evidence in the record, such a possibility does not prevent Commerce's determination from being supported by substantial evidence." *Am. Silicon Techs. v. United States*, 261 F.3d 1371, 1376 (Fed. Cir. 2001) (citing *Fujitsu Gen. Ltd. v. United States*, 88 F.3d 1034, 1044 (Fed. Cir. 1996)). "{T}he Court may not substitute its judgment for that of the {agency} when the choice is between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Goldlink Indus. Co. v. United States*, 431 F. Supp. 2d 1323, 1326 (Ct. Int'l Trade 2006) (citations and internal quotations omitted).

II.    <u>Commerce's Scope Determination Is Lawful And Supported By Substantial Evidence</u>

Commerce reasonably concluded that Hardware's edge-glued boards meet all physical characteristics required by the scope. Final Scope Ruling at 8-11. As Commerce explained, the

scope covers mouldings and millwork products that are "made of wood," and "continuously shaped wood or finger-jointed or edge-glued moulding or millwork blanks (whether or not resawn)." *Id.* at 9 (citations omitted). Further, although the scope language did not define "continuously shaped," Commerce considered relevant (k)(1) interpretative sources and reasonably concluded that Hardware's edge-glued boards also met this requirement. *Id.* at 8-9.

Specifically, Commerce consulted the petition, which included an excerpt from the Harmonized Tariff Schedule of the United States (HTSUS) defining continuously shaped wood as wood that is "tongued, *grooved*, rebated, chamfered, V-jointed, beaded, molded, rounded or the like along any of its edges, ends or faces, whether or not planed, sanded, or end jointed." *Id.* at 9 (quoting Petition at Exhibit I-10 (Scope Application Ex. 7) (P.R. 2)) (emphasis added). Additionally, in comments submitted during the underlying investigations, the petitioner stated that a product was "grooved" when "cut with, or parallel to the grain." *Id.* at 9 (citing Pet'r Supp. Questionnaire on General Issues Vol. I of Petition at 5 (Jan. 15, 2020) (Scope Application Ex. 9) (P.R. 2)). Based on these sources, Commerce reasonably determined that continuously shaped wood includes wood that is "grooved" or "cut with, or parallel to the grain." *Id.* at 8-9.

Substantial evidence supports Commerce's finding that Hardware's edge-glued boards satisfy all physical characteristics required by the scope of the Orders. As an initial matter, Hardware's edge-glued boards "are made of wood, finger jointed and edge-glued." Final Scope Ruling at 9. "These physical characteristics are not in dispute." *Id.* Further, Hardware's edge-glued boards are "continuously shaped" because they feature a one millimeter "score" or groove along the length of one side of the board. *Id.* at 9-10. As Commerce stated in the Final Scope Ruling, "there is no evidence that the score differs in any material way from a groove, which is a

type of continuous shaping." *Id*. at 9.  Because the (k)(1) sources were dispositive in interpreting

the scope, Commerce declined to consider the (k)(2) sources.  *Id*. at 8.

Hardware raises several challenges to Commerce's scope ruling, all of which are

unpersuasive.  First, Hardware is wrong in arguing that the phrase "moulding and millwork

products" imports an end-use limitation into the scope language.  *See, e.g.*, Pl. Mot. (Pl. Br.) at

23.  Second, contrary to Hardware's arguments, substantial evidence supports Commerce's

finding that the one millimeter score in the edge-glued boards meets the requirement for

continuous shaping or grooving.  Third, Hardware is incorrect in claiming that the UV

(ultraviolet) coating removes the merchandise from the scope of the Orders, because the scope

language explains that "surface coating" does not remove products from the scope.  Fourth,

Hardware's arguments based on the (k)(2) factors are immaterial because Commerce reasonably

determined that the (k)(1) factors were dispositive.  Finally, Hardware is wrong in arguing that

Commerce's ruling expands the scope and raises concerns regarding domestic industry support

during the investigations; rather, Commerce reasonably interpreted the scope and determined that

Hardware's edge-glued boards are covered by the Orders.  Each of these points is addressed in

further detail below.

> A.    Commerce Correctly Determined That The Scope Language Referencing
>        "Moulding And Millwork Products" Does Not Incorporate An End-Use
>        Restriction

As an initial matter, Hardware is wrong in arguing that "the definition of 'wood

mouldings {or} millwork products' is inherently end-use based."  Pl. Br. at 23.  Instead,

Commerce explained that it does not make scope decisions based on end-use requirements

absent clear scope language.  Final Scope Ruling at 10 (citations omitted).  Applying this

practice, Commerce correctly determined that "the scope contains no clear end-use restriction." *Id.*

> 1.    Commerce Will Not Find A Product Is Excluded From Scope Based On End-Use Absent "Clear Exclusionary Language"

