IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| HARDWARE RESOURCES, INC.,<br><br>      Plaintiff,<br><br>  v.<br><br>UNITED STATES,<br><br>      Defendant,<br><br>  and<br><br>COALITION OF AMERICAN MILLWORK PRODUCERS,<br><br>      Defendant-Intervenor. | Before: Hon. Joseph A. Laroski, Jr.,<br>     Judge<br><br>Court No. 23-00150 |

**DEFENDANT-INTERVENOR'S RESPONSE TO PLAINTIFF'S
RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD**

                 Timothy C. Brightbill, Esq.
                 Laura El-Sabaawi, Esq.
                 Elizabeth S. Lee, Esq.

                 WILEY REIN LLP
                 2050 M Street, NW
                 Washington, DC 20036
                 (202) 719-7000

                 *Counsel to Coalition of American Millwork Producers*

Dated:  April 26, 2024

Ct. No. 23-00150

# TABLE OF CONTENTS

Page

I. INTRODUCTION .................................................................................................................. 1

II. RULE 56.2 STATEMENT ..................................................................................................... 1

    A. Administrative Decision Sought to be Reviewed ....................................................... 1

III. ISSUES PRESENTED AND SUMMARY OF ARGUMENT ........................................... 2

    A. Whether Commerce's Determination That Hardware's Edge-Glued Boards are Covered by the Scope of the Orders is Supported by Substantial Evidence? ............................................................................................. 2

    B. Whether Commerce's Scope Ruling Raises Industry Support Concerns? ................. 2

    C. Whether Commerce Correctly Declined to Turn to the (k)(2) Factors? .................... 3

IV. ARGUMENT ........................................................................................................................ 3

    A. Commerce's Determination that Hardware's Edge-Glued Boards are Covered by the Scope of the Orders is Supported by Substantial Evidence ............................................................................................................. 3

        1. Commerce Correctly Found that Hardware's Edge-Glued Boards Meet the Physical Description of Subject Merchandise ........................................... 3

        2. Commerce Correctly Determined that Hardware's Edge-Glued Boards Are Not Removed from the Scope Based on Claimed End Use ......................... 6

        3. Commerce Correctly Determined that Hardware's Edge-Glued Boards Are Not Removed from the Scope Because of a UV Coating ............................ 9

        4. Commerce Properly Distinguished the Loveday Lumber Scope Ruling ........... 10

    B. Hardware's Industry Support Arguments Are Inapposite ....................................... 11

    C. Commerce Correctly Declined to Turn to the (k)(2) Factors .................................. 12

V. CONCLUSION .................................................................................................................... 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Meridian Products, LLC v. United States*,
    851 F.3d 1375 (Fed. Cir. 2017)..................................................................................11

*Novosteel SA v. United States*,
    284 F.3d 1261 (Fed. Cir. 2002)..................................................................................11

*Walgreen Co. of Deerfield, IL v. United States*,
    620 F.3d 1350 (Fed. Cir. 2010)..................................................................................11

**Statutes**

19 U.S.C. § 1673a(c)(4)(E)...............................................................................................11

**Regulations**

19 C.F.R. § 351.225(k)(1)..............................................................................................2, 7

19 C.F.R. § 351.225(k)(1)(ii).............................................................................................5

19 C.F.R. § 351.225(k)(2)(i).............................................................................................12

**Administrative Materials**

*Wood Mouldings and Millwork Products from the People's Republic of China*,
    86 Fed. Reg. 9,486 (Dep't Commerce Feb. 16, 2021) (AD order)..............1, 4, 8, 10

*Wood Mouldings and Millwork Products from the People's Republic of China*,
    86 Fed. Reg. 9,484 (Dep't Commerce Feb. 16, 2021) (CVD order)...........2, 4, 8, 10

Ct. No. 23-00150

**I.     INTRODUCTION**

On behalf of Defendant-Intervenor Coalition of American Millwork Producers ("CAMP"), we respectfully submit the following response to the January 26, 2024 brief filed by Plaintiff Hardware Resources, Inc. ("Hardware"). *See* Pl.'s Br. in Support of Rule 56.2 Mot. for J. on the Agency R. (Jan. 26, 2024), ECF No. 29 ("Hardware's Br."). In general, CAMP agrees with and adopts the arguments presented in the United States' response brief with respect to Hardware's claims, as summarized below. *See* Def.'s Resp. to Pl.'s Mot. for J. on the Agency R. (Mar. 26, 2024), ECF No. 32 ("Govt's Br."). CAMP also discusses additional reasons why the Court should find unpersuasive Hardware's challenges to the administrative determination under appeal.

