**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: THE HONORABLE JOSEPH A. LAROSKI, JR., JUDGE

| | |
|---|---|
| HARDWARE RESOURCES, INC.,       ) | |
|      ) | |
| Plaintiff,      ) | |
|      ) | |
| v.      ) | Court No. 23-00150 |
|      ) | |
| UNITED STATES,      ) | |
|      ) | |
| Defendant,      ) | |
|      ) | |
| and      ) | |
|      ) | |
| COALITION OF AMERICAN MILLWORK      ) | |
| PRODUCERS,      ) | |
|      ) | |
| Defendant-Intervenor.      ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S COMMENTS ON REMAND RESULTS**

Of Counsel:

LESLIE M. LEWIS
Senior Attorney
Department of Commerce
Office of Chief Counsel for Trade
Enforcement & Compliance
1401 Constitution Avenue, NW
Washington, DC 20005

YAAKOV M. ROTTH
Acting Assistant Attorney General

PATRICIA M. McCARTHY
Director

CLAUDIA BURKE
Deputy Director

EMMA E. BOND
Senior Trial Counsel
Commercial Litigation Branch
U.S. Department of Justice
P.O. Box 480 | Ben Franklin Station
Washington, D.C. 20044
202-305-2034 | emma.e.bond@usdoj.gov

May 30, 2025

*Attorneys for Defendant*

## TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................................... i

TABLE OF AUTHORITIES ........................................................................................... iii

DEFENDANT'S RESPONSE TO PLAINTIFF'S COMMENTS ON REMAND RESULTS ...... 1

BACKGROUND ............................................................................................................. 2

    I.    Commerce Issues A Final Scope Ruling Finding That Hardware Resources' Edge-Glued Boards Are Covered By The Orders ................................................... 2

    II.    The Court Holds Commerce Failed To Consider The Meaning Of A "Wood Moulding Or Millwork Product," And Remanded The Action For Further Consideration ...................................................................................................... 4

    III.    On Remand, Commerce Again Determines That Hardware Resources' Edge-Glued Boards Are Covered By The Scope Of The Orders ................................... 4

ARGUMENT ................................................................................................................... 6

    I.    Standard Of Review ............................................................................................... 6

    II.    Commerce's Remand Redetermination Is Supported By Substantial Evidence And Otherwise Lawful ........................................................................................... 7

        A.    Substantial Evidence Supports Commerce's Finding That The Edge-Glued Boards Are Wood Mouldings And Millwork Products ............................. 8

            1.    Commerce Did Not Improperly Expand The Scope ..................... 11

            2.    Commerce Did Not Reintroduce Deleted Scope language, And Instead Interpreted The Scope Using Primary Interpretive Sources, Consistent With Section 351.225(k)(1) ......................................... 15

            3.    Commerce Correctly Rejected Hardware Resources' Proposed End-Use Restriction ................................................................... 19

            4.    Hardware Resources' Arguments Based On The ITC Report Are Unpersuasive ............................................................................... 22

            5.    Commerce Properly Considered The Loveday Scope Ruling ...... 26

B.  Substantial Evidence Supports Commerce's Finding That Hardware Resources' Edge-Glued Boards Are Continuously Shaped...................... 28

CONCLUSION........................................................................................................................... 32

# TABLE OF AUTHORITIES

## CASES

*A.L. Patterson, Inc. v. United States*,
  585 Fed. App'x 778 (Fed. Cir. 2014) ........................................................... 24

*Am. Silicon Techs. v. United States*,
  261 F.3d 1371 (Fed. Cir. 2001) ..................................................................... 7

*Amanda Foods (Vietnam) Ltd. v. United States*,
  774 F. Supp. 2d 1286 (Ct. Int'l Trade 2011) ............................................... 6

*Bethlehem Steel Corp. v. United States*,
  223 F. Supp. 2d 1372 (Ct. Int'l Trade 2002) ............................................... 6

*Columbia Forest Prods. v. United States,*
  399 F. Supp. 3d 1283 (Ct. Int'l Trade 2019) ............................................. 18

*Consol. Edison v. NLRB*,
  305 U.S. 197 (1938) ....................................................................................... 6

*Crawfish Processors Alliance v. United States*,
  483 F.3d 1358 (Fed. Cir. 2007) ..................................................................... 6

*Downhole Pipe & Equip. v. United States*,
  776 F.3d 1369 (Fed. Cir. 2015) ................................................................... 30

*Duferco Steel, Inc. v. United States*,
  296 F.3d 1087 (Fed. Cir. 2002) ................................................... 11, 12, 16

*Eckstrom Indus., Inc. v. United States*,
  254 F.3d 1068 (Fed. Cir. 2001) ................................................................... 11

*Fedmet Res. Corp. v. United States*,
  755 F.3d 912 (Fed. Cir. 2014) ..................................................................... 17

*Fujitsu Gen. Ltd. v. United States*,
  88 F.3d 1034 (Fed. Cir. 1996) ....................................................................... 7

*Hardware Resources, Inc. v. United States*,
  744 F. Supp. 3d 1358 (Ct. Intl. Trade 2024) ................................... passim

*Hitachi Metals, Ltd. v. United States*,
  949 F.3d 710 (Fed. Cir. 2020) ..................................................................... 23

*King Supply Co. v. United States*,
  674 F.3d 1343 (Fed. Cir. 2012).................................................................... passim

*MacLean Power L.L.C. v. United States*,
  359 F. Supp. 3d 1367 (Ct. Intl. Trade 2019) .............................................. 13

*Mid Continent Nail Corp. v. United States*,
  725 F.3d 1295 (Fed. Cir. 2013)..................................................................... 13

*NTN Bearing Corp. v. United States*,
  74 F.3d 1204 (Fed. Cir. 1995)....................................................................... 28

*Peer Bearing Co.-Changshan v. United States*,
  986 F. Supp. 2d 1389 (Ct. Int'l Trade 2014) .............................................. 12

*Saha Thai Steel Pipe Co. v. United States*,
  661 F. Supp. 1198 (Ct. Int'l Trade 1987) .................................................... 19

*Smith Corona Corp. v. United States*,
  915 F.2d 683 (Fed. Cir. 1990)................................................................. 12, 16

*Star Pipe Products v. United States*,
  365 F. Supp. 3d 1277 (Ct. Int'l Trade 2019) .............................................. 22

*Stein Indus. Inc. v. United States*,
  365 F. Supp. 3d 1364 (Ct. Int'l Trade 2019) .............................................. 22

*Trade Associates Group, v. United States*,
  961 F. Supp. 2d 1306 (Ct. Intl. Trade 2014)............................................... 22

*Trendium Pool Products, Inc. v. United States*,
  399 F. Supp. 3d 1335 (Ct. Intl. Trade 2019) .............................................. 24

*United States v. Roses, Inc.*,
  706 F.2d 1563 (Fed. Cir. 1983)..................................................................... 19

*Universal Camera Corp. v. NLRB*,
  340 U.S. 474 (1951)......................................................................................... 6

*Vietnam Finewood Co. v. United States*,
  633 F. Supp. 3d 1243 (Ct. Int'l Trade 2023) ........................................ 18, 19

## STATUTES

19 U.S.C. § 1516a(b)(1)(B)(i)................................................................................ 6

19 U.S.C. § 1516a(a)(2)(B)(vi)............................................................................... 6

19 U.S.C. § 1671 ...................................................................................... 23

19 U.S.C. § 1673 ...................................................................................... 23

19 U.S.C. § 1677j(c) ................................................................................ 18

## REGULATIONS

19 C.F.R. § 351.202(b)(5) .................................................................. 10, 20

19 C.F.R. § 351.225(k) ............................................................................ 12

19 C.F.R. § 351.225(k)(1) ................................................................. 1, 4, 15

19 C.F.R. § 351.225(k)(1)(i) ............................................................. passim

## FEDERAL REGISTER NOTICES

*Wood Mouldings and Millwork Products from Brazil and China: Initiation of Less-Than-Fair-Value Investigations*,
    85 Fed. Reg. 6,502 (Dep't of Commerce, February 5, 2020) .................... 15

*Wood Mouldings and Millwork Products from China: Initiation of Countervailing Duty Investigation*,
    85 Fed. Reg. 6,513 (Dep't of Commerce, February 5, 2020) .................... 15

*Wooden Cabinets and Vanities and Components Thereof from China: Antidumping Duty Order* (*Cabinets AD Order*),
    85 Fed. Reg. 22,126 (Dep't of Commerce, Apr. 21, 2020) ....................... 3

*Wooden Cabinets and Vanities and Components Thereof from China: Countervailing Duty Order* (*Cabinets CVD Order*),
    85 Fed. Reg. 22,134 (Dep't of Commerce, Apr. 21, 2020) ....................... 3