When interpreting scope language, Commerce will not impose an end-use restriction unless the order "includes clear exclusionary language" leaving "no reasonable doubt" that products are excluded "based solely on {their} end use." *King Supply Co., LLC v. United States*, 674 F.3d 1343, 1349 (Fed. Cir. 2012).  Commerce's practice is founded on its experience and important practical considerations.  As the United States Court of Appeals for the Federal Circuit explained, end-use limitations "are disfavored because they are difficult to enforce." *Id.*  "This is because the physical characteristics of an imported product are more readily identifiable than the product's end use, which may be unclear at the time of importation." *Id.*  "Accordingly, when Commerce intends to impose end-use restrictions, Commerce consistently uses express terms such as 'only' or 'solely' to indicate restrictions on end uses for certain products." *Id.* (citations omitted).[2]  In short, "end-use restrictions do not apply to {antidumping duty} orders unless the . . . order at issue includes clear exclusionary language." *Id.*  "The requisite clear exclusionary language must leave no reasonable doubt that certain products were intended to be outside the scope of the . . . order based solely on the end use of those products." *Id.*

---

[2]  *King Supply*, 674 F.3d at 1349 (citing *Live Swine from Canada*, 70 Fed. Reg. 12,181, 12,182 (Dep't Commerce, Mar. 11, 2005) (countervailing duty order) (excluding swine "being used for breeding stock only"); *Certain Softwood Lumber Products from Canada*, 67 Fed. Reg. 36,070, 36,071 (Dep't Commerce, May 22, 2002) (countervailing duty order) (excluding softwood lumber products that are "used solely" for certain single family home construction); *Engineered Process Gas Turbo–Compressor Systems, Whether Assembled or Unassembled, and Whether Complete or Incomplete, from Japan*, 62 Fed. Reg. 32,584 (Dep't Commerce, June 16, 1997) (antidumping duty order) (covering "only those {turbocompressor systems} used in the petrochemical and fertilizer industries")).

In *King Supply*, for example, the Federal Circuit reversed a decision by this Court imposing an end-use restriction in an antidumping duty order covering imports of butt-weld pipe fittings from China and Thailand. *King Supply*, 674 F.3d at 1345, 1348. The relevant scope language stated that the "formed or forged pipe fittings *are used* to join sections in piping systems." *Id.* (citations omitted) (emphasis added). This Court had reasoned that the order described "one and only use" of covered pipe fittings and, as such, did not include the butt-weld pipe fittings at issue, which were used in structural applications. *Id.* (citation omitted). This Court therefore concluded that the merchandise in the scope application was not subject to the order and vacated Commerce's determination to the contrary. *Id.* (citations omitted).

The Federal Circuit reversed, holding that this Court had given "insufficient deference to Commerce in interpreting Commerce's own" antidumping duty order. *King Supply*, 674 F.3d at 1351. As the Court explained, "it was reasonable" for Commerce to interpret the scope language as not including "an end-use restriction." *Id.* "The phrase 'are used' alone does not compel a reading of an exclusive end-use." *Id.* at 1349. Nor does such language "render a reading of an exemplary use unreasonable or outside the scope of Commerce's broad authority to interpret its own {antidumping duty} orders." *Id.* The Court further found that substantial evidence supported Commerce's findings that the merchandise satisfied "the physical description of the products" in the scope language. *Id.* at 1350-1351.

       2.    Commerce Correctly Determined That The Scope Contains No Clear End-Use Restriction

In this case, Commerce applied its practice not to make scope rulings "based on end-use requirements absent clear scope language indicating otherwise." Final Scope Ruling at 10 (citing *King Supply*, 674 F.3d at 1349). Consistent with that practice, Commerce determined that the scope of the orders "contains no clear end-use restriction." *Id.*

The only scope language identified by Hardware as creating an end-use restriction was the general term "wood mouldings or millwork products." *See* Final Scope Ruling at 6 (citing Rebuttal Cmts. at 4-5, 8-9 (P.R. 20, C.R. 7)). But this phrase provides no "clear exclusionary language." *See* Final Scope Ruling at 10 n.58 (quoting *King Supply*, 674 F.3d at 1349). As in *King Supply*, the cited scope language leaves "reasonable doubt" that certain products "were intended to be outside the scope of the antidumping duty order based solely on {their} end use." *See id.* (quoting *King Supply*, 674 F.3d at 1349). Indeed, this case is more straightforward than the scope language in *King Supply*, in which the scope language referenced "one and only one" type of use for the subject merchandise. *King Supply*, 674 F.3d at 1347-51 (citations omitted). In this case, the phrase "wood mouldings and millwork products" does not reference use at all.