**II.    RULE 56.2 STATEMENT**

   **A.     Administrative Decision Sought to be Reviewed**

Hardware challenges the U.S. Department of Commerce's ("Commerce") final scope ruling under the antidumping ("AD") and countervailing ("CVD") duty orders on wood mouldings and millwork products from the People's Republic of China (the "Orders") regarding Hardware's edge-glued boards. *See* Mem. from Henry Wolfe, Int'l Trade Compl. Analyst, AD/CVD Operations, Off. VIII, through Irene Darzenta Tzafolias, Dir., AD/CVD Operations, Off. VIII, to James Maeder, Deputy Assistant Sec'y for AD/CVD Operations, re: *Final Scope Ruling on the Antidumping and Countervailing Duty Orders on Wood Mouldings and Millwork Products from the People's Republic of China: Request by Hardware Resources, Inc.* (Aug. 2, 2023), P.R. 25[1] ("Scope Ruling"); *Wood Mouldings and Millwork Products from the People's Republic of China*,

---

[1]   Documents on the public record of the underlying scope inquiry are identified by "P.R." and documents on the confidential record of the underlying scope inquiry are identified by "C.R." followed by the number assigned to the relevant document in the administrative record indices filed with the court on October 11, 2023.

Ct. No. 23-00150

86 Fed. Reg. 9,486 (Dep't Commerce Feb. 16, 2021) (AD order) ("AD Order"); *Wood Mouldings and Millwork Products from the People's Republic of China*, 86 Fed. Reg. 9,484 (Dep't Commerce Feb. 16, 2021) (CVD order) ("CVD Order").

## III.   ISSUES PRESENTED AND SUMMARY OF ARGUMENT

### A.   Whether Commerce's Determination That Hardware's Edge-Glued Boards are Covered by the Scope of the Orders is Supported by Substantial Evidence?

Yes. Commerce correctly found that Hardware's edge-glued boards meet the physical description of subject merchandise, based on the plain language of the scope and the factors outlined in 19 C.F.R. § 351.225(k)(1). Commerce correctly rejected Hardware's argument that its products are out-of-scope because they will be processed into drawer parts after importation. Commerce does not make scope decisions based on end use absent clear scope language requiring otherwise, and here the scope language contains no such end-use limitation. Commerce also correctly determined the Hardware's edge-glued boards remain covered even though they have a UV coating. The scope language expressly states that subject merchandise may be imported raw or coated. Lastly, Commerce properly distinguished the Loveday Lumber scope ruling. Unlike the merchandise in the prior scope ruling, Hardware's edge-glued boards meet the physical description of subject merchandise, and Commerce properly found the merchandise covered by the scope.

### B.   Whether Commerce's Scope Ruling Raises Industry Support Concerns?

No. Hardware's argument that Commerce's scope ruling raises concerns regarding the industry support for the Orders is meritless. Adequate industry support for an investigation is properly determined at the time of initiation and not revisited. Petitioner satisfactorily demonstrated sufficient industry support for the investigations prior to initiation, based on scope language that clearly covers Hardware's boards. Scope language is written in general terms and

2

Ct. No. 23-00150

the express purpose of a scope ruling is to determine whether a product is covered by the scope of an order. Here, Commerce correctly found Hardware's edge-glued boards to fall within the scope of the Orders and there are no industry support concerns.

### C. Whether Commerce Correctly Declined to Turn to the (k)(2) Factors?

Yes. The scope language and (k)(1) factors were dispositive in demonstrating that Hardware's edge-glued boards are covered by the scope. Under its regulations, Commerce only makes an assessment of the (k)(2) factors where the (k)(1) sources are not dispositive, which was not the case here. Thus, Commerce correctly declined to resort to the (k)(2) factors.

## IV. ARGUMENT

### A. Commerce's Determination that Hardware's Edge-Glued Boards are Covered by the Scope of the Orders is Supported by Substantial Evidence

Commerce correctly found that Hardware's edge-glued boards meet the physical description of subject merchandise found in the scope language. Commerce then correctly determined that the edge-glued boards are not removed from the scope based on the claimed end use or because they have a UV coating. Lastly, Commerce properly distinguished the Loveday Lumber scope ruling and reasonably reached a different result here, where Hardware's merchandise meets the physical description of subject merchandise.