*Wood Mouldings and Millwork Products from China: Countervailing Duty Order*,
    86 Fed. Reg. 9,484 (Dep't of Commerce, Feb. 16, 2021) ......................... 2

*Wood Mouldings and Millwork Products from China: Amended Final Antidumping Duty Determination and Antidumping Duty Order*,
    86 Fed. Reg. 9,486 (Dep't of Commerce, Feb. 16, 2021) ......................... 2

*Regulations To Improve Administration and Enforcement of Antidumping and Countervailing Duty Laws*,
    86 Fed. Reg. 52,300 (Dep't of Commerce, Sept. 20, 2021) ...................... 16

## IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE JOSEPH A. LAROSKI, JR., JUDGE

| | |
|---|---|
| HARDWARE RESOURCES, INC.,        ) | |
|         ) | |
|        Plaintiff,      ) | |
|         ) | |
| v.         ) | Court No. 23-00150 |
|         ) | |
| UNITED STATES,        ) | |
|         ) | |
|        Defendant,    ) | |
|         ) | |
|      and       ) | |
|         ) | |
| COALITION OF AMERICAN MILLWORK  ) | |
| PRODUCERS,        ) | |
|         ) | |
|        Defendant-Intervenor.   ) | |

## DEFENDANT'S RESPONSE TO PLAINTIFF'S COMMENTS ON REMAND RESULTS

Defendant, the United States, respectfully submits this response to the comments filed by plaintiff, Hardware Resources, Inc., concerning the U.S. Department of Commerce's remand results in this matter. Final Remand Redetermination (Mar. 17, 2025), ECF No. 53 (R.P.R. 7)[1] (Remand Results). In the remand order, the Court held that Commerce's prior scope ruling failed to address "the threshold question of whether the product at issue is a wood moulding or millwork product." *Hardware Resources, Inc. v. United States*, 744 F. Supp. 3d 1358, 1366 (Ct. Int'l Trade 2024). On remand, Commerce relied on primary interpretive sources in 19 C.F.R. § 351.225(k)(1) to interpret the phrase "wood moulding or millwork products" as products that "are manufactured from a type of wood or composite material and are woodwork or building material that are produced in a mill or otherwise undergo

---

[1] P.R. and C.R., respectively, denote documents in the public and confidential record of the scope inquiry. R.P.R. and R.C.R., respectively, reflect documents in the public and confidential versions of the remand record.

remanufacturing." Remand Results at 11. Commerce determined that Hardware Resources'

edge-glued boards meet this threshold standard and also satisfy all other scope requirements.

*Id.* at 11-13. Because this determination is lawful and supported by substantial evidence, we

respectfully request that the Court sustain the remand results in full.

## BACKGROUND

I.      Commerce Issues A Final Scope Ruling Finding That Hardware Resources' Edge-
        Glued Boards Are Covered By The Orders

This proceeding arises from Hardware Resources' scope ruling application, asking

Commerce to determine that its edge-glued boards are outside the scope of the antidumping

and countervailing duty orders covering wood moulding and millwork products from the

People's Republic of China (China). Scope Application Cover Letter at 2 (P.R. 1, C.R. 1)

(citing *Wood Mouldings and Millwork Products from China: Amended Final Antidumping

Duty Determination and Antidumping Duty Order*, 86 Fed. Reg. 9,486 (Dep't of Commerce,

Feb. 16, 2021) (AD Order); *Wood Mouldings and Millwork Products from China:

Countervailing Duty Order*, 86 Fed. Reg. 9,484 (Dep't of Commerce, Feb. 16, 2021) (CVD

Order) (collectively, the Orders).

The scope of the Orders covers, in relevant part, "wood mouldings and millwork

products that are made of wood . . . , bamboo, laminated veneer lumber (LVL), or of wood and

composite materials . . . , and which are continuously shaped wood or finger-jointed or edge-

glued moulding or millwork blanks (whether or not resawn)." *See* Remand Results at 2

(quoting the scope of the Orders). The Orders exclude a number of products, including certain

picture frame components, exterior decking products, doors, and parts of stair steps. *Id.* at 3-4.

The Orders also exclude products covered by antidumping and countervailing duties orders

covering wooden cabinets and vanities from China. *See id.* at 4; *see also* AD Order (citing

*Wooden Cabinets and Vanities and Components Thereof from China: Antidumping Duty Order* (*Cabinets AD Order*), 85 Fed. Reg. 22,126 (Dep't of Commerce, Apr. 21, 2020)); CVD Order (citing *Wooden Cabinets and Vanities and Components Thereof from China: Countervailing Duty Order* (*Cabinets CVD Order*), 85 Fed. Reg. 22,134 (Dep't of Commerce, Apr. 21, 2020)).

In its scope ruling application, Hardware Resources described its edge-glued boards as "solid edge-glued boards," which are "finger-jointed and edge-glued," with an ultraviolet (UV) coating "applied to the boards except the bottom edge that is left uncoated/unfinished." Scope Application at 4 (P.R. 1, C.R. 1). The corners of the boards are "lightly sanded to smooth the corners to 1/16 of an inch." *Id.* At the time of import to the United States, "the boards have a small mark ('score') of approximately 1 {millimeter} that has been added by a straight saw along the length of one side of the board{.}" *Id.* According to Hardware Resources, the edge-glued boards "will be further processed into cabinet parts"—"though they could be used in other applications." *Id.* at 7; *see also id.* at 4. Hardware Resources argued that its edge-glued boards are not cabinets or cabinet parts at the time of entry into the United States, *id.* at 6 n.5, and also are "not moulding or millwork products described by the scope" of the Orders, *see id.* at 7.

Commerce conducted a scope inquiry and on August 2, 2023, issued a final scope ruling determining that Hardware Resources' edge-glued boards are covered by the scope of the Orders. Final Scope Ruling at 11 (P.R. 25). Commerce determined that Hardware Resources' edge-glued boards are "made of wood, continuously shaped wood, finger-jointed, and edge-glued mouldings or millwork blanks (whether or not resawn)," as set forth in the Orders. *Id.*

II.    The Court Holds Commerce Failed To Consider The Meaning Of A "Wood Moulding
      Or Millwork Product," And Remanded The Action For Further Consideration

Hardware Resources then filed this action challenging Commerce's final scope ruling.

*See* Compl. at 1-2, ECF No. 10 (Sept. 1, 2023).  After briefing and oral argument, on

December 16, 2024, the Court issued an order remanding the action to Commerce.  *Hardware*

*Resources*, 744 F. Supp. 3d at 1366.  The Court held that Commerce failed to decide the

"threshold question of whether the product at issue is a wood moulding or millwork product."

*Id.*  The Court did not reach other disputed issues, such as any inherent end-use limitation in

the scope language or Commerce's interpretation of the term "continuously shaped."  *Id.*  The

Court ordered Commerce to reconsider its decision in light of the deficiencies identified by the

Court and to redetermine whether Hardware Resources' edge-glued boards are within the

scope of the Orders.  *Id.*

III.    On Remand, Commerce Again Determines That Hardware Resources' Edge-Glued
       Boards Are Covered By The Scope Of The Orders

On remand, Commerce continued to find that Hardware Resources' edge-glued boards

are within the scope of the Orders.  Remand Results at 2, 13.  As Commerce explained, the

edge-glued boards are "wood mouldings and millwork products" that are "made of wood,"

"continuously shaped, finger-jointed, and edge-glued."  *Id.* at 13; *see also id.* 11-13.

As a threshold matter, Commerce relied on the interpretive sources in 19 C.F.R.

§ 351.225(k)(1)(i) to interpret the phrase "wood mouldings and millwork products."  *Id.* at 10-

11.  When interpreting the scope language, Commerce has the "discretion" to consider the

primary interpretive sources listed in section 351.225(k)(1).  The primary (k)(1) sources

include descriptions from the petition and investigation, prior Commerce determinations

relating to the same order or other orders with similar language, or prior International Trade Commission (ITC) determinations relating to the same order.  19 C.F.R. § 351.225(k)(1)(i).

In this case, Commerce relied on primary interpretive sources—including the petition and preliminary scope decision memorandum in the underlying investigation—and interpreted "wood mouldings and millwork products" to mean "products that are manufactured from a type of wood or composite material and are woodwork or building materials that are produced in a mill or otherwise undergo remanufacturing."  Remand Results at 11.  The petition described "wood mouldings and millwork products" as products that "are manufactured from softwood,  hardwood, laminated veneer lumber, or some combination of wood and composite materials, and are woodwork or building materials that are produced in a mill or otherwise undergo remanufacturing."  Remand Results at 10-11 (quoting Ex. 7 to Scope Ruling Application at 6 (Petition) (P.R. 2)).  During the investigation, Commerce explained that the petitioner had "clearly described" wood mouldings and millwork products in this way—as products that "are manufactured from softwood,  hardwood, laminated veneer lumber, or some combination of wood and composite materials, and are woodwork or building materials that are produced in a mill or otherwise undergo remanufacturing."  Remand Results at 11 (quoting Preliminary Scope Decision Memorandum (Prelim. Scope Mem.) at 8, Att. I to Remand Results).