Notably the scope language *does* contain numerous exclusions—just not the end-use limitation proposed by Hardware. *See* Final Scope Ruling at 3-4. For example, the scope of the orders excludes certain "countertop/butcherblocks," exterior fencing, exterior decking, and exterior siding products, picture frame components, and lumber. *See id.* at 3 (including limitations and specifications for each of these exclusions). Also excluded from the scope of the antidumping duty order are products covered by other antidumping duty orders on "(1) hardwood plywood from the People's Republic of China, (2) multilayered wood flooring from the People's Republic of China, (3) wooden cabinets and vanities from the People's Republic of China, and (4) wooden bedroom furniture from the People's Republic of China." *Id.* at 3 (citing, *e.g.*, *Wooden Cabinets and Vanities and Components Thereof from China: Antidumping Duty Order*, 85 Fed. Reg. 22,126 (Dep't Commerce, Apr. 21, 2020) (other citations omitted)). The scope of the countervailing duty order similarly excludes products covered by other countervailing duty orders, including wooden cabinets and vanities from China. *Id.* at 3-4

(citing *Wooden Cabinets and Vanities and Components Thereof from China: Countervailing Duty Order*, 85 Fed. Reg. 22,134 (Dep't Commerce, Apr. 21, 2020)).[3]  None of these exclusions contain the end-use limitation proposed by Hardware.

In short, Commerce correctly determined that "the scope contains no clear end-use restriction," and thus, Hardware's claim that its merchandise was "further manufactur{ed} into cabinets" was "inconsequential."  Final Scope Ruling at 10.  "Because the scope contains no clear end-use restriction" (and because there was no need to resort to (k)(2) sources such as the product's end-use), Commerce reasonably declined to conduct the scope ruling "based on the end use of the product."  *Id.* at 10 (citing 19 C.F.R. § 351.225(k)(2)).  Instead, Commerce appropriately focused on the physical characteristics detailed in the scope language, *id.* at 9, which "are more readily identifiable than the product's end use," *King Supply*, 674 F.3d at 1348.

3.    Hardware's Plain Meaning Arguments Are Unpersuasive

None of Hardware's arguments demonstrate that the term "mouldings or millwork products" incorporates an end-use restriction.  According to Hardware, wood mouldings or millwork products "are intended to be *used as* coverings for floors, walls, doors, and in other areas in residential and non-residential construction."  Pl. Br. at 6 (emphasis added).  But the scope language does not incorporate any such use restriction.  Nothing in the scope language incorporates "clear exclusionary language" that "leave{s} no reasonable doubt" that the scope excludes products from the order "based solely on {their} end use."  *King Supply*, 674 F.3d at 1349.

---

[3]  Despite claiming that its product is further manufactured into "{d}rawer sides for cabinets," Pl. Br. at 25, 28, Hardware does not argue that it qualifies for the express exclusion for merchandise covered by the orders on wooden cabinets and vanities from China.  *See* Final Scope Order at 3-4 (citations omitted) (listing the scope exclusions).

Hardware next argues that Commerce "skipped" the step of assessing "whether the language of the scope is dispositive." Pl. Br. at 16. That is not accurate. Commerce explicitly considered the scope language in assessing and rejecting Hardware's argument for an end-use limitation. Final Scope Ruling at 10. Commerce explained that "the scope contains no clear end-use restrictions." *Id*. at 10.[4]

Hardware insists that Commerce "fail{ed} to consider" whether its products "are considered 'mouldings and millwork products' under the plain language of the scope." Pl. Br. at 16-17. However, this argument rings hollow because the only interpretation that Hardware offers for "mouldings and millwork products" is an end-use limitation that is inconsistent with Commerce's practice and Federal Circuit precedent. *King Supply*, 674 F.3d at 1347-1351. Commerce correctly declined to adopt that interpretation because "the scope contains no clear end-use restrictions." *See* Final Scope Ruling at 10. Instead, the orders cover "wood mouldings and millwork products" from China, *see id*. at 1 (capitalization altered), and the scope language sets forth physical characteristics of mouldings and millwork products, *id.* at 2-3 (setting forth the scope); *id.* at 8-10 (applying the physical description in the scope to Hardware's merchandise). By applying the physical characteristics in the scope rather than any claimed end-use limitation, Commerce acted consistently with its practice and applicable law. *See King Supply*, 674 F.3d at 1347-51.

Hardware contends that the reasoning in *King Supply* is distinguishable from this case because "{t}he definition of 'wood mouldings {or} millwork' is inherently end-use based." Pl.

---

[4] In any event, this Court has held that Commerce is permitted to use (k)(1) sources such as the description of scope terms set forth in the petition to determine the plain language of the scope of an order. *See Magnum Magnetics Corp. v. United States*, 657 F. Supp. 3d 1387, 1394 (Ct. Int'l Trade 2023) (appeal filed).