#### 1. Commerce Correctly Found that Hardware's Edge-Glued Boards Meet the Physical Description of Subject Merchandise

Contrary to Hardware's claims, Commerce correctly found that the edge-glued boards meet the definition of subject merchandise. *See* Hardware Br. at 15-20. CAMP agrees with and adopts the arguments presented by the Government in this regard. Govt's Br. at 13-14. The scope language states, in relevant part, that

> The merchandise subject to the Orders consists of wood mouldings and millwork products that are made of wood (regardless of wood species), bamboo, laminated veneer lumber (LVL), or of wood and composite materials (where the composite

3

> materials make up less than 50 percent of the total merchandise), and which are continuously shaped wood or finger-jointed or edge-glued moulding or millwork blanks (whether or not resawn).  The merchandise subject to the Orders can be continuously shaped along any of its edges, ends, or faces.
>
> . . .
>
> The merchandise subject to the Orders consists of wood, LVL, bamboo, or a combination of wood and composite materials that is continuously shaped throughout its length (with the exception of any endwork/dados), profiled wood having a repetitive design in relief, similar milled wood architectural accessories, such as rosettes and plinth blocks, and finger-jointed or edge-glued moulding or millworks blanks (whether or not resawn).

AD Order at 9,488; CVD Order at 9,485.

First, as the Government explained, Commerce correctly found that Hardware's edge-glued boards meet the physical characteristics of subject merchandise, noting that they are made of wood, are finger-jointed, and are edge-glued.  Govt's Br. at 14; Scope Ruling at 9.  Hardware does not contest that its product has these physical characteristics.  Govt's Br. at 14.  Rather, Hardware asserts that its edge-glued boards are not finger-jointed or edge-glued moulding or millwork blanks based on its argument that its product is used in downstream cabinetmaking; Hardware does not actually physically differentiate its boards from finger-jointed, edge-glued moulding/millwork blanks.  *See* Hardware Br. 19.

Second, Commerce also correctly found that Hardware's edge-glued boards are continuously shaped, properly relying on the (k)(1) factors.  Govt's Br. at 14, 26-30; Scope Ruling at 8-9.  While Hardware challenges this finding, its claims are unpersuasive.  *See* Hardware Br. at 30-34.  Specifically, Commerce found that Hardware's edge-glued boards have a groove, which is a type of continuous shaping.  Scope Ruling at 9.  Hardware does not contest that a groove is a type of continuous shaping.  Rather, Hardware argues that the marking along the length of its edge-glued boards is not a "groove" but instead a "score."  Hardware Br. at 30-32.  As the Government

4

explained, regardless of what Hardware may call the marking for purposes of this scope ruling, Commerce reasonably found that the "score" was not materially different from a "groove" and that the edge-glued boards with a score were indistinguishable from a millwork product at the time of entry. Govt's Br. at 27-28, Scope Ruling at 8-9.

CAMP also agrees that Hardware's reliance on a separate U.S. Customs and Border Protection ("Customs") ruling finding that a wood board is not continuously shaped if it is only planed and eased is misplaced. Govt's Br. at 28-29; Hardware Br. at 33-34. As the Government explained, Customs rulings are a secondary (k)(1) source, and the primary (k)(1) sources (which Commerce properly relied on to find that grooving is a type of continuous shaping) normally govern to the extent there is a conflict. Govt's Br. at 29, n.7; 19 C.F.R. § 351.225(k)(1)(ii). But as the Government correctly notes, there is no conflict as Hardware's edge-glued boards are not merely planed and eased. Govt's Br. at 28-29. They are grooved, which Hardware does not contest is a type of continuous shaping.

In addition to the Government's arguments, CAMP also notes that Hardware's argument that "score" or "mark" was not mentioned in the Petition or scope language as an example of continuous shaping and thus cannot be considered continuous shaping is devoid of merit. *See* Hardware Br. at 31. Commerce reasonably found scoring to be a type of continuous shaping, and not materially different from grooving, which *was* referenced in the petition. The scope language itself does not contain any examples of continuous shaping, let alone an exhaustive list, but rather provides a general description of subject merchandise. As such, Commerce turned to the Petition, *i.e.*, a (k)(1) factor, for a definition. Scope Ruling at 8-9. First, Commerce noted that the Petition included an excerpt from the Harmonized Tariff Schedule of the United States that defined continuously shaped wood as wood that is "tongued, grooved, rebated, chamfered, V-jointed,

5

beaded, molded, rounded or the like along any of its edges, ends or faces, whether or not planed, sanded, or end jointed." *Id.* at 8 (internal citations omitted). In addition, Commerce noted that Petitioner during the investigations stated that a product was continuously shaped where it was "smoothed/surfaced" and described the term "grooved" as a "cut with, or parallel to the grain." *Id.* at 8-9. Commerce reasonably concluded based on these (k)(1) factors that scoring is another type of continuous shaping, similar to grooving (to the extent that it differs at all). Hardware points to no factual evidence about its boards or record evidence about the meaning of continuous shaping that undermines Commerce's conclusion.