Commerce adopted the same interpretation of "wood mouldings and millwork products" on remand.  *See id.*  Applying this interpretation, Commerce found that Hardware Resources' edge-glued boards satisfy the "wood mouldings or millwork" requirement because "they are manufactured from a type of wood or composite material and are woodwork or

building materials that are produced in a mill or otherwise undergo remanufacturing."

Remand Results at 13; *see also id.* at 11-12.

Commerce also continued to find that Hardware Resources' edge-glued boards satisfy

the remaining scope requirements because they are "made of wood," and "continuously

shaped, finger-jointed, and edge-glued."  Remand Results at 13.

## **ARGUMENT**

### I.    Standard Of Review

"The same standard of review applies to the review of a remand determination as to the

review of the original determination."  *Bethlehem Steel Corp. v. United States*, 223 F. Supp. 2d

1372, 1375 (Ct. Int'l Trade 2002) (citations omitted).  Accordingly, the "court will sustain

{Commerce's} determination upon remand if it complies with the court's remand order, is

supported by substantial evidence on the record, and is otherwise in accordance with law."

*Amanda Foods (Vietnam) Ltd. v. United States*, 774 F. Supp. 2d 1286, 1290 (Ct. Int'l Trade

2011) (citing, *e.g.*, 19 U.S.C. § 1516a(b)(1)(B)(i) (other citations omitted)).

Commerce's determination "as to whether a particular type of merchandise is within

the class or kind of merchandise" described in an antidumping or countervailing duty order is

reviewable by the Court pursuant to 19 U.S.C. § 1516a(a)(2)(B)(vi).  Such scope

determinations are "highly fact-intensive and case-specific."  *King Supply Co. v. United*

*States*, 674 F.3d 1343, 1345 (Fed. Cir. 2012).  The Court may review whether such a

determination is "unsupported by substantial evidence on the record or otherwise not in

accordance with law."  19 U.S.C. § 1516a(b)(1)(B)(i).

"'Substantial evidence' means 'such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion."  *Crawfish Processors Alliance v. United States*,

483 F.3d 1358, 1361 (Fed. Cir. 2007) (quoting *Consol. Edison v. NLRB*, 305 U.S. 197, 229

(1938)); *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951) (stating "{s}ubstantial

evidence is more than a mere scintilla").  "Even if it is possible to draw two inconsistent

conclusions from evidence in the record, such a possibility does not prevent Commerce's

determination from being supported by substantial evidence." *Am. Silicon Techs. v. United

States*, 261 F.3d 1371, 1376 (Fed. Cir. 2001) (citing *Fujitsu Gen. Ltd. v. United States*, 88 F.3d

1034, 1044 (Fed. Cir. 1996)).

II.    **Commerce's Remand Redetermination Is Supported By Substantial Evidence And
       Otherwise Lawful**

Commerce's remand redetermination is lawful and supported by substantial evidence.

In determining that Hardware Resources' edge-glued boards are covered by the Orders,

Commerce "consider{ed} the language of the scope," and the "primary interpretative sources"

listed in 19 C.F.R. § 351.225(k)(1)(i).  According to the language of the scope, the Orders

cover merchandise with the following characteristics, in relevant part:

> (1) "wood mouldings and millwork products"
>
> (2) "that are made of wood . . . , bamboo, laminated veneer lumber
>     (LVL), or of wood and composite materials, (where the
>     composite materials make up less than 50 percent of the total
>     merchandise),"
>
> (3) " . . . and which are continuously shaped wood or finger-
>     jointed or edge-glued moulding or millwork blanks (whether or
>     not resawn)."

Remand Results at 2.

Consistent with the scope of the Orders, Commerce determined that Hardware

Resources' edge-glued boards "constitute 'wood mouldings and millwork products'" and "are

made of wood," and "continuously shaped, finger-jointed, and edge-glued."  Remand Results

at 13.  Hardware Resources challenges the remand results, arguing that its edge-glued boards

are not "wood mouldings and millwork products" and are not "continuously shaped." Pl. Cmts. at 2-30, ECF No. 59. As explained below, Commerce's determination is lawful and supported by substantial evidence.

> A. Substantial Evidence Supports Commerce's Finding That The Edge-Glued Boards Are Wood Mouldings And Millwork Products

First, Hardware Resources' edge-glued boards qualify as wood mouldings and millwork products as that phrase is used in the Orders. Relying on primary interpretive sources in section 351.225(k)(1)(i), Commerce found that "'wood mouldings and millwork products' means products that are manufactured from a type of wood or composite material and are woodwork or building materials that are produced in a mill or otherwise undergo remanufacturing," Remand Results at 11.

Commerce's interpretation is supported by the record. The petition describes "{w}ood moulding and millwork products" as products that are "manufactured from softwood, hardwood, laminated veneer lumber, or some combination of wood and composite materials," and "are woodwork or building materials that are produced in a mill or otherwise undergo remanufacturing." Ex. 7 to Scope Ruling Application (Petition) (P.R. 2); *see also* Remand Results at 11. In the preliminary scope decision memorandum, moreover, Commerce "agreed with the petitioner" that wood moulding and millwork produces were "'clearly described'" as having those characteristics—*i.e.*, being "'manufactured from softwood, hardwood, laminated veneer lumber, or some combination of wood and composite materials'" and as "'woodwork or building materials that are produced in a mill or otherwise undergo remanufacturing.'" Remand Results at 11 (citation omitted); *see also* Prelim. Scope Mem. at 8-9, Att. I to Remand Results. Also supporting this interpretation, the ITC Report (another primary (k)(1) source) describes millwork as "*a general term referring to woodwork that is produced in a mill*; the

universe of millwork products is extensive and diverse." Remand Results at 21 (citing Ex. 5 to Scope Application (ITC Report) at I-12 (P.R. 2)) (emphasis in Remand Results).

Commerce acknowledged that overlapping language—"woodwork or building materials that are produced in a mill or otherwise undergo remanufacturing"—was initially included in the petition's scope and removed by the petitioner in the early stages of the investigation. Remand Results at 17. But Commerce explained this was not dispositive of the meaning of "wood moulding or millwork products," when multiple inferences could be drawn from the petitioner's removal of this language from the scope—including that the omitted language was "redundant because it is already covered by the scope through other language." Remand Results at 17, 20-21. Instead, Commerce focused on the meaning of "wood moulding or millwork products"—a term that remained in the scope throughout the investigation and in the ultimate order. Commerce found that the relevant primary interpretive sources—the petition and preliminary scope decision memorandum—supported its interpretation of "wood mouldings or millwork products." Remand Results at 11.

Commerce also disagreed with Hardware Resources' argument that the phrase "'wood mouldings and millwork products' carries an implied end-use restriction." Remand Results at 22. As Commerce explained, end-use restrictions "are disfavored because they can be difficult to enforce{.}" Remand Results at 22 (quoting *King Supply Co. LLC v. United States*, 674 F.3d 1343, 1348 (Fed. Cir. 2012)). "{T}he physical characteristics of an imported product are more readily identifiable than the product's end use, which may be unclear at the time of importation," so end-use limitations raise enforcement and circumvention issues. *Id.* (quoting *King Supply*, 674 F.3d at 1348); *see also id.* at 25. Thus, "when an end-use requirement applies to a scope, Commerce must use express end-use terms," leaving "no reasonable doubt

that the products were intended to be out of scope." Remand Results at 22 (citing *King Supply*, 674 F.3d at 1348).

Here, Commerce explained that Hardware Resources failed to identify any express end-use limitation in the scope language. Remand Results at 22. Instead, Hardware Resources cited "multiple instances of end-uses mentioned in the petition." Remand Results at 22 (citing Hardware Resources Comments at 14 (R.P.R. 2)); *see also* Hardware Resources Comments at 14 (R.P.R. 2) (citing Petition at 6-7 (P.R. 2), Ex. 9 to Scope Ruling Application (Pet'r First Supp. Questionnaire Resp.) at Ex. I-Supp-5 (P.R. 3)). As Commerce explained, these descriptions are merely "examples of purposes for which the products within the scope could be used"—a requirement for all petition filings. Remand Results at 22 (citing 19 C.F.R. § 351.202(b)(5)). Because Hardware Resources failed to identify any express end-use limitation in the scope language, Commerce correctly determined that the phrase "wood mouldings and millwork products" did not carry any end-use restriction.