Br. at 23. But this is circular reasoning that merely assumes the outcome desired by Hardware. The only concrete distinction offered by Hardware is that the scope language in *King Supply* "contained physical characteristics in its opening sentence," whereas (according to Hardware), the orders in this case do not. *See id*. This claimed distinction is incorrect. Like the order in *King Supply*, the first sentence in the scope of the Orders describes the physical characteristics of the subject merchandise:

> The merchandise subject to the Orders consists of wood mouldings and millwork products that are made of wood (regardless of wood species), bamboo, laminated veneer lumber (LVL), or of wood and composite materials (where the composite materials make up less than 50 percent of the total merchandise), and which are continuously shaped wood or finger-jointed or edge-glued moulding or millwork blanks (whether or not resawn).

Final Scope Ruling at 2. Thus, the reasoning in *King Supply* applies equally in this case.

Hardware argues that "{w}ood boards manufactured into drawer sides are plainly not mouldings or millwork for the same reason that cabinet parts, furniture parts, and lumber are not mouldings or millwork, i.e., they are physically distinct products created by different processes for different purposes." Pl. Br. at 18. But to the extent the products listed by Hardware are outside the scope of the orders, it is because they do not satisfy the required physical characteristics or because they are explicitly excluded from the scope. *See* Section II.A.2; Final Scope Ruling at 3-4 (listing specific exclusions from the scope of the order). The same is not true for the edge-glued boards at issue in this case.

Hardware contends that failing to adopt its end-use restriction would render the term "mouldings and millwork products" mere "surplusage." Pl. Br. at 18. Yet, it makes little sense to say that the umbrella term "mouldings and millwork products" is superfluous when the scope language defines products that are subject to the Orders covering "wood mouldings and millwork

products" from China.  *See* Final Scope Ruling at 1 (capitalization altered); *see also id.* at 2-3.  If anything, it is Hardware's argument that would render superfluous the specific exclusions listed in the scope language.  *See id.*  Following Hardware's flawed logic, lumber, cabinets, and furniture parts are already excluded by the term "mouldings and millwork products," Pl. Br. at 18, rendering superfluous the explicit exclusions for such merchandise, *see* Final Scope Ruling at 3-4 (listing exclusions).[5]

Hardware's claim that Commerce expanded the scope of the orders is also wrong.  *See* Pl. Br. at 19-20 (citing, *e.g.*, *Oregon Steel Mills, Inc. v. United States*, 862 F.2d 1541, 1545 (Fed. Cir. 1988)).  Instead, Commerce interpreted the plain meaning of the scope consistently with its past practice and with the Federal Circuit's reasoning in *King Supply*.  *See* Scope Ruling at 10.

>4.    Hardware's Resort To The (k)(1) Factors Fails To Support An End-Use Limitation

Finally, Hardware argues that certain (k)(1) factors support its proposed end-use limitation.  *See* Pl. Br. at 20-29.  This, too, is incorrect.  None of the sources cited by Hardware establishes the requisite "clear exclusionary language" in the scope language.  *See King Supply*, 674 F.3d at 1349.

For example, Hardware cites the petition's statement that "{a}ll {wood mouldings and millwork products} share the same general physical characteristics, including shape and materials," and "are constructed from similar wood inputs and . . . *intended to be used* as a

---

[5]  To the extent the phrase "wood mouldings and millwork products" could be viewed as surplusage, "{s}urplusage does not always produce ambiguity and {the} preference for avoiding surplusage constructions is not absolute."  *Lamie v. U.S. Tr.*, 540 U.S. 526, 536 (2004).  In *Lamie*, for example, the Supreme Court adopted an interpretation that could render one word surplusage, but nonetheless reflected the "plain meaning" of the statutory language.  *Id.*  In this case, likewise, Commerce's interpretation reflects the plain meaning of the scope language—which contains no "clear exclusionary language" as required to impose an end-use limitation.  *See King Supply*, 674 F.3d at 1349; *see also* Final Scope Ruling at 10.

covering for floors, walls, doors, and other areas, primarily in residential and non-residential construction." Pl. Br. at 21 (citing Petition at 14) (certain emphasis omitted); *see also id.* at 23-24 (citing Petition at 6-7) (listing additional exemplary uses)). But if Commerce had intended to incorporate the end-use limitation proposed by Hardware, it would have included "clear exclusionary language" in the antidumping and countervailing duty "order{s} at issue." *King Supply*, 674 F.3d at 1349. As detailed above, absent such a clear end-use exclusion in the scope language itself, the petition's discussion merely references exemplary or typical uses.

Indeed, in *King Supply*, the scope language referenced "one and only one" use, yet the Court explained that it was "reasonably understood as exemplary and not absolute." *King Supply*, 674 F.3d at 1347, 1349. In this case, where the discussion of use appears only in the petition and not in the scope language, it is even more clear that Commerce did not incorporate any "clear exclusionary language" in the scope. *See King Supply*, 674 F.3d at 1349.

Similarly unpersuasive is Hardware's reliance on the petitioners' questionnaire responses. Pl. Br. at 24 (citing Pet'r Supp. QR at 12-14). These responses likewise listed exemplary uses, with one reference stating "*{f}or example*, both crown mouldings and bed mouldings are used where wall and ceiling meet, whereas base mouldings serve a similar purpose but where wall and floor meet." *Id*. at 24 (citing Pet'r Supp. QR at 12) (emphasis added).