### 2. Commerce Correctly Determined that Hardware's Edge-Glued Boards Are Not Removed from the Scope Based on Claimed End Use

Having found the merchandise to meet the physical description of subject merchandise, Commerce correctly rejected Hardware's argument that its product is out-of-scope based on claimed end use. Hardware's challenge of Commerce's determination boils down to its argument that the edge-glued boards are intended to be processed into drawer parts after importation. *See* Hardware Br. at 15-28. In essence, Hardware's argument is that its merchandise is not subject to the scope because the scope language does not specifically mention "edge-glued boards that are processed into drawer parts," or such end use may not have been specifically mentioned in the original investigations that led to these orders. *See id.* at 15-28. CAMP agrees with and adopts the arguments presented by the Government with respect to Hardware's arguments based on end use. *See* Govt's Br. at 15-26.

First, as the Government explained, Commerce does not make scope decisions based on end use absent clear scope language requiring otherwise, consistent with its well-established practice. *See id.* at 15-17; Scope Ruling at 10. To do so could open a significant loophole in the scope of an AD/CVD order, with the agency having no means to verify post-importation use.

6

Ct. No. 23-00150

Without any defining physical characteristics specific to that end use, it would be simple to claim that a product was intended for a given end-use that would remove it from the scope of the orders and allow the importer to escape duty liability.

Second, Commerce correctly found that the scope language here contains no end-use limitation. *See* Govt's Br. at 17-22; Scope Ruling at 10. As the Government explained, the only scope language that Hardware claims created an end-use restriction was the general term "wood mouldings and millwork products," but this phrase does not reference end use. Govt's Br. at 18; Hardware Br. at 15-20. Even if it did, these types of boards could be considered a "millwork product." Nothing about this phrase indicates that Hardware's edge-glued boards, which meet the physical description of merchandise **at the time of importation**, should be removed from the scope because the importer claims that **after importation**, it will be used as a drawer part.[2] Many wood millwork products could be used to produce another downstream product. CAMP agrees that Hardware's errs in arguing that Commerce skipped the step of assessing whether the scope language is dispositive. Govt's Br. at 20; Hardware Br. at 13-20. Commerce plainly assessed the scope language. The fact that Hardware may disagree with Commerce's interpretation does not mean that Commerce did not consider it.[3]

---

[2] In fact, in the underlying scope ruling, CAMP noted that these edge-glued boards can be produced by U.S. mouldings and millwork products and that CAMP intended that such boards be covered by the scope of the Orders. Letter from Wiley Rein LLP to Sec'y Commerce, re: *Wood Mouldings and Millwork Products from the People's Republic of China: Comments on Hardware Resources Scope Ruling Application* (May 10, 2023) at 7, C.R. 7, P.R. 15.

[3] To the extent that Hardware is arguing that Commerce should not have turned to the (k)(1) factors at all, this argument is without merit and undermined by Hardware's own arguments using the (k)(1) factors. Commerce's regulations contain no prohibition on Commerce considering the (k)(1) factors along with the plain scope language. *See* 19 C.F.R. § 351.225(k)(1) ("In determining whether a product is covered by the scope of the order at issue, the Secretary will consider the language of the scope and may make its determination on this basis alone if the language of the scope, including the descriptions of merchandise expressly excluded from the scope, is

7

Ct. No. 23-00150

On this point, in addition to the Government's arguments, CAMP notes that Hardware ignores the fact that scope language is expressly for the purpose of defining the merchandise subject to an order. Hardware is incorrect that Commerce should have stopped its analysis at the mention of "wood mouldings and millwork products" less than half a sentence into the scope language. Hardware Br. at 15-16. This would render the remainder of the scope language defining subject merchandise superfluous. It is Hardware that is ignoring the plain scope language. Commerce did consider whether the edge-glued boards meet the definition of subject merchandise (*i.e.*, wood mouldings and millwork products) based on an analysis of the entire scope language and reasonably concluded that Hardware's edge-glued boards are made of wood, are finger-jointed, are edge-glued, and are continuously shaped and meet the physical description of subject merchandise. Hardware's assertion that Commerce's interpretation means that any wood board is covered by the Orders is hyperbole and untrue. *Id.* at 19-20. In essence, Hardware is claiming that its edge-glued boards are not covered by the scope because the importer does not call them "wood mouldings and millwork products." *See id.* at 17-18. This is also unpersuasive. The scope language provides numerous examples of in-scope merchandise that may be called by another name. AD Order at 9,488, 9,489; CVD Order at 9,485, 9,486. Regardless of what a party may call its merchandise, if it meets the definition of subject merchandise, it is subject to the scope. Otherwise, there would be widespread evasion and parties could avoid duties simply by calling their merchandise something else.