In sum, the (k)(1) interpretive sources support Commerce's interpretation of the term "wood mouldings and millwork products" to mean "products that are manufactured from a type of wood or composite material and are woodwork or building materials that are produced in a mill or otherwise undergo remanufacturing." Remand Results at 11.

Finally, substantial evidence also supports Commerce's finding that the merchandise described in Hardware Resources' scope application qualifies as wood moulding and millwork products under this definition. Remand Results at 11-12. As described in its scope ruling application, Hardware Resources' merchandise is produced using "pieces of scrap wood" that are "finger-jointed and edge-glued together into boards," with the boards then "plan{e}d, trimmed, coated, cut, lightly sanded, and scored using a straight saw along the board length."

Remand Results at 11-12 (citing Scope Application at 9 (P.R. 1) and Ex. 1 (P.R. 2)). Commerce found that these manufacturing steps reflected "a remanufacturing process of scrap wood to a completed woodwork or building material:  an edge-glued board."  *Id.* at 12.  Thus, Commerce determined that the edge-glued boards "are manufactured from a type of wood or composite material and are woodwork or building materials that are produced in a mill or otherwise undergo remanufacturing," and therefore "constitute 'wood mouldings and millwork products'" within the meaning of the Orders.  *Id.* at 13.  Commerce thus complied with the Court's remand order to decide "the threshold question of whether the product at issue is a wood moulding or millwork product," *Hardware Resources*, 744 F. Supp. 3d at 1366, and Commerce's finding is supported by substantial evidence.

Hardware Resources does not dispute that its merchandise qualifies as wood mouldings and millwork products under Commerce's interpretation of the phrase.  Instead, it argues that the phrase "wood mouldings and millwork products" has a narrower meaning than the one adopted by Commerce and incorporates an end-use restriction.  *See, e.g.*, Pl. Cmts. at 2-25.  As discussed below, Hardware Resources' arguments are unpersuasive.

        1.    <u>Commerce Did Not Improperly Expand The Scope</u>

First, Hardware Resources claims that Commerce improperly expanded the scope and that Commerce's interpretation of "wood mouldings and millwork products" is "unsupported by substantial record evidence."  Pl. Cmts. at 2-7 (capitalization altered).  Rather than expanding the scope, however, Commerce simply interpreted the threshold scope language "wood mouldings and millwork products," consistent with the (k)(1) interpretive sources.  *See* Remand Results at 11.

"Commerce cannot 'interpret' an antidumping order so as to change the scope of that order, nor can Commerce interpret an order in a manner contrary to its terms." *Duferco Steel, Inc. v. United States*, 296 F.3d 1087, 1095 (Fed. Cir. 2002) (citing *Eckstrom Indus., Inc. v. United States*, 254 F.3d 1068, 1072 (Fed. Cir. 2001)); *see, e.g.*, Pl. Cmts. at 5 (citing *Duferco Steel*). Commerce can, however, "interpret" its orders "in accordance with the methodology set forth in its regulations." *Id.* at 1096-1097 (citing 19 C.F.R. § 351.225(k)). Indeed, Commerce may interpret scope orders "with the aid of the antidumping petition, the factual findings and legal conclusions adduced from the administrative investigations, and the preliminary order." *Id.* (quoting *Smith Corona Corp. v. United States,* 915 F.2d 683, 685 (Fed. Cir. 1990)).

In the Remand Results, Commerce relied on primary interpretive sources—including the petition and preliminary scope decision—to interpret the meaning of "wood mouldings and millwork products." *See, e.g.*, Remand Results at 11. The case is thus distinguishable from those cited by Hardware Resources as involving improper expansion of the scope. *See, e.g.*, Pl. Cmts. at 5 (citing, *e.g.*, *Duferco Steel*, 296 F.3d at 1089). In *Duferco*, for example, the Federal Circuit held that Commerce's scope ruling was invalid when Commerce failed to identify scope language that would cover the merchandise at issue. *Duferco*, 296 F.3d at 1098. Indeed, Commerce admitted that no "specific language" in the final orders supported the scope ruling finding the merchandise in-scope. *Id.* at 1095. In this case, by contrast, the scope plainly includes the phrase "wood mouldings and millwork products," and Commerce interpreted that phrase consistently with (k)(1) primary interpretive sources, including the petition and preliminary scope decision memorandum. Remand Results at 11 (quoting, *e.g.*, Petition at 6 (P.R. 2); Prelim. Scope Mem. at 8-9, Att. I to Remand Results). Thus, far from

expanding the scope, Commerce exercised its authority to interpret its Orders. *See Duferco*, 296 F.3d at 1096.

In another case cited by Hardware Resources (Pl. Cmts. at 5), this Court held that Commerce could not expand an order covering "tapered roller bearings from {China}" to apply to tapered roller bearings processed in Thailand— when the uncontested record evidence showed that "no part" of the relevant merchandise exported from China to Thailand "was an unfinished or incomplete {tapered roller bearing}." *Peer Bearing Co.-Changshan v. United States*, 986 F. Supp. 2d 1389, 1405-06 (Ct. Int'l Trade 2014). In this case, by contrast, the record—including primary interpretive sources—supports Commerce's interpretation of the scope language "wood mouldings and millwork products." *See, e.g.*, Remand Results at 11.[2]

Hardware Resources' argument that Commerce violated the Court's remand order is no more persuasive. Pl. Cmts. at 6 (citing *Hardware Resources*, 744 F. Supp. at 1365). As the Court explained, "{t}he phrase 'wood mouldings and millwork products that' must be given meaning in the context of the scope description{.}" *See Hardware Resources*, 744 F. Supp. 3d at 1365. Consistent with the Court's order, Commerce interpreted the threshold phrase "wood mouldings and millwork products" on remand. *See* Remand Results at 11. Commerce's interpretation gives "meaning" to this phrase in the context of the scope language, *Hardware Resources*, 744 F. Supp. at 1365, and is supported by the primary interpretive sources under section 351.225(k)(1)(i), *see* Remand Results at 10-11.

_____

[2] Hardware Resources also cites *MacLean Power, L.L.C. v. United States*, *see* Pl. Cmts. at 5, but that case involves the "mixed media analysis outlined in *Mid Continent Nail Corp. v. United States*, 725 F.3d 1295 (Fed. Cir. 2013)," *see MacLean Power*, 359 F. Supp. 3d 1367, 1369-70 (Ct. Int'l Trade 2019). MacLean is thus distinguishable from this case, which does not involve a mixed media analysis.

Hardware Resources complains that Commerce's interpretation of wood moulding and millwork products would "appear to cover any product made of wood that is processed after importation, an infinite universe of products." Pl. Cmts. at 4. But Hardware Resources ignores other (k)(1) sources confirming that mouldings and millwork are broad and general terms. For example, the ITC Report describes millwork as "a general term referring to woodwork that is produced in a mill." ITC Report at I-12 (P.R. 2) (stating "the universe of millwork products is extensive and diverse"). Furthermore, Hardware Resources' characterization of Commerce's interpretation as covering essentially any "product made of wood that is processed after importation," misses (among other things) the requirements for products that "are *woodwork or building materials* that are produced in a mill or otherwise undergo remanufacturing." *See* Remand Results at 11 (emphasis added).

Hardware Resources nevertheless contends that Commerce interpreted "wood mouldings and millwork products" so broadly that it effectively "reads that term out of the scope entirely." Pl. Cmts. at 4, 6. But just because the phrase "wood mouldings and millwork products" does not exclude Hardware Resources' specific merchandise does not render the term superfluous or "read{} that term out of the scope." *See* Pl. Cmts. at 4. Instead, the term "wood mouldings and millwork products" presents a "threshold" requirement that—along with the other physical characteristics and exclusions set forth in the scope—defines in-scope merchandise. *See Hardware Resources*, 744 F. Supp. 3d at 1366 (characterizing the question whether a product is "a wood moulding or millwork product" as a "threshold question").

Instead, it is Hardware Resources' requested interpretation that presents superfluity problems. Hardware Resources insists that the phrase "wood mouldings and millwork products" excludes its products "for making cabinet parts after importation." *See, e.g.*, Pl.