Hardware's reliance on the ITC report also fails to establish any clear end-use exclusion in the scope language. Pl. Br. at 19-20, 26-27 (citing Investigation Nos. 701-TA-636 and 731-TA-1470 (Final ITC Report) (Scope Application Exhibit 5) (P.R. 2)). To the contrary, the Final ITC Report states that "{m}illwork is a general term referring to woodwork that is produced in a mill; the universe of millwork products is extensive and diverse." Final ITC Report at I-12 (P.R. 2). This contradicts Hardware's claim that the plain meaning of "wood

mouldings and millwork products" inherently excludes certain products based on their end use. Pl. Br. at 26-27 (citing, *e.g.*, Final ITC Report at 8, I-13 (P.R. 2)). Further, as Commerce stated in the Final Scope Ruling, "the goal of the ITC in defining the product subject to the scope differs from that of Commerce." Final Scope Ruling at 10. Although ITC Reports are used as (k)(1) sources, the goal of ITC Reports is to determine whether injury has occurred, not to redefine the scope of an order. *Id.* Accordingly, even though there is no clear, end-use restriction in these ITC Reports, this difference in purpose between the ITC Reports and the Orders confirms that Hardware's arguments lack merit.

Hardware's citation to testimony of ITC witnesses is no more persuasive. Pl. Br. at 26-27 (citing ITC Prelim. Conference Tr. at 64, 118, 149 (P.R. 21)). For example, Hardware highlights testimony referencing the separate antidumping and countervailing duty case "on cabinets." *Id.* (citing ITC Prelim. Conference Tr. at 64). But this does not support Hardware's claim for an end-use limitation. If anything, it relates to another portion of the scope excluding merchandise covered by the antidumping and countervailing duty orders on wooden cabinets and vanities from China. Final Scope Ruling at 3-4 (citing *Wooden Cabinets and Vanities and Components Thereof from China: Antidumping Duty Order*, 85 Fed. Reg. at 22,126; *Wooden Cabinets and Vanities and Components Thereof from China: Countervailing Duty Order*, 85 Fed. Reg. at 22,134).

Last, Hardware argues that a prior scope ruling requested by the Loveday Lumber Company, Inc. (Loveday) requires Commerce to limit the scope based upon end use. Pl. Br. at 28 (citing *Final Scope Ruling on the Antidumping and Countervailing Duty Orders on Wood Mouldings and Millwork Products from China: Request by Loveday Lumber Company, Inc.* (May 16, 2022) (Loveday Scope Ruling) (Scope Application Ex. 10) (P.R. 3)). But the Loveday

ruling does not support Hardware's proposed end-use restriction—that the term moulding or millwork excludes merchandise that is later used in cabinetry or drawers.  *See* Pl. Br. at 11; Final Scope Ruling at 5-6, 10 (describing Hardware's proposed end-use restriction).

In the Loveday scope ruling, Commerce found that the merchandise under consideration—consisting of scarf-jointed wood reveal strips and lengthwise sawn scarf-jointed wood squares—was not "continuously shaped wood or finger-jointed or edge-glued moulding or millwork blanks" as required by the scope language.  Loveday Ruling at 8-10.  The Loveday merchandise was "not continuously shaped mouldings or millwork products," because the merchandise was "raw and unfinished" and did not undergo "planing or other moulding-type manufacturing process."  Final Scope Ruling at 9 (citing Loveday Scope Ruling at 10 (P.R. 3)).  Nor were Loveday Lumber's lengthwise sawn wood products "finger-jointed or edge-glued."  Loveday Ruling at 8-10.  Finally, the Loveday merchandise was not "moulding or millwork blanks."  *Id.* at 9.  In reaching this determination, Commerce considered information from the petition and the dictionary definition of 'blank," reflecting that a moulding or millwork blank includes "boards fabricated by joining smaller pieces of wood together, which are later machined or moulded into a final profile."  *Id.* (citations omitted).  Commerce determined that Loveday's "{lengthwise sawn} wood products are not intended to be later manufactured into a moulding or piece of millwork."  *Id.*  The analysis in Loveday thus does not support Hardware's argument that the scope language excludes merchandise if it is later used in cabinetry or drawers.  *See* Final Scope Ruling at 4-5 (describing Hardware's arguments).