Lastly, CAMP also agrees with the Government's argument that the (k)(1) sources discussed by Hardware do not impose an end use limitation in the scope language. Govt's Br.

---

dispositive") and (i) ("The following primary interpretive sources may be taken into account under paragraph (k)(1) introductory text of this section, at the discretion of the Secretary").

8

at 22-24; Hardware Br. at 21-24, 26-28.  That certain examples of wood mouldings and millwork products and their exemplary use were provided in the Petition or International Trade Commission ("ITC") determination does not mean that there is an end use limitation in the scope language.  Nor do any of the examples cited by Hardware preclude its edge-glued boards from being covered by the scope.  Hardware Br. at 21-24, 26-28.  As the Government explained, for instance, while the ITC's goal in describing the domestic like product in its determination is different from Commerce's goal in defining the scope of an order, even the ITC's report noted that "{m}illwork is a general term referring to woodwork that is produced in a mill; the universe of millwork products is extensive and diverse."  Govt's Br. at 23.

Hardware's edge-glued boards meet the physical description of subject merchandise, and Commerce correctly rejected Hardware's arguments that the edge-glued boards are removed from the scope based on alleged end use.

### 3. Commerce Correctly Determined that Hardware's Edge-Glued Boards Are Not Removed from the Scope Because of a UV Coating

Hardware also argues that its edge-glued boards are excluded from the scope because they have a UV coating.  Hardware Br. at 25.  CAMP again agrees with and adopts the arguments presented by the Government with respect to these arguments.  *See* Govt's Br. at 30-31.  As the Government explains, the scope language expressly states that subject merchandise may be imported raw or coated.  *See id.* at 30.  Thus, Commerce correctly found that the UV coating on Hardware's edge-glued boards does not remove them from the scope.  *Id.* at 31.  To the contrary, the scope explicitly contemplates that subject merchandise can be coated.

In addition to the Government's arguments, CAMP adds that Hardware appears to be making the argument that UV coating was not named as a specific example of the type of coating

9

Ct. No. 23-00150

that subject merchandise may have in the scope language. *See* Hardware Br. at 25. But the scope language discussing coating is clearly illustrative, not exhaustive.

> The covered products may be solid wood, laminated, finger-jointed, edge-glued, face-glued, or otherwise jointed in the production or remanufacturing process and are covered by the scope whether imported raw, coated (*e.g.*, gesso, polymer, or plastic), primed, painted, stained, wrapped (paper or vinyl overlay), any combination of the aforementioned surface coatings, treated, or which incorporate rot-resistant elements (whether wood or composite).

AD Order at 9,488; CVD Order at 9,485 (emphasis added).

Accordingly, Commerce correctly found that UV coating does not transform Hardware's edge-glued boards into out-of-scope merchandise. Scope Ruling at 9.

### 4. Commerce Properly Distinguished the Loveday Lumber Scope Ruling

Hardware argues that a prior scope ruling on "scarf-jointed wood reveal strips and lengthwise sawn scarf-jointed wood squares" required Commerce to find its edge-glued boards excluded. Hardware Br. at 28-30; Govt's Br. at 25. CAMP agrees with and adopts the arguments presented by the Government with respect to Hardware's arguments regarding the Loveday Lumber scope ruling. *See id.* at 24-26, 28. As the Government explains, Commerce properly distinguished Hardware's edge-glued boards from the merchandise at issue in Loveday Lumber. *Id.* at 24-26. In the Loveday Lumber scope ruling, Commerce explained that the products at issue were raw and unfinished, were not finger-jointed or edge-glued, were not moulding or millwork blanks, were not continuously shaped, and did not undergo planing or other moulding-type manufacturing processes. *Id.* at 25; *see also* Scope Ruling at 9. Commerce did not find Loveday Lumber's merchandise to be excluded simply because they were not intended to be later manufactured into a moulding or millwork product. In contrast, Commerce explained that Hardware's edge-glued boards have a groove and are indistinguishable from a millwork product at the time of entry. Govt's Br. at 9-10; Scope Ruling at 9. Commerce explained that while

10

Ct. No. 23-00150

Hardware's products may be made with a similar type of saw as in Loveday Lumber, the resulting product is different and there is no limitation on the type of tools that can be used to produce subject merchandise. Govt's Br. at 28; Scope Ruling at 9. Commerce thus properly distinguished the prior scope ruling.