Cmts. at 20. Yet such an interpretation would render superfluous the scope's exclusion for products subject to antidumping and countervailing duty orders covering wooden cabinets and vanities from China. *See* Remand Results at 3-4 (scope language also excluding, *e.g.*, certain "countertop / butcherblocks," "picture frame components," and "parts of stair steps"). Under Hardware Resources' proposed interpretation, cabinet parts, cabinets, and vanities would not qualify as "wood mouldings and millwork products"—rendering superfluous the explicit exclusion for antidumping and countervailing duty orders covering wooden cabinets and vanities from China. *See* AD Order (citing *Cabinets AD Order*, 85 Fed. Reg. 22,126); CVD Order (citing *Cabinets CVD Order*, 85 Fed. Reg. 22,134).

        2.     Commerce Did Not Reintroduce Deleted Scope Language, And Instead Interpreted The Scope Using Primary Interpretive Sources, Consistent With Section 351.225(k)(1)

Hardware Resources next argues that Commerce improperly "expand{ed} the scope by adding back into the scope language wording that was *expressly removed* during Commerce's initial investigation." Pl. Cmts. at 7 (citing Remand Results at 11, 17); *see also id.* at 7-17. That is not what Commerce did. Instead, Commerce interpreted scope language—"wood mouldings and millwork products"—consistent with statements in the petition and preliminary scope ruling. Remand Results at 11 (citing, *e.g.*, Petition at 6 (P.R. 2)).

The petition initially included language describing subject merchandise as "woodwork or building materials that are produced in a mill or otherwise undergo remanufacturing":

> The merchandise subject to this investigation consists of wood mouldings and millwork products that are made of wood (regardless of wood species), laminated veneer lumber (LVL), or of wood and composite materials ( where the composite materials make up less than 50 percent of the total merchandise), and *which are woodwork or building materials that are produced in a mill or otherwise undergo remanufacturing.*

Petition at 4 (P.R. 2) (emphasis added).  However, the petitioner removed the "woodwork or building materials" phrase from the scope language before the investigations were initiated. *See* Prelim. Scope Mem. at 2, Att. I to Remand Results (quoting *Wood Mouldings and Millwork Products from Brazil and China: Initiation of Less-Than-Fair-Value Investigations*, 85 Fed. Reg. 6,502 (Dep't of Commerce, February 5, 2020); *Wood Mouldings and Millwork Products from China: Initiation of Countervailing Duty Investigation*, 85 Fed. Reg. 6,513 (Dep't of Commerce, February 5, 2020)).

Before Commerce, Hardware Resources "failed to cite any information supporting" that the language was "removed for a particular reason."  Remand Results at 17.  Commerce, in turn, explained that there were "many reasons why a petitioner might revise proposed scope language" early in an investigation—including to avoid "unnecessary or redundant" language. Remand Results at 17.  The salient point is that the scope continued to include the phrase "wood mouldings and millwork products," and that the (k)(1) sources clearly described this phrase.  *See* Remand Results at 11, 17.

Again, "{s}cope orders are 'interpreted with the aid of the antidumping petition, the factual findings and legal conclusions adduced from the administrative investigations, and the preliminary order.'"  *Duferco Steel*, 296 F.3d at 1097 (quoting *Smith Corona,* 915 F.2d at 685). As Commerce explained when enacting the 2021 revisions to section 351.225(k), "the traditional (k)(1) sources were never intended . . . to be separate from the initial analysis of the scope language, but were instead intended to be interpretive tools that could be considered by Commerce, at its discretion and under consideration of the arguments on the administrative record, to determine the meaning of the scope of the order."  *Regulations To Improve Administration and Enforcement of Antidumping and Countervailing Duty Laws*, 86 Fed. Reg.

52,300, 52,323 (Dep't of Commerce, Sept. 20, 2021). "The purpose of an AD or CVD order is to provide a remedy to offset the harm caused by unfairly traded merchandise." *Id.* "Therefore, the intentions and interpretations of Commerce, the ITC, and the injured domestic parties themselves at the time of the underlying investigation should be given primary consideration in defining and interpreting the scope of the order." *Id.*

Thus, Commerce was on firm ground when interpreting the scope language "wood mouldings and millwork products" in accordance with descriptions in the petition and the preliminary scope decision memorandum. Remand Results at 11 (citing Petition at 6 (P.R. 2); Prelim. Scope Mem. at 8-9, Att. I to Remand Results). Notably, Commerce issued the preliminary scope decision memorandum after initiating the investigations, and thus, *after* the "building materials" phrase was removed from the scope. That memorandum nonetheless recognized that the petition "clearly described" "wood mouldings and millwork products" as "products that are manufactured from softwood, hardwood, laminated veneer lumber, or some combination of wood and composite materials, and are woodwork or building materials that are produced in a mill or otherwise undergo remanufacturing." Prelim. Scope Mem. at 8, Att. I to Remand Results (citing Petition at 6 (P.R. 2). Commerce's adoption of the same "clear{}" description to interpret the scope phrase, *id.*, is thus supported by the record. *See* Remand Results at 11.

Hardware Resources next argues that as in *Fedmet Res. Corp. v. United States*, 755 F.3d 912, 921 (Fed. Cir. 2014), Commerce's interpretation is at odds with petitioner's submissions during the investigation. Pl. Cmts. at 9-10. But this case is distinguishable from *Fedmet*. In *Fedmet*, the Federal Circuit held that magnesia carbon alumina (MAC) bricks were outside the scope of antidumping and countervailing duty orders covering certain magnesia carbon bricks,

after petitioner made "multiple representations" during the investigation "disclaiming coverage of all MAC bricks in general." *Fedmet*, 755 F.3d at 919, 921.  The (k)(1) sources also confirmed "Commerce and the Commission's understanding that the underlying investigations did not extend to MAC bricks." *Fedmet*, 755 F.3d at 919.  In this case, by contrast, the (k)(1) sources confirm the "clear{}" description of "wood mouldings and millwork products"—which matches Commerce's interpretation in this proceeding.  *See* Prelim. Scope Mem. at 8, Att. I to Remand Results (citing Petition at 6) (P.R. 2)); *see also* Remand Results at 11.

Nor has Hardware Resources identified any representations by the petitioner disclaiming coverage of merchandise that may be used as cabinet parts.  Although the scope language does explicitly exclude wooden cabinets and vanities subject to other countervailing and antidumping duty orders, *see* Remand Results at 4 (quoting scope language), that exclusion does not apply in this case, *see* Scope Application at 6 n.5.  Moreover, Commerce's preliminary scope determination in the underlying investigation explicitly rejected an end-use restriction that would have defined "moulding and millwork products," in relevant part, as "products that are *used as* a covering for floors, walls, doors, and other areas . . . and for decorative, exposed applications." Prelim. Scope Mem. at 16-17, Att. I to Remand Results (emphasis added).  Thus, far from disclaiming coverage, the petition and other (k)(1) sources confirm that Hardware Resources' edge-glued boards are within scope and not excluded based on the intended end use.

The two remaining cases cited by Hardware Resources are similarly distinguishable from this proceeding.  *See* Pl. Cmts. at 10.  In *Columbia Forest Prods. v. United States*, the Court sustained Commerce's decision declining to conduct a minor alterations anticircumvention inquiry pursuant to 19 U.S.C. § 1677j(c), with respect to products specifically considered during the investigation and found to be excluded from the scope of the order.  399 F. Supp. 3d 1283,

1292 (Ct. Int'l Trade 2019); *see also id.* at 1291-1294.  In this case, by contrast, Commerce

relied on (k)(1) interpretive sources to interpret the scope phrase "wood mouldings and millwork

products."  Remand Results at 11.

In *Vietnam Finewood Co. v. United States*, 633 F. Supp. 3d 1243, 1257-259 (Ct. Int'l

Trade 2023), meanwhile, the Court held that orders on certain hardwood plywood products from

China unambiguously excluded two-ply panels at issue in the scope ruling.  Specifically, the

scope covered hardwood and decorative plywood and certain veneered panels "consisting of two

or more layers . . . and a core," i.e., at least three plies.  *Vietnam Finewood Co.*, 633 F. Supp. 3d

at 1262; *see also id.* at 1248 (citing scope language as including hardwood and decorative

plywood as "consisting of two or more layers or plies of wood veneers *and a core*") (emphasis

added).  In this case, by contrast, the petition and preliminary scope determination memorandum

support Commerce's interpretation of "wood mouldings and millwork products."  *See* Remand

Results at 11.

As the Court recognized in *Vietnam Finewood*, Commerce's scope analysis is "highly

fact-intensive and case-specific."  *Vietnam Finewood Co.*, 633 F. Supp. 3d at 1254 (quoting *King

Supply*, 674 F.3d at 1345).  In the specific facts of this proceeding, the (k)(1) interpretative

sources support Commerce's interpretation of "wood mouldings and millwork products," as used

in the scope of the Orders.