Hardware is also wrong in arguing that Commerce offered "insufficient reasons for treating similar situations differently."  Pl. Br. at 29-30 (citing *SKF USA Inc. v. United States*,

263 F.3d 1369, 1382 (Fed. Cir. 2001)).  The merchandise in this case involves edge-glued boards with continuous shaping—thereby satisfying the very physical characteristics of the scope that were lacking in the Loveday ruling.  *See* Final Scope Ruling at 8-10.  Further, unlike the Loveday merchandise that was not continuously shaped or intended to be further manufactured into a moulding or piece of millwork, Hardware's finger-jointed and edge-glued boards are continuously shaped at the time of importation by virtue of the one millimeter score along the side of the board.  Final Scope Ruling at 4, 8-10.  Unlike the merchandise in the Loveday scope ruling, Commerce found that Hardware's product is "indistinguishable from a millwork product at time of entry."  Final Scope Ruling at 9 (citation omitted).  Thus, there is no inconsistency in the two decisions.

      B.      Substantial Evidence Supports Commerce's Finding That Hardware's Edge-Glued Boards Are Continuously Shaped

Commerce also reasonably determined that Hardware's edge-glued boards are continuously shaped.  *See* Scope Ruling at 8-9.  Hardware's arguments to the contrary are unpersuasive.  Pl. Br. at 30-35.

As an initial matter, the relevant scope language states that the subject merchandise "can be continuously shaped along any of its edges, ends, or faces."  Final Scope Ruling at 8; *id.* at 2-3.  In interpreting this language, Commerce considered (k)(1) sources including the petition and findings from the investigation.  *See* 19 C.F.R. § 351.225(k)(1).  For example, the petition "includes an excerpt from the HTSUS defining continuously shaped wood as wood that is 'tongued, *grooved*, rebated, chamfered, V-jointed, beaded, molded, rounded or the like along any of its edges, ends or faces, whether or not planed, sanded, or end jointed.'"  Final Scope Ruling

at 8 (quoting Petition at Exhibit I-10 (Scope Application Ex. 7) (P.R. 2)) (emphasis added).[6]

Additionally, "in comments submitted during the underlying investigation, the petitioner

described "a groove as 'cut with, or parallel to the grain.'"  Final Scope Ruling at 9 (citing Pet'r

Supp. Questionnaire on General Issues Vol. I of Petition at 5 (Jan. 15, 2020) (Scope Application

Ex. 9) (P.R. 2)).  Based on these sources, Commerce determined that "continuously shaped"

wood includes wood that is "grooved."  Final Scope Ruling at 9.

Hardware does not disagree that "continuous shaping" includes a "grooved surface."  *See*

*generally* Pl. Br. at 30-35 (not challenging this point).  Indeed, Hardware's brief discusses

whether its merchandise has "a groove *or other shaping*," reflecting agreement that a "groove" is

a type of continuous shaping.  *See id.* at 32 (emphasis added) *see also id.* at 18 (referencing a

"groove or other continuous shaping").  Hardware instead challenges the evidentiary support for

Commerce's finding that "the 1 mm mark or score" on its merchandise is "properly considered a

groove."  *Id.* at 30.

Substantial evidence supports Commerce's finding that Hardware's edge-glued board

satisfied the requirement for "continuous shaping."  Final Scope Ruling at 8-9.  Specifically,

Hardware's scope application described its product as having a one millimeter score along the

edge of one side of the board.  *See id.* (citation omitted).  Commerce explained that "there is no

evidence that the score differs in any material way from a groove, which is a type of continuous

shaping."  *Id.* at 9.

Hardware concedes that the (k)(1) sources describe a groove as "cut with, or parallel to

the grain," but nonetheless argues that the (k)(1) sources do not specifically mention the term

---

[6]  Although "tariff codes are not dispositive or limiting with regard to what is covered by
the scope," this definition "provides some evidence of what might be considered 'continuously
shaped,'" as used in the petition.  Final Scope Ruling at 8 n.54.

"score," and therefore exclude it.  *See* Pl. Br. at 30-31 (citing, *e.g.*, *Kisor v. McDonough*, 995

F.3d 1347, 1349 (Fed. Cir. 2021); *see also Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 392

(2013)).  This argument elevates form over substance.  Hardware's products contain a one

millimeter "score" that is cut with a straight saw along the length of one side of the board.  Scope

Ruling Application at 4 (P.R. 1, C.R. 1).  The fact that Hardware labeled the lengthwise cut as a

"score" or a "mark" in its application, *see id.*, does not prevent Commerce from recognizing it as

a groove that is cut along the side of the board, and thus qualifies as continuous shaping.  Final

Scope Ruling at 8-9.

Hardware argues that Commerce erroneously treated its products differently than the

merchandise in the Loveday Scope Ruling, which was not continuously shaped.  Pl. Br. at 32-33

(citing Loveday Scope Ruling (P.R. 3)).  As Commerce explained, however, the Loveday scope

ruling is distinguishable because the merchandise under consideration was "rough sawn" and

"raw and unfinished," without going through "planing or other moulding-type manufacturing

process."  Final Scope Ruling at 9 (citing Loveday Scope Ruling at 10).  In this case, by contrast,

Hardware's merchandise has "lightly sanded" corners and a one millimeter score along the

length of one side of the board.  Final Scope Ruling at 4.  "{A}lthough a similar straight saw is

used" in both cases, using the saw "to make a groove" in Hardware's merchandise "creates a

product that is indistinguishable from a millwork product at time of entry."  *Id*. at 9 (citing Scope

Ruling Application at Exhibit 1 (P.R. 2)).  Thus, Commerce reasonably distinguished the prior

Loveday ruling with respect to the "continuous shaping" requirement.