### B.     Hardware's Industry Support Arguments Are Inapposite

CAMP agrees with the Government that Hardware errs in arguing that Commerce's scope ruling raises concerns regarding the industry support for the orders. Govt's Br. at 32; Hardware Br. at 19-20. Adequate industry support for an investigation is properly determination at the time of initiation and not revisited. The statute is clear that "{a}fter the administering authority makes a determination with respect to initiating an investigation, the determination regarding industry support shall not be reconsidered." 19 U.S.C. § 1673a(c)(4)(E). Thus, even if the scope of an investigation is amended after initiation, the industry support determination is not reevaluated.

Here, it is even more clear that no industry support issue is raised, given that Hardware's products were covered by the plan language of the scope as it stood when the industry support determination was made. As the Government explained, the express purpose of a scope ruling is to determine whether a product is covered by the scope of an order. Govt's Br. at 32. Indeed, the courts have long recognized that "{b}ecause the descriptions of subject merchandise in an order's scope pertain to a class or kind of goods and therefore must be written in general terms, questions arise as to whether a particular product falls within the scope of an existing order." *See, e.g.*, *Meridian Products, LLC v. United States*, 851 F.3d 1375, 1379 (Fed. Cir. 2017) (internal citations omitted); *see also Walgreen Co. of Deerfield, IL v. United States*, 620 F.3d 1350, 1352 (Fed. Cir. 2010); *Novosteel SA v. United States*, 284 F.3d 1261, 1269 (Fed. Cir. 2002). Scope language is not intended to list every single product that falls within the definition of subject merchandise.

11

Here, Commerce correctly found Hardware's edge-glued boards to fall within the scope of the Orders, and there are no industry support concerns.

C. **Commerce Correctly Declined to Turn to the (k)(2) Factors**

Lastly, CAMP agrees with the Government that Commerce correctly declined to resort to the (k)(2) factors given that the scope language and the (k)(1) factors were dispositive in demonstrating that Hardware's edge-glued boards are covered by the scope. Govt's Br. at 31; Scope Ruling at 11. CAMP adds that Commerce's regulations clearly state that "{i}f {Commerce} determines that the sources under paragraph (k)(1) of this section are not dispositive, {Commerce} will then further consider the following factors." 19 C.F.R. § 351.225(k)(2)(i) (emphasis added). Commerce acted consistently with its regulations. For these reasons, the Court should dismiss Hardware's arguments regarding the (k)(2) factors. Hardware Br. at 34-38.

CAMP submits that even an analysis under the (k)(2) factors would demonstrate that Hardware's edge-glued boards are covered by the scope as a type of wood moulding and millwork product. Nonetheless, CAMP also agrees with the Government that the Court should decline Hardware's request for this Court to conduct a (k)(2) analysis in the first place. Govt's Br. at 31, n.8.

Ct. No. 23-00150

## V. CONCLUSION

For the foregoing reasons, CAMP respectfully requests that the Court sustain Commerce's final scope ruling on Hardware's edge-glued boards.

Respectfully submitted,

*/s/ Timothy C. Brightbill*
Timothy C. Brightbill, Esq.
Laura El-Sabaawi, Esq.
Elizabeth S. Lee, Esq.

**WILEY REIN LLP**
2050 M Street, NW
Washington, DC 20036
(202) 719-7000

*Counsel to the Coalition of American Millwork Producers*

Dated:  April 26, 2024

<u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Chamber Procedure 2(B)(1), the undersigned certifies that this brief complies with the word limitation requirement. The word count for the Defendant-Intervenor's Response to Plaintiff's Rule 56.2 Motion for Judgment on the Agency Record, as computed by Wiley Rein LLP's word processing system (Microsoft Word 365), is 3,737 words.

<u>/s/ Timothy C. Brightbill</u>
(Signature of Attorney)

<u>Timothy C. Brightbill, Esq.</u>
(Name of Attorney)

<u>Coalition of American Millwork Producers</u>
(Representative Of)

<u>April 26, 2024</u>
(Date)