> 3.    Commerce Correctly Rejected Hardware Resources' Proposed End-Use
>       Restriction

Hardware Resources is also wrong that the scope phrase "wood mouldings and

millwork products" incorporates an end-use restriction.  *See, e.g.*, Pl. Cmts at 12-21.  As

Commerce explained, end-use restrictions are disfavored.  Remand Results at 22 (citing *King

Supply*, 674 F.3d at 1348).  When Commerce intends to impose such a restriction, it uses

express end-use terminology in the scope language that leaves "no reasonable doubt that the products were intended to be out of scope." Remand Results at 22 (citing *King Supply*, 674 F.3d at 1348). Here, the scope phrase "wood mouldings and millwork products" carries no implied end-use restriction that would exclude Hardware's edge-glued boards. *Id.*

Hardware Resources claims that Commerce's decision is unsupported by substantial evidence because Commerce "ignor{ed}" record evidence supporting an end-use restriction.[3] Pl. Cmts. at 12. In support of its argument, Hardware Resources cites illustrative uses of subject merchandise mentioned in the petition, such as the statement in the petition that wood moulding and millwork products are "intended to be used as a covering for floors, walls, doors, and other areas, primarily in residential and non-residential construction." Pl. Cmts. at 13 (quoting Petition at 14) (emphasis omitted).[4] Elsewhere, the petition states that uses of in-scope merchandise "include" crown mouldings, interior and exterior door frames, and base shoes. *Id.* (citing Petition at 6-7 (P.R. 2)). Commerce did not ignore these statements in the petition. *See* Remand Results at 20-22. Instead, Commerce explained that although the petitions included "examples of purposes for which the products within the scope could be used," such exemplary uses were required for all petition filings and did not reflect any express end-use limitation. Remand Results at 22 (citing 19 C.F.R. § 351.202(b)(5)).

---

[3] Hardware Resources also contends that Commerce's scope ruling reached a "pre-determined conclusion," Pl. Cmts. at 12, but presents no evidence to support such an claim or to rebut the "presumption of good faith on the part of the government." *Saha Thai Steel Pipe Co. v. United States*, 661 F. Supp. 1198, 1202 (Ct. Int'l Trade 1987) (citing *United States v. Roses, Inc.*, 706 F.2d 1563, 1677 (Fed. Cir. 1983)).

[4] *See also* Petition at 14 (P.R. 2) (stating in the next sentence that "{wood mouldings and millwork products} produced to the same dimensions are generally interchangeable"). Notably, Hardware Resources does not reference the discussion in the preliminary scope determination explicitly declining to impose an end-use restriction based upon the exemplary uses of moulding and millwork as coverings for floors, walls, doors, and other areas. *See* Preliminary Scope Determination at 16-18 (attached to Remand Results).

Commerce concluded that the scope language "lacks any express mention of end use."  *Id.* at 21-22.

Hardware Resources critiques Commerce for relying on the description of wood mouldings and millwork products in the "technical characteristics and uses" section of the petition, *see* Petition at 6 (P.R. 2), yet declining to incorporate the exemplary uses described in the same section as end-use restrictions.  *See* Pl. Cmts. at 14.  But there is no inconsistency.  As reflected in the preliminary scope decision memorandum, the language in Commerce's interpretation "clearly described" wood mouldings and millwork products.  *See* Prelim. Scope Mem. at 8, Att. I to Remand Results.  By contrast, the listed examples of uses did not establish the end-use restriction requested by Hardware Resources.  *See id.*at 16-18.  The scope language lacked any "explicit end-use language or indication of the intent to include an end-use restriction in the scope."  Remand Results at 22; *see also id.* (citing *King Supply*, 674 F.3d at 1348); *see also* Prelim. Scope Mem. at 16-18, Att. I to Remand Results.

Recognizing that it cannot identify any "express" end-use limitation in the scope language, Hardware Resources contends that *King Supply* "did not address the scenario at issue in this case – i.e., how to interpret an AD/CVD order that has an implicit, inherent end use incorporated into the scope language."  Pl. Cmts. at 16.  To the contrary, that was the precise issue presented in *King Supply*.  There, the scope language covered "carbon steel butt-weld pipe fittings," and listed a single, exemplary use—stating that subject fittings "*are used* to join sections in piping systems" in certain circumstances.  *King Supply*, 674 F.3d at 1346 (citation omitted, emphasis added).  Even though the scope language listed only one use, the Federal Circuit reversed this Court's order imposing an end-use restriction.  *Id.* at 1348-1349, 1351.  The Federal Circuit issued a clear decision governing end-use restrictions, stating: "We

hold that *end-use restrictions do not apply* to AD orders unless the AD order at issue includes clear exclusionary language." *Id.* at 1349 (emphasis added). Commerce correctly applied the holding in *King Supply*, which governs Hardware Resources' request to impose an end-use limitation in this case.

Hardware Resources next claims that unlike the plaintiff in *King Supply*, it disputes whether its merchandise meets the physical characteristics of the scope. Pl. Cmts. at 15-16. But the fact that Hardware Resources separately disputes whether its merchandise is continuously shaped (a different scope provision), provides no justification for imposing an end-use restriction in the scope phrase "wood mouldings and millwork products."

Hardware Resources cites several cases in which this Court held that the reasoning in *King Supply* did not apply—but all of them are distinguishable. *See* Pl. Cmts. at 16. In *Stein Indus. Inc. v. United States*, for example, the Court explained that the plaintiff "did not argue that its products are outside of the scope based on their end-use," and thus, the rule in *King Supply* did not apply. *See* 365 F. Supp. 3d 1364, 1372 (Ct. Int'l Trade 2019). In this case, by contrast, Hardware Resources explicitly argues that the scope language incorporates an "inherent end use"—thus directly implicating the reasoning in *King Supply*. *See, e.g.*, Pl. Cmts. at 16.

In another, the Court held that "*King Supply* sheds no light on the issue" in the case, namely, whether scope language covering candles with shapes of "tapers, spirals, and straight-sided dinner candles; rounds, columns, pillars, votives; and various wax-filled containers" covered candles with unlisted shapes. *Trade Associates Group, v. United States*, 961 F. Supp. 2d 1306, 1311, 1318-1320 (Ct. Int'l Trade 2014). In contrast to the physical characteristics disputed in *Trade Associates Group*, Hardware Resources requests an inherent end use

restriction. *See* Pl. Cmts. at 15-16. Thus, *King Supply* directly governs the issue and prevents imposition of an end-use restriction absent "clear exclusionary language"—which is not present here. *See King Supply*, 674 F.3d at 1349.

> 4.    Hardware Resources' Arguments Based On The ITC Report Are Unpersuasive

Hardware Resources next argues that Commerce ignored "substantial evidence" from the ITC Report contradicting Commerce's determination. Pl. Cmts. at 17 (citing *Star Pipe Prods. v. United States*, 365 F. Supp. 3d 1277, 1284, 1286 (Ct. Int'l Trade 2019)). But again, all that Hardware Resources identifies are discussions in the ITC Report and testimony by industry witnesses regarding *exemplary* uses of subject merchandise—which do not impose end-use restrictions in the scope language. *See id.* at 17-18 (citing, *e.g.*, ITC Report at I-12 – I-13 (P.R. 2); Conf. Tr. at 118 (P.R. 21)). Nor does Hardware Resources show that the cited testimony regarding cabinets supports an end-use limitation. *See id.* at 18 (citing Conf. Tr. at 149). If anything, such testimony relates to another portion of the scope excluding merchandise covered by the antidumping and countervailing duty orders on wooden cabinets and vanities from China. *See* Remand Results at 4 (quoting scope language).

Far from ignoring the ITC Report, Commerce explained that descriptions of millwork in the ITC Report supported its interpretation of "wood mouldings and millwork products." Remand Results at 21. For example, the ITC describes millwork as "*a general term referring to woodwork that is produced in a mill*; the universe of millwork products is extensive and diverse." *Id.* at 21 (quoting ITC Report at I-12 (P.R. 2)) (emphasis in the Remand Results). In another section, the ITC "provide{d} a broad outline of the possible products classified as a millwork and mouldings," noting that it is "not feasible" to discuss them all. Remand Results at 24 (quoting, *e.g.*, ITC Report at I-12 n.20).