Hardware next contends that a prior U.S. Customs & Border Protection (Customs) ruling

determined that a wood board is not continuously shaped if it is only planed and eased.  Pl. Br. at

33 (citing Rebuttal Cmts. at 17, Ex. 4, attaching Customs Ruling No. N326074 (June 8, 2022)

(P.R. 22)).  But in this case, the edge-glued boards are not only planed and eased, but *also* grooved with a one millimeter cut along the length of the boards.  *See* Scope Ruling Application at 4 (P.R. 1, C.R. 1).  The Customs ruling cited by Hardware thus fails to address the key reason that Commerce found that the edge-glued boards qualify as "grooved" or continuously shaped.[7] *See* Final Scope Ruling at 8-9 (explaining that the one millimeter score along one side of the edge-glued boards qualifies as continuous shaping).

Finally, Hardware argues that Commerce lacked "factual support" for determining that there was "no evidence that the scope differs in any material way from a groove."  Pl. Br. at 30 (citing Final Scope Ruling at 9).  This argument attempts to flip the appropriate standard of review.  Commerce's factual findings in scope decisions are reviewed under the substantial evidence standard, based on the administrative record for the proceeding.  *See* 19 U.S.C. § 1516a(b)(1)(B)(i).  "{T}he burden of creating an adequate record lies with interested parties and not with Commerce." *Nan Ya Plastics Corp. v. United States*, 810 F.3d 1333, 1337–38 (Fed. Cir. 2016) (quoting *QVD Food Co. v. United States*, 658 F.3d 1318, 1324 (Fed. Cir. 2011)).  The record in this case contains information showing that Hardware's products contain a one millimeter score along one side of the edge-glued boards.  Final Scope Ruling Application (P.R. 1, C.R. 1).  The record does not contain—and Hardware did not submit—any evidence showing that this score is materially different than a "groove" that is cut with or parallel to the grain. Based on the record, therefore, "a reasonable mind" could conclude that the one millimeter score

---

[7]  In addition, section 351.225(k) of Commerce's regulations lists prior Customs rulings as a secondary (k)(1) source—not a primary (k)(1) source, such as descriptions of the merchandise in the petition and in the initial investigation.  *See* 19 C.F.R. § 351.225(k)(1).  "{I}n the event of a conflict between these secondary interpretive sources and the primary interpretive sources under paragraph (k)(1)(i) of this section, the primary interpretive sources will normally govern in determining whether a product is covered by the scope of the order at issue."  19 C.F.R. § 351.225(k)(1)(ii).

is cut with or parallel to the grain and thus qualifies as a "groove." *See Downhole Pipe & Equip.*

*v. United States*, 776 F.3d 1369, 1374 (Fed. Cir. 2015) (defining substantial evidence as evidence

that a reasonable mind might accept as adequate to support a conclusion) (citations omitted);

Final Scope Ruling at 8-9. Nothing more is required for Commerce's determination to be

supported by substantial evidence. *See Crawfish Processors Alliance v. United States*, 483 F.3d

1358, 1361 (Fed. Cir. 2007) (quoting *Consol. Edison v. NLRB*, 305 U.S. 197, 229 (1938)).

C.    Commerce Reasonably Explained That The UV Coating On Hardware's Edge-
Glued Boards Does Not Remove Them From The Scope Of The Orders

Hardware argues that Commerce erroneously failed to consider that its boards have a

"UV coating that prevents them from being further painted or stained in a way that wood

mouldings and millwork are." Pl. Br. at 25. As Commerce explained, however, the "UV

coating does not distinguish Hardware's goods as out of scope, but rather, squarely places them

within the scope of the Orders." Final Scope Ruling at 9.

"{T}he scope of the Orders contains specific language stating that products 'are

covered by the scope whether imported . . . coated, (*e.g.*, gesso, polymer, or plastic), primed,

painted, stained, wrapped (paper or vinyl overlay), {or} any combination of aforementioned

surface coatings{.}" *See id.* at 9. Specifically, the relevant scope language provides,

> The covered products may be solid wood, laminated, finger-
> jointed, edge-glued, face-glued, or otherwise joined in the
> production or remanufacturing process and *are covered by the
> scope whether* imported raw, *coated* (e.g., gesso, polymer, or
> plastic), primed, painted, stained, wrapped (paper or vinyl
> overlay), *any combination of the aforementioned surface coatings*,
> treated, or which incorporate rot-resistant elements (whether wood
> or composite).