Commerce properly considered the ITC Report as one of the (k)(1) sources, *see id.*, but Hardware Resources now makes the broader claim that Commerce should limit the scope to specific products "considered" by the ITC. *See* Pl. Cmts. at 18-19. This argument misunderstands Commerce's and the ITC's roles in antidumping and countervailing duty investigations. Commerce (not the ITC) defines the scope of the merchandise subject to the investigation and ultimate order, and the ITC defines the domestic like product and decides the question of material injury. *See, e.g.*, *Hitachi Metals, Ltd. v. United States*, 949 F.3d 710, 714 (Fed. Cir. 2020) (citing 19 U.S.C. § 1673); *see also* 19 U.S.C. § 1671. Here, the ITC issued its final determination *after* the preliminary scope decision memorandum in which Commerce set forth the "clear{}" description of the scope phrase "wood mouldings and millwork products"— reflected in Commerce's interpretation. *See* Prelim. Scope Mem. at 8, Att. I to Remand Results; ITC Report at 3 (P.R. 2) (finding material injury). The ITC Report also postdates Commerce's rejection of a proposed end-use limitation in the same memorandum. *See* Prelim. Scope Mem. at 16-18, Att. I to Remand Results at 16-18; ITC Report at 3 (P.R. 2). After Commerce issued the preliminary scope decision memorandum clarifying these points, the ITC defined the domestic like product as "all {wood mouldings and millwork products}, coextensive with the scope of the investigations," established by Commerce, and made an affirmative finding of material injury. *See* ITC Report at 24 (P.R. 2); *see also id.* at 3. Thus, there is no merit to Hardware Resources' suggestion that Commerce's scope ruling somehow expands beyond the material injury found by the ITC.

Moreover, this case is distinguishable from cases cited by Hardware Resources. *See* Pl. Cmts. at 19. In one non-precedential case cited by Hardware Resources, the Federal Circuit held that merchandise was not subject to an antidumping duty order when it involved "a distinctly

different product" than those considered in the investigation. *A.L. Patterson, Inc. v. United States*, 585 Fed. App'x 778, 785-86 (Fed. Cir. 2014) (non-precedential). In another case cited in Hardware Resources' comments, the plaintiff's products did "not fall within the literal terms of the *Order*" and thus "were never considered as part of the ITC's injury analysis." *Trendium Pool Products, Inc. v. United States*, 399 F. Supp. 3d 1335, 1345-1346 (Ct. Int'l Trade 2019). In this case, by contrast, Commerce defined subject merchandise as including the threshold requirement for "wood mouldings and millwork products," and clearly described such merchandise consistent with its current interpretation. Remand Results at 11 (citations omitted). The ITC then relied on the same definition of subject merchandise and used a corresponding meaning of the domestic like product when making its affirmative finding of material injury. ITC Report at 24 (P.R. 2).

Finally, Hardware Resources cannot prevail even under its proposed end-use limitation. *See* Pl. Cmts. at 14. Before Commerce, Hardware Resources highlighted the ITC's description of use—namely, that "wood moulding and millwork products are lengths of wood molded into various shapes, or profiles, *for use in a wide variety of functional and decorative applications* in residential and non-residential construction." Pl. Cmts. at 17 (R.P.R. 2) (quoting ITC Report at 8 (P.R. 2)) (emphasis added); *see also id.* at 18. Commerce declined to incorporate this end-use description when interpreting scope language, *see* Remand Results at 24-25, and also found in the alternative that Hardware Resources' edge-glued boards meet the additional product description, *id.* at 26. "Edge-glued boards are lengths of wood molded into various shapes, that may be used for a variety of functions or applications." Remand Results at 26 (citing ITC Report at 8 (P.R. 2)). According to Hardware Resources, its edge-glued boards "will be further processed into cabinet parts . . . , *though they could be used in other*

*applications*."  Remand Results at 26 (quoting Scope Application at 7 (P.R. 1)) (emphasis

added).  Commerce found that this description of Hardware Resources' edge-glued boards was

"consistent with" the portion of the ITC Report highlighted by Hardware Resources—that

wood moulding and millwork products are "used mainly in residential and non-residential

buildings . . . for both interior and exterior applications."  Remand Results at 26.

     The same analysis reflects that Hardware Resources' merchandise qualifies even under

its proposed definition of "wood mouldings and millwork products."  Specifically, Hardware

Resources claims that the phrase "wood mouldings and millwork products" should have been

limited to "wood for use in functional and decorative applications in residential and non-

residential construction and blanks that were later machined or moulded into a final profile."

Pl. Cmts. at 14; *see also* Pl. Cmts at 15 (R.P.R. 2).  Again, Commerce found that Hardware

Resources' edge-glued boards could be used for a variety of functional applications—

including as cabinet parts and "other applications."  *See* Remand Results at 26 (quoting Scope

Application at 7 (P.R. 1).  Commerce's alternative factual finding is supported by substantial

evidence in the record and is not challenged by Hardware Resources in its remand comments.

Thus, Hardware Resources cannot prevail even under its own proposed interpretation—

providing an independent basis for sustaining Commerce's remand results in full.

     5.   <u>Commerce Properly Considered The Loveday Scope Ruling</u>

     Finally, Commerce properly considered the Loveday scope ruling, in which Commerce

determined that lengthwise sawn (LWS) scarf-jointed wood reveal strips and LWS scarf-

jointed wood squares were not subject to the Orders.  Ex. 10 to Scope Ruling Application

(Loveday Scope Ruling) at 1 (P.R. 3).  The merchandise was "rough sawn," "raw and

26

unfinished" and did not "go through planing or other moulding-type manufacturing process." Remand Results at 28 (quoting Loveday Scope Ruling at 10).

Hardware Resources' argument rests on a misunderstanding of the Loveday Scope Ruling's discussion of "blanks." *See* Pl. Cmts. at 21-25. As discussed in the Loveday ruling, moulding or millwork "blanks" are {b}oards fabricated by joining smaller pieces of wood together, which are *later* machined or moulded into a final profile." *See* Remand Results at 27 (citing Loveday Scope Ruling at 9) (citing Ex. III, Resp. to First Supp. Questions on General Issues Vol. I of the Petition at Ex. I-Supp-5 (Jan. 15, 2020) (P.R. 26)) (emphasis added). According to the scope of the Orders, however, the question of whether merchandise qualifies as "millwork blanks" is only implicated if it does not already qualify as "continuously shaped wood." *See* Remand Results at 2 (quoting the scope). In this case, Hardware Resources' edge-glued boards "are wood moulding and millwork products" that, at the time of importation, are "made of wood, finger-jointed, edge-glued *and* continuously shaped." Remand Results at 27 (citation omitted) (emphasis added). Because Hardware Resources' merchandise is already continuously shaped at the time of importation, there is no need to consider whether the merchandise is "later machined or moulded into a final profile." *See* Remand Results at 27 (citation omitted); *see also id.* at 28-29. Thus, the meaning of "blanks" at issue in the Loveday scope ruling is not presented in this proceeding.

Furthermore, Hardware Resources is wrong that the Loveday ruling supports an end-use limitation for the term "wood mouldings and millwork products." *See* Pl. Cmts. at 21-22 (arguing the Loveday ruling "defined millwork blanks based on its intended end use"). Instead, the ruling merely reflects that moulding and millwork "blanks" will be further *processed* after importation. Remand Results at 27-28. Again, moulding and millwork blanks

"are later machined or moulded into a final profile." *See* Remand Results at 27-28 (citing Loveday Scope Ruling at 9) (citing Ex. III, Resp. to First Supp. Questions on General Issues Vol. I of the Petition at Ex. I-Supp-5 (Jan. 15, 2020) (P.R. 26)).  This description does not support an end-use limitation that would restrict "moulding and millwork products" from covering merchandise intended for use as cabinet parts.  *See* Remand Results at 28; *see also* Pl. Cmts. at 20 (arguing for the exclusion of materials produced into cabinet parts).

In its arguments on the Loveday ruling, Hardware Resources also claims that its products are distinguishable from in-scope merchandise "because they have a UV coating." Pl. Cmts. at 23 (citation omitted).  As Commerce explained, however, the UV coating did not remove the merchandise from the scope, because the scope covers products regardless of "'whether imported raw, coated . . . , primed, painted, stained, wrapped . . . , {or} any combination of the aforementioned surface coatings."  Remand Results at 12 (citation omitted).  Thus, the UV coating did "not distinguish Hardware Resources' goods as out of scope," but instead placed them "within the scope of the *Orders* given the other requirements are met."  Remand Results at 12.

Finally, Hardware Resources claims that Commerce imposed an end-use restriction in a recent preliminary scope ruling involving window blinds imported by Blinds to Go, which was issued after Commerce's March 2025 remand decision.  Pl. Cmts. at 24 n.4 (citing Blinds to Go Prelim. Scope Ruling. (Apr. 11, 2025)).  As an initial matter, this preliminary ruling does not reflect Commerce's final decision on the issue; such preliminary decisions "are 'preliminary' precisely because they are subject to change.'"  *NTN Bearing Corp. v. United States*, 74 F.3d 1204, 1208 (Fed. Cir. 1995).  Thus, the Court should not rely on this preliminary scope ruling.  To the extent the Court nonetheless considers the preliminary

ruling, the preliminary ruling does not support Hardware Resources' argument. Instead, the memorandum preliminarily recommends that Commerce find certain components for window blinds are not covered by the Orders, relying in relevant part on petitioner's statements during the investigation that it did "*not intend to cover window blind components* such as slats, valences, bottom rails or shutter slats within the scope." Blinds to Go Preliminary Ruling at 10-11 (citation omitted and emphasis added), attached to Pl. Cmts. Hardware Resources is unable to identify any similar exclusionary statements with respect to its edge-glued boards.