Final Scope Ruling at 2 (emphases added). In other words, the scope language provides that

applying coating (such as a UV coating) to an otherwise in-scope product does not remove the

30

product from the scope of the orders.  *See id.*  Commerce therefore reasonably explained that the UV coating on Hardware's edge-glued boards does not remove them from the scope of the Orders.  *Id*. at 9.

        D.    There Is No Need For The Court To Reach Hardware's Arguments Based On The (k)(2) Factors

Hardware argues that the (k)(2) factors "further confirm{}" that its merchandise is not covered by the scope, to the extent "the Court regards the scope and (k)(1) factors as ambiguous or not dispositive."  Pl. Br. at 34-38 (discussing the (k)(2) factors).  The Court, however, should not reach Hardware's alternative argument regarding the (k)(2) factors.

Commerce correctly explained that the (k)(1) factors are dispositive and, as such, it "need not analyze the additional factors provided in 19 CFR 351.225(k)(2)."  Final Scope Ruling at 8; *Fedmet Res. Corp.,* 755 F.3d at 918.  The (k)(1) sources are "dispositive" when they "definitively answer the scope question."  *Sango Int'l*, 484 F.3d at 1379.  The Court reviews "Commerce's analysis of the (k)(1) sources against the product in question" as an issue of fact under the substantial evidence standard.  *United Steel & Fasteners, Inc. v. United States*, 947 F.3d 794, 799 (Fed. Cir. 2020) (citing *Meridian Prods*., 851 F.3d at 1382; *Fedmet Res. Corp.*, 755 F.3d at 919-22).  As explained above, substantial evidence supports Commerce's determination that Hardware's edge-glued boards satisfy all physical characteristics of the scope language, as interpreted using (k)(1) sources.  *See* Section II.B&C.  Because the (k)(1) sources "definitively answer the scope question," Commerce correctly declined to analyze the (k)(2) factors.[8]

---

[8]  Even assuming that Commerce was required to consider the (k)(2) factors—and it was not—the Court should reject Hardware's request for this Court to apply the factors in the first instance.  *See* Pl. Br. at 34-38.  Instead, any consideration of the (k)(2) factors would require a remand to allow Commerce to apply these factors and exercise its discretion.

      E.     <u>Hardware's Industry Arguments Are Immaterial</u>

Finally, Hardware argues that Commerce's decision expands the scope of the Orders and raises "serious concerns" regarding the industry support for the orders. Pl. Br. at 19-20. However, the purpose of a scope ruling is to determine whether a product is covered by the scope of an order. *See generally* 19 C.F.R. § 351.225(a). For the reasons articulated above, Commerce's determination that Hardware's edge-glued products are covered by the Orders is supported by substantial evidence and in accordance with the relevant legal framework. Therefore, Hardware's claims regarding industry support are irrelevant to the Court's evaluation of Commerce's Final Scope Ruling.

## **<u>CONCLUSION</u>**

For these reasons, we respectfully request that the Court deny Hardware's motion for judgment upon the agency record, sustain Commerce's final scope ruling in all respects, and enter judgment for the United States.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

/s/ Claudia Burke by Reginald T. Blades
CLAUDIA BURKE
Deputy Director

OF COUNSEL:

/s/ Emma E. Bond
EMMA E. BOND
Trial Attorney
LESLIE M. LEWIS                          Commercial Litigation Branch
Attorney                                 U.S. Department of Justice
Office of the Chief Counsel              P.O. Box 480
    for Trade Enforcement & Compliance   Washington, DC 20044
U.S. Department of Commerce              (202) 305-2034
                                         Email: emma.e.bond@usdoj.gov

March 26, 2024                           Attorneys for Defendant

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify, pursuant to section 2(B)(1) of the Standard Chambers Procedures of this Court, that this brief contains no more than 9,615 words, excluding the table of contents, table of authorities, any addendum containing statutes, rules or regulations, any certificates of counsel, and counsel's signature, as calculated by the word processing system used to prepare this brief (Microsoft Word).

<u>/s/ Emma E. Bond</u>

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: THE HONORABLE TIMOTHY M. REIF, JUDGE

| | | |
|---|---|---|
| HARDWARE RESOURCES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Court No. 23-00150 |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| COALITION OF AMERICAN MILLWORK | ) | |
| PRODUCERS, | ) | |
| | ) | |
| Defendant-Intervenor. | ) | |

## <u>ORDER</u>

Upon consideration of the motion for judgment upon the agency record filed by plaintiff, all responses thereto, the administrative record, and other pertinent papers, it is hereby

ORDERED that the motion is DENIED; and it is further

ORDERED that the Department of Commerce's scope ruling in this matter is sustained; and it is further

ORDERED that judgment is entered in favor of the United States.


Dated: _____, 2024
      New York, NY                               _____
                                                JUDGE