> B.    Substantial Evidence Supports Commerce's Finding That Hardware Resources' Edge-Glued Boards Are Continuously Shaped

In the remand results, Commerce found that Hardware Resources' edge-glued boards are "continuously shaped," as provided in the scope language. Remand Results at 12-13, 29-31. According to the scope, "{t}he merchandise subject to the Orders can be continuously shaped along any of its edges, ends, or faces." Remand Results at 2. Substantial evidence supports Commerce's findings that Hardware Resources' edge-glued boards are continuously shaped for two independent reasons: (1) the one millimeter score is a "groove" that amounts to continuous shaping, and (2) the sanded smooth corners to 1/16 of an inch are rounded along the edge or ends. *See* Remand Results at 29-31.

As Commerce explained, the petition includes an excerpt from the Harmonized Tariff Schedule of the United States (HTSUS) defining continuously shaped wood as wood that is "tongued, *grooved*, rebated, chamfered, V-jointed, beaded, molded, *rounded or the like along any of its edges, ends or faces*, whether or not planed, sanded, or end jointed." Remand Results at 29 (citing Petition at Exhibit I-10 (P.R. 26)) (emphases added). Starting with the term "grooved," the petitioner described a groove as "cut with, or parallel to the grain." Remand Results at 30 (quoting Pet'r Responses to First Supplemental Questions on General

Issues at 5 (Jan. 15, 2020) (P.R. 26)).  Commerce found that the score on Hardware Resources' product was not materially different than "a groove" that is "a type of continuous shaping."  Remand Results at 13, 30.

Hardware Resources challenges the description of a groove as "cut with, or parallel to the grain," arguing that this discussion arose in the context of defining "{e}ndwork / dado" and is thus inapplicable.  Pl. Cmts. at 27.  As Commerce explained, however, the petitioner's description of a groove would "not change depending on the context."  Remand Results at 30.  Indeed, the relevant text *distinguished* a groove from endwork / dados, explaining that "{a} dado is cut across, or perpendicular to the grain, and is thus differentiated *from a groove which is cut with, or parallel to the grain*."  Pet'r Responses to First Supplemental Questions on General Issues at 5 (Jan. 15, 2020) (P.R. 26)) (emphasis added).  Thus, the proffered meaning of a "groove" applies generally, and is not limited to endwork / dados.

Commerce also referenced a U.S. Customs and Border Protection (CBP) classification ruling regarding "white poplar edge-glued boards cut with a continuous groove along their length," which were described as "continuously shaped."  Remand Results at 30 (quoting Scope Ruling Application at Exhibit 3a (P.R. 2)).  Hardware Resources points out that Commerce mistakenly characterized this classification ruling as involving Hardware Resources' own edge-glued boards—when, in fact, the ruling was for another entity.  *See* Pl. Cmts. at 28.  The point remains, however, that CBP's characterization of a groove as a type of continuous shaping provides further support for Commerce's reasoning with respect to the groove in Hardware Resources' merchandise.  Moreover, Commerce's assessment that a "groove" qualifies as a type of continuous shaping is independently supported by the HTSUS

subheading listing grooving as a type of continuous shaping  *See* Remand Results at 29 (citing Petition at Exhibit I-10 (P.R. 26)); *see also id.* at 30.

Moreover, Commerce's finding that the one millimeter score on Hardware Resources' product qualifies as a "groove" is supported by substantial evidence.  Remand Results at 13, 30.  Hardware Resources argues that the 1 millimeter mark is different than a groove because it is a "temporary guide" for a groove to be placed after importation, and because Hardware Resources had altered products it "previously imported."  Pl. Cmts. at 25-26.  Neither argument undermines the substantial evidence supporting Commerce's finding.  "{A} reasonable mind" could conclude that the one millimeter score is cut with or parallel to the grain and thus qualifies as a "groove."  Remand Results at 13, 30; *see also* Scope Ruling Application at 4 (P.R. 1).  Nothing more is required for Commerce's determination to be supported by substantial evidence.  *See Downhole Pipe & Equip. v. United States*, 776 F.3d 1369, 1374 (Fed. Cir. 2015) (defining substantial evidence as evidence that a reasonable mind might accept as adequate to support a conclusion) (citations omitted).

Finally, Commerce also found the merchandise was continuously shaped for an additional, independent reason—that Hardware Resources' edge-glued boards were "planed to 5/8 inches thick" and "sanded to smooth the corners to 1/16 of an inch."  Remand Results at 31 (quoting Scope Application at 4, 7, 9 (P.R. 1)).  During the investigation, the petitioner stated that a product was continuously shaped when "smoothed / surfaced."  *Id.* at 29-30 (quoting Exhibit II, Petitioner's Letter dated April 10, 2020, at 3 and 14 (P.R. 26)).  As Commerce explained, "planing" is a "form of surfacing," and sanding is performed to "smooth corners."  Remand Results at 31; *see also id.* (citing Petition at Exhibit I-10 (P.R. 26) (listing

the HTSUS subheading).  Thus, both planing and sanding reflect "continuous shaping" of the edge-glued boards based on the (k)(1) sources.  *See* Remand Results at 31.

Hardware Resources critiques Commerce's reference to the HTSUS subheading for this purpose, arguing that "not all planed or sanded wood products are also 'continuously shaped.'"  Pl. Cmts. at 29.  But Hardware Resources omits a relevant portion of the HTSUS language description.  *See id.*  In listing types of continuously shaped wood, the HTSUS subheading includes wood that is "*rounded or the like along any of its edges, ends or faces*, whether or not planed, sanded, or end jointed."  Remand Results at 31 (quoting Petition at Exhibit I-10 (P.R. 26) (listing the HTSUS subheading) (emphasis added).  A reasonable person could conclude that Hardware Resources' merchandise—with sanded smooth corners to 1/16 of an inch and otherwise planed to 5/8 inches thick—satisfies this description of continuous shaping, consistent with Commerce's finding.  *See* Remand Results at 31.  Thus, Commerce reasonably concluded that the planing and sanding of Hardware Resources' merchandise reflected "continuous shaping," within the scope of the Orders.

## **CONCLUSION**

For these reasons, we respectfully request that the Court sustain Commerce's remand results in all respects, and enter judgment for the United States.

32

                                        Respectfully submitted,

                                        YAAKOV M. ROTH
                                        Acting Assistant Attorney General

                                        PATRICIA M. McCARTHY
                                        Director

                                        /s/ Claudia Burke
                                        CLAUDIA BURKE
                                        Deputy Director

OF COUNSEL:
                                        /s/ Emma E. Bond
                                        EMMA E. BOND
LESLIE M. LEWIS                         Senior Trial Counsel
Senior Attorney                         Commercial Litigation Branch
Office of the Chief Counsel             U.S. Department of Justice
    for Trade Enforcement & Compliance  P.O. Box 480
U.S. Department of Commerce             Washington, DC 20044
                                        (202) 305-2034
                                        Email: emma.e.bond@usdoj.gov

May 30, 2025                            Attorneys for Defendant

## **CERTIFICATE OF COMPLIANCE**

I hereby certify, pursuant to section 2(B)(1) of the Standard Chambers Procedures of this Court, that this brief contains no more than 9,469 words, excluding the table of contents, table of authorities, any addendum containing statutes, rules or regulations, any certificates of counsel, and counsel's signature, as calculated by the word processing system used to prepare this brief (Microsoft Word).

/s/ Emma E. Bond

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: THE HONORABLE JOSEPH A. LAROSKI, JR., JUDGE

| | | |
|---|---|---|
| HARDWARE RESOURCES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Court No. 23-00150 |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| COALITION OF AMERICAN MILLWORK | ) | |
| PRODUCERS, | ) | |
| | ) | |
| Defendant-Intervenor. | ) | |

## <u>ORDER</u>

Upon consideration of the Department of Commerce's final results of redetermination pursuant to remand, all responses thereto, and all other pertinent papers, it is hereby

ORDERED that the remand results are sustained in their entirety; and it is further

ORDERED that final judgment is entered in favor of the United States.


Dated: _____, 2025

      New York, NY                          _____

                                                  JUDGE