Slip Op. 26-38

## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| HARDWARE RESOURCES, INC., | |
| Plaintiff, | |
| v. | |
| UNITED STATES, | Before:  Joseph A. Laroski, Jr., Judge |
| Defendant, | Court No. 23-00150 |
| COALITION OF AMERICAN MILLWORK PRODUCERS, | |
| Defendant-Intervenor. | |

## <u>OPINION</u>

[Sustaining the Department of Commerce's remand redetermination in scope proceeding regarding antidumping and countervailing duty orders on wood mouldings and millwork products from the People's Republic of China.]

Dated: April 21, 2026

<u>Jill A. Cramer</u>, Mowry & Grimson, PLLC, of Washington, DC., argued for plaintiff Hardware Resources, Inc.  With her on the brief were <u>Kavita Mohan</u>, Jeffrey <u>Sheldon Grimson</u>, <u>Bryan Patrick Cenko</u>, <u>Clemence Dongwoo Kim</u>, <u>Evan P. Drake</u>, <u>Kristin Heim Mowry</u>, <u>Ronalda G. Smith</u>, <u>Sarah Marie Wyss</u>, and <u>Yixin (Cleo) Li</u>.

<u>Emma E. Bond</u>, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., argued for defendant United States Government.  With her on the brief were <u>Brendan David Jordan</u>, Lead Attorney, Commercial Litigation Branch, Civil Division, of Washington D.C., <u>Brian M. Boynton</u>, Principal Deputy Assistant Attorney General, <u>Patricia M. McCarthy</u>, Director, and <u>Claudia Burke</u>, Deputy Director.  Of counsel, arguing for defendant, was <u>Leslie Mae Lewis</u>, Office of Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce, of Washington, D.C.  With her on the brief was <u>Brien Charles Stonebreaker</u>, Office of Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, D.C.

Wesley E. Weeks, Wiley Rein, LLP, of Washington, D.C., argued for defendant-intervenor Coalition of American Millwork Producers.  With him on the brief were Timothy C. Brightbill, Adam Milan Teslik, Elizabeth Seungyon Lee, Laura El-Sabaawi, Maureen Elizabeth Thorson, and Theodore Paul Brackemyre.

## OPINION

Laroski, Judge: Before the court are the remand results of the U.S. Department of Commerce ("Commerce") pursuant to the court's order in Hardware Resources v. United States, 744 F. Supp. 3d 1358, 1366 (CIT 2024) ("Hardware Resources I").  See Final Results of Redetermination Pursuant to Ct. Remand, ECF No. 53 ("Remand Results").  In Hardware Resources I, the court remanded Commerce's final scope ruling that included Hardware Resources' edge-glued boards in the antidumping duty ("AD") and countervailing duty ("CVD") orders on wood mouldings and millwork product ("WMMP") from the People's Republic of China (the "Orders").  Id.; see Final Scope Ruling on Hardware Resources' Edge-Glued Boards, P.R. 25 (Aug. 2, 2023) ("Final Scope Ruling").  The court ordered Commerce to first consider the initial requirement set forth in the opening phrase of the scope description[1] to determine, as a threshold matter, "whether the product at issue is a wood moulding or millwork product."  Hardware Resources I, 744 F. Supp. 3d at 1366.  Because Commerce failed to address this threshold requirement in its Final Scope Ruling, the court in Hardware Resources I did not address "Hardware Resources' claims regarding Commerce's determination with respect to an inherent end-use limitation contained in the scope description, Commerce's interpretation of

---

[1]  The opening paragraph of the scope description contained in the Orders begins as follows: "The merchandise subject to the Orders consists of wood mouldings and millwork products that . . . ." (the "threshold phrase").  Final Scope Ruling at 2.

the term 'continuously shaped,' or Commerce's consideration of various interpretive

sources and factors under 19 C.F.R. § 351.225(k)."  Id.

On remand, pursuant to the court's instructions, Commerce considered the

initial requirement contained in the threshold phrase and determined that

Hardware Resources' product is a "wood moulding and millwork product."  Remand

Results at 10–13.  To address the additional requirements set forth in the scope

description,[2] Commerce explained its determination with respect to issues the court

did not reach in Hardware Resources I.  See generally Remand Results.  For the

---

[2] The scope of the Orders, in relevant part, is as follows:

> The merchandise subject to the Orders consists of wood mouldings and millwork products that are made of wood (regardless of wood species), bamboo, laminated veneer lumber (LVL), or of wood and composite materials (where the composite materials make up less than 50 percent of the total merchandise), and which are continuously shaped wood or finger-jointed or edge-glued moulding or millwork blanks (whether or not resawn). The merchandise subject to [the Orders] can be continuously shaped along any of its edges, ends, or faces.
> . . .
> The merchandise subject to the Orders consists of wood, LVL, bamboo, or a combination of wood and composite materials that is continuously shaped throughout its length (with the exception of any end-work/dados), profiled wood having a repetitive design in relief, similar milled wood architectural accessories, such as rosettes and plinth blocks, and finger-jointed or edge-glued moulding or millwork blanks (whether or not resawn). The scope includes continuously shaped wood in the forms of dowels, building components such as interior paneling and jamb parts, and door components such as rails, stiles, interior and exterior door frames or jambs (including split, flat, stop applied, single- or double-rabbeted), frame or jamb kits, and packaged door frame trim or casing sets, whether or not the door components are imported as part of a door kit or set.
>
> The covered products . . . are covered by the scope whether imported raw, coated (e.g., gesso, polymer, or plastic), primed, painted, stained, wrapped (paper or vinyl overlay), any combination of the aforementioned surface coatings, treated, or which incorporate rot-resistant elements (whether wood or composite). The covered products are covered by the scope whether or not any surface coating(s) or covers obscure the grain, textures, or markings of the wood, whether or not they are ready for use or require final machining (e.g., endwork/dado, hinge/strike machining, weatherstrip or application thereof, mitre) or packaging . . . . Final Scope Ruling at 2–3; AD Order, 86 Fed. Reg. at 9,488–89; CVD Order, 86 Fed. Reg. 9,485–86.

following reasons, the court sustains Commerce's Remand Results and holds that

Hardware Resources' edge-glued boards are subject to scope of the Orders.

## BACKGROUND

The court presumes familiarity with the facts as set out in Hardware

Resources I, and recounts only those facts relevant to the court on remand.

In its decision on December 16, 2024, the court considered whether Commerce's

determination that Hardware Resources' edge-glued boards fell within the scope of

the Orders was supported by substantial evidence.  Hardware Resources I, 744 F.

Supp. 3d at 1359–1366.  First, the court addressed whether Commerce failed to

consider if, as a threshold question, Hardware Resources' edge-glued boards are

"wood mouldings or millwork products" as specified by the plain language of the

scope.  Hardware Resources I, 744 F. Supp. 3d at 1363–64.  After examining the

plain language of the Orders, Commerce's Final Scope Ruling, and previous scope

rulings based on the same Orders, the court concluded that Commerce did not

properly address this question and remanded the scope determination to Commerce.

Id. at 1365–66.  The court instructed Commerce to give meaning to the threshold

phrase, "the merchandise subject to the Orders consists of wood moulding and

millwork products that," and to decide whether Hardware Resources' product met

this threshold requirement before the court would consider the parties' arguments

regarding additional requirements set forth in the full scope description.  Id. at

1366.

On February 18, 2025, Commerce issued its draft redetermination ("Draft Remand Results"), and on February 26, 2025, Hardware Resources and petitioner timely responded by submitting comments.  Remand Results at 8.

On March 17, 2025, Commerce filed its final Remand Results, in which Commerce complied with the court's remand order and continued to place Hardware Resources' product in-scope.  On August 27, 2025, the court heard oral argument.

## JURISDICTION AND STANDARD OF REVIEW

On remand, the court will sustain Commerce's determination if it is "in accordance with the remand order, . . . supported by substantial evidence, and . . . otherwise in accordance with law." MacLean-Fogg Co. v. United States, 100 F. Supp. 3d 1349, 1355 (CIT 2015) (citing 19 U.S.C. § 1516a(b)(1)(B)(i)); see Prime Time Com. LLC v. United States, 495 F. Supp. 3d 1308, 1313 (CIT 2021) (quoting 19 U.S.C. § 1516a(b)(1)(B)(i)); Xinjiamei Furniture (Zhangzhou) Co. v. United States, 968 F. Supp. 2d 1255, 1259 (CIT 2014)), aff'd, No. 2021-1783, 2022 WL 2313968 (Fed. Cir. June 28, 2022).

Substantial evidence constitutes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Universal Camera Corp. v. NLRB, 340 U.S. 474, 477 (1951) (quoting Consol. Edison Co. of N.Y. v. NLRB, 305 U.S. 197, 229 (1938)).  Substantial evidence requires "more than a mere scintilla" of evidence.  Id. (quoting Consol. Edison Co., 305 U.S. at 229).  In addition, "[i]t is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself." Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut.

Auto. Ins. Co., 463 U.S. 29, 50 (1983) (footnote omitted) (citing Burlington Truck

Lines, Inc. v. United States, 371 U.S. 156, 168 (1962); see SEC v. Chenery Corp.,

332 U.S. 194, 196 (1947); see Am. Textile Mfrs. Inst., Inc. v. Donovan, 452 U.S. 490,

539 (1981)).  "The substantiality of evidence must take into account whatever in the

record fairly detracts from its weight."  Universal Camera Corp., 340 U.S. at 488;

see Nippon Steel Corp. v. United States, 458 F.3d 1345, 1351 (Fed. Cir. 2006) ("A

reviewing court must consider the record as a whole, including that which 'fairly

detracts from its weight', to determine whether there exists 'such relevant evidence

as a reasonable mind might accept as adequate to support a conclusion.'" (quoting

Universal Camera Corp., 340 U.S. at 477–78)).

However, "the [c]ourt will not disturb an agency determination if its factual

findings are reasonable and supported by the record as a whole, even if there is

some evidence that detracts from the agency's conclusion."  Shandong Huarong Gen.

Corp. v. United States, 159 F. Supp. 2d 714, 718 (CIT 2001) (citing Heveafil Sdn.

Bhd. v. United States, 25 CIT 147, 149 (2001)), aff'd sub nom., Shandong Huarong

Gen. Grp. Corp. v. United States, 60 F. App'x. 797 (Fed. Cir. 2003).  Moreover, "the

possibility of drawing two inconsistent conclusions from the evidence does not

prevent an administrative agency's finding from being supported by substantial

evidence."  Altx, Inc. v. United States, 370 F.3d 1108, 1116 (Fed. Cir. 2004)

(alteration in original) (quoting Matsushita Elec. Indus. Co. v. United States, 750

F.2d 927, 933 (Fed. Cir. 1984)).

## LEGAL FRAMEWORK

When questions arise as to whether a particular product is covered by the scope of an AD/CVD order, Commerce will conduct a scope inquiry and issue a scope ruling.  See 19 C.F.R. § 351.225(a).  In determining whether a product falls within the scope of an AD/CVD order, Commerce "consider(s) the language of the scope and may make its determination on this basis alone if the language of the scope, including descriptions of merchandise expressly excluded from the scope, is dispositive."  19 C.F.R. § 351.225(k)(1).

Section 351.225(k)(1) provides that "in determining whether a product is covered by the scope of the order at issue, the Secretary will consider the language of the scope and may make its determination on this basis alone if the language of the scope . . . is dispositive."  19 C.F.R. § 351.225(k); see also Meridian Prods., LLC v. United States, 851 F.3d 1375, 1381 (Fed. Cir. 2017) ("If the scope is unambiguous, it governs."); Magnum Magnetics Corp. v. United States, 167 F.4th 1187, 1192–1193 (Fed. Cir. 2026).  To determine whether the language is dispositive, Commerce may rely on interpretive sources ("(k)(1) sources").  See 19 C.F.R. § 351.225(k); Magnum, 167 F.4th at 1193; Meridian, 851 F.3d at 1382.  The primary (k)(1) sources include the description of the merchandise contained in the petition and initial investigation, and previous determinations made by Commerce and the International Trade Commission ("ITC").  See § 351.225(k)(1)(i).  The secondary (k)(1) sources include Customs rulings.  See § 351.225(k)(1)(ii).  "[I]n the

event of a conflict between [the] secondary interpretive sources and the primary interpretive sources . . . the primary interpretive sources will normally govern." Id.

## DISCUSSION

### I.    After remand, Commerce reasonably interpreted the threshold phrase

The court first addresses whether Commerce's Remand Results, as related to Commerce's interpretation of the scope's threshold phrase, are supported by substantial evidence and in compliance with the remand order.

Hardware Resources argues that Commerce "unlawfully redefined the scope" and "failed to comply with the [c]ourt's remand order." Pl. Comments in Opp'n to the Final Results of Redetermination at 1–2, 4, ECF No. 59 (April 30, 2025) ("Hardware Br."). Commerce's reading of the threshold phrase is not supported by substantial evidence, according to Hardware Resources, because: (A) Commerce unlawfully expanded the scope of the Orders; (B) Commerce unlawfully relied on a phrase expressly removed from the draft scope language; and (C) Commerce unreasonably ignored the inherent end-use requirement in the threshold phrase. See generally Hardware Br.

### (A)    Commerce's interpretation did not unlawfully expand the scope of the Orders

Hardware Resources argues "Commerce unlawfully enlarged the scope language to cover an entirely new, and seemingly infinite, universe of products." Hardware Br. at 5 (referencing Peer Bearing Company-Changshan v. United States, 986 F. Supp. 2d 1389, 1397 (CIT 2014) and Duferco Steel, Inc. v. United States, 296 F.3d 1087, 1095 (Fed. Cir. 2002)). Commerce also "provide[d] no support for its conclusion" after Hardware Resources expressed such concerns when

commenting on Commerce's Draft Remand Results. Id. (citing Remand Results at

17; Letter on Behalf of Hardware Resources to Dep't of Commerce re: Cmts. on

Draft Redetermination at 4–7 (Feb. 26, 2025) (Public Version) ("Draft Remand

Cmts.") (P.R. 2)).

The Government argues Commerce's interpretation of the threshold phrase is

supported by the record and Commerce did not "expand the scope," as Hardware

Resources contends it did; Commerce instead "interpreted the threshold scope

language . . . consistent with the (k)(1) interpretive sources." Def. Response to Pl.

Comments on Remand Results at 11 ("Gov. Br.") (citing Remand Results at 11).

Commerce can "interpret" its orders "in accordance with the methodology set

forth in its regulations." Duferco, 296 F.3d at 1096 (citing 19 C.F.R. § 351.225(k)).

"Scope orders may be interpreted as including subject merchandise only if they

contain language that specifically includes the subject merchandise or may be

reasonably interpreted to include it." Id. at 1089. Scope language "may be clarified,

[but] it can not be changed in a way contrary to its terms." Smith Corona Corp. v.

United States, 915 F.2d 683, 686 (Fed. Cir. 1990).

Here, following the court's remand request, Commerce determined that the

threshold phrase "wood mouldings and millwork products" refers to "products that

are manufactured from a type of wood or composite material and are woodwork or

building materials that are produced in a mill or otherwise undergo

remanufacturing." Remand Results at 10–11. Commerce's reading of the threshold

phrase does not expand the scope of the Order.

In accordance with section 351.225(k)(1), Commerce considered the plain language of the scope and utilized the primary and secondary factors and sources to interpret the plain language. See Remand Results at 11, 15–18; 19 C.F.R. § 351.225(k)(1).

> Specifically, Commerce considered petitioner's statement that
>
> [w]ood mouldings and millwork products are manufactured from softwood, hardwood, laminated veneer lumber, or some combination of wood and composite materials, and are woodwork or building materials that are produced in a mill or otherwise undergo remanufacturing.

Remand Results at 11 (citing Letter on Behalf of the Coalition of American Millwork Producers to Dep't of Commerce and Int'l Trade Comm'n re: Petitions for the Imposition of Antidumping and Countervailing Duties at 6 (Jan. 7, 2020) (Public Version) ("Petition"). Commerce also referenced the preliminary scope decision memorandum from the underlying investigation where Commerce agreed with petitioner that WMMP are "clearly described as products that are manufactured from softwood, hardwood . . . and are woodwork or building materials that are produced in a mill or otherwise undergo remanufacturing." Remand Results at 11 (citing Wood Mouldings and Millwork Products from the People's Republic of China: Preliminary Scope Decision Memorandum at 8–9, A-351-853, A-570-117, C-570-118 (Aug. 5, 2020) ("PDM")). Commerce further found that the ITC's description of WMMP supported Commerce's reading of the PDM. Remand Results at 20–21.

Commerce then considered whether Hardware Resources' merchandise met the threshold phrase's requirements. See id. at 11. Commerce examined Hardware

Resources' Scope Ruling Application, in which Hardware Resources "stated that its edge-glued boards are made of wood and that such wood undergoes remanufacturing into edge-glued boards" and found that "Hardware Resources' edge-glued boards fall within the meaning of the scope language 'wood mouldings and millwork products.'" Id. at 11–12 (citing Scope Ruling Application from Mowry & Grimson PLLC to Secretary of Commerce Pertaining to Hardware Resources Scope Ruling Application, P.R. 1, at 11 (Mar. 9, 2023) ("Scope Ruling Application")).

The (k)(1) sources thus support Commerce's interpretation of the threshold phrase and Commerce acted reasonably by relying on those sources. Commerce appropriately applied its interpretation of the threshold phrase to Hardware Resources' merchandise.

Hardware Resources incorrectly states that Commerce did not sufficiently support its conclusion after Hardware Resources commented concerns regarding Commerce's Draft Remand Results. See Hardware Br. at 4–5 (citations omitted). On February 26, 2025, Hardware Resources made the same arguments to Commerce as it does here – that Commerce did not properly give meaning to the threshold phrase and unlawfully expanded the scope of the Orders. See id. at 14.

In its Remand Results, Commerce disagreed with Hardware Resources stating that Commerce

> addressed the threshold question by first interpreting the scope phrase "wood mouldings and millwork products" in the context of the scope description considering (k)(1) sources and then determining whether the product at issue falls within that interpretation. Specifically, because the scope language does not include a definition of the scope phrase "wood mouldings and millwork products," Commerce has considered

[(k)(1) sources], including descriptions of the merchandise by the petitioner in the petition and adopted by Commerce in the preliminary scope decision memorandum of the underlying investigations upon its consideration of the petition, petition supplements, comments, and the ITC's preliminary determination.

Remand Results at 15–16 (citations omitted).

Commerce did not merely, and without support, disagree with Hardware Resources; rather, Commerce explained how it used the guiding regulation to provide the requisite scope meaning. See Remand Results at 15–16.

Hardware Resources cites Peer Bearing Co. and Maclean Power, L.L.C. v. United States as examples in which Commerce acted unreasonably by expanding the scope after an order went into effect. 986 F. Supp. 2d 1389 (CIT 2014); 359 F. Supp. 3d 1367 (CIT 2019). These cases are inapposite. This court concluded that Commerce erred in Peer Bearing Co. when it included merchandise completed and assembled in a third country within the scope of an order without invoking a circumvention inquiry. 686 F. Supp. 2d at 1399, 1403 (referencing 19 U.S.C. § 1677j(b)(1)). Given the third country assembly and completion, this court explained that the plain language of the order did not support Commerce's decision. Id. at 1400–03. Here, by contrast, as explained above, the record supports Commerce's interpretation of the scope language, and factual questions regarding third country assembly and completion are irrelevant. See Remand Results at 11. Similarly irrelevant is Hardware Resources' reliance on Maclean Power, in which this court reviewed Commerce's "mixed media analysis outlined in Mid Continent Nail Corp. v. United States, 725 F.3d 1295 (Fed. Cir. 2013)." 359 F. Supp. 3d at

1370.  The dissimilar conclusion reached there is not instructive to Commerce's

conclusions in the present case because of the distinct factual record and legal

framework.

Finally, Hardware Resources' argument that Commerce unlawfully expanded

the scope because its interpretation can apply to "an infinite universe of products,"

fails to recognize that Commerce's interpretation relates to the scope description's

*threshold* phrase.  Hardware Br. at 4; see Hardware Resources I, 744 F. Supp. 3d at

1366.  The scope language limits in-scope merchandise to "wood mouldings and

millwork product *that*," which is an umbrella phrase intended to include many

products.  Hardware Resources I, 744 F. Supp. 3d at 1366 (emphasis added).  The

threshold phrase is followed by several qualifiers, such as "made of wood" and

"continuously shaped."  Final Scope Ruling at 2–4.  So, Commerce did not

unlawfully expand the scope to include any and all wood products, as Hardware

Resources contends.  The additional specifications contained in the language that

follows the threshold phrase do not permit such a broad application as to allow for

"an infinite universe of products" to be placed within the scope.  See Hardware Br.

at 4.

### (B)  Commerce's reliance on language previously removed from the scope description was reasonable

Hardware Resources argues that after remand Commerce cannot lawfully

"add back in . . . language through its overly broad new definition" that was

expressly removed during Commerce's original investigation.  Id. at 7–10 (citing

Columbia Forest Prods. v. United States, 399 F. Supp. 3d 1283, 1291–94 (CIT 2019);

Vietnam Finewood Co. v. United States, 633 F. Supp. 3d 1243, 1257–59 (CIT 2023)).

Hardware Resources explains that petitioner previously eliminated the phrase:

"woodwork or building materials that are produced in a mill or otherwise undergo

remanufacturing" from the draft scope language.  Hardware Br. at 9.  This deletion,

according to Hardware Resources, indicates that "the only reasonable interpretation

is that the scope was not so broad as to cover *any* woodwork 'produced in a mill.'"

Id. at 9.  Further, Hardware Resources argues that Commerce's justifications for

relying on previously deleted language "are entirely speculative and have no basis

in the record."  Id. at 10 (noting that here, Hardware Resources refers to

Commerce's response to Hardware Resources' comments after the Draft Remand

Results).

The Government argues that "Commerce explained [the deletion] was not

dispositive of the meaning of 'wood moulding or millwork products,' when multiple

inferences could be drawn from the petitioner's removal of this language from the

scope."  Gov. Br. at 9 (citing Remand Results at 17, 20–21).  Instead, what matters

is that the (k)(1) sources Commerce used to interpret the threshold phrase "clearly

described" Commerce's interpretation.  Id. at 16.

Prior to the initiation of the original investigations, petitioner removed the

language "woodwork or building materials that are produced in a mill or otherwise

undergo remanufacturing" from the scope.  Remand Results at 17.  In the Remand

Results, Commerce interpreted the threshold phrase as "products that are

manufactured from a type of wood or composite material and are woodwork or

building materials that are produced in a mill or otherwise undergo remanufacturing." Remand Results at 11. Commerce "agree[d] that the language . . . was removed from the scope by the petitioner in the early stages," but "[t]o the extent that Hardware Resources suggests that the language was removed for a particular reason, it failed to cite any information supporting such a proposition." Remand Results at 17. Commerce then explained that a petitioner can remove language during the investigation to, for example, avoid "unnecessary or redundant" language, or "to avoid issues of circumvention or evasion." Id.

The mere fact that Commerce used language once included and then removed from petitioner's scope description does not, by itself, render Commerce's actions unsupported by substantial evidence. As explained above, Commerce reasonably applied the relevant guidance when it interpreted the undefined scope language. See 19 C.F.R. § 351.225(k)(1). Just because petitioner eliminated the phrase does not mean there is "only" one "reasonable interpretation" for the removal, as Hardware Resources' argues. Hardware Br. at 8–9.

Hardware Resources relies on Columbia Forest Prods. and Vietnam Finewood Co. to support its argument that Commerce cannot lawfully rely on a phrase previously removed by petitioner. Hardware Br. at 9–10 (citing 399 F. Supp. 3d at 1291–94; 633 F. Supp. 3d at 1257–59). These cases are inapposite.

Hardware Resources provides Columbia Forest Prods. as an example of when this court "declin[ed] to expand the scope to cover a product that was considered but not ultimately added to the scope language." Hardware Br. at 10 (citing 399 F.

Supp. 3d at 1291–94). However, <u>Columbia Forest Prods.</u> is inapplicable. There,

this court answered whether the Orders that define specific merchandise exclude

certain merchandise such that a minor alterations inquiry would be unnecessary in

the case of an anti-circumvention determination. <u>Columbia Forest Prods.</u>, 399 F.

Supp. 3d at 1292. Here, by contrast, Hardware Resources does not ask the court to

contemplate a minor alterations inquiry. Additionally, in <u>Columbia Forest Prods.</u>,

"Commerce understood, throughout the investigation, that both Petitioners' intent

and the plain language of the scope preclude coverage of [certain merchandise]." <u>Id.</u>

at 1292–93. Here, petitioners make clear that Hardware Resources' merchandise is

intended to fall within the scope. <u>Final Scope Ruling</u> at 5–6 (citing Petitioner's

Comments on <u>PDM</u> at 3).

Hardware Resources also improperly relies on <u>Vietnam Finewood Co.</u>, which

it references as an example of Commerce "declining to uphold Commerce's scope

definition when it selectively included language that was ultimately deleted from

the scope language." Hardware Br. at 10 (citing 633 F. Supp. 3d 1243). <u>Vietnam</u>

<u>Finewood Co.</u> does not stand for the proposition that Commerce cannot lawfully rely

on previously deleted scope language. <u>See generally</u> 633 F. Supp. 3d 1243. In

<u>Vietnam Finewood Co.</u>, Commerce concluded that orders on certain hardwood

plywood products from China excluded the two-ply panels at issue in the scope

ruling and remanded to Commerce to issue a scope ruling that "is consistent" with

the orders excluding such two-ply panels. <u>Id.</u> at 1265. Commerce had relied on

revisions of the proposed scope language prior to initiation of the investigations to

decide that "certain veneered panels" in the scope language included two-ply panels.
Id. at 1252–53. This court, however, concluded that "the record of this proceeding
contains *no information* relating to why the reference to veneer core platforms was
removed from the scope and certain veneered panels was added" and thus,
Commerce improperly "f[ound] an equivalence between veneer core platforms and
certain veneered panels." Id. at 1258. Additionally, this court explained that the
proposed scope language by petitioner specified including only products consisting
of three or more layers. See id. at 1257–58 (noting that petitioner had explained
that in-scope merchandise should have "two or more layers or plies of wood veneers
in combination with a core"). Commerce's reliance on previously deleted scope
language was unsupported by the record, including the reasons for which such
language was deleted and petitioner's intent to exclude two-ply panels. Id. at 1257.
Here, the Petition and the PDM support Commerce's interpretation of the threshold
phrase. See Remand Results at 11 (citing Petition at 6; PDM at 8–9).

(C) **Commerce acted reasonably when it did not read an end-use requirement into the scope**

In Hardware Resources I, the court did not reach Hardware Resources'
contention that Commerce must limit in-scope merchandise based on end-use;
meaning, products subject to the Orders must enter as, or be intended for further
manufacturing into, a moulding or millwork product. See generally Hardware
Resources I, 744 F. Supp. 3d 1358. After remand, Hardware Resources argues that
"the issue of end-use is relevant" in reviewing Commerce's interpretation of the

threshold phrase. Hardware Br. at 15.[3] Hardware Resources argues that because its product becomes a cabinet part after importation, and not what Hardware Resources considers a moulding or millwork product, it should not be subject to the Orders. Id. at 21. The court will thus consider Hardware Resources' arguments regarding "inherent end-use" from Hardware Resources I.

In Hardware Resources I, Hardware Resources argues that because the phrase "moulding and millwork products" is inherently end-use based, Hardware Resources' products cannot be subject to the Orders. Pl. Mot. for J. on the Agency R., ECF No. 46, at 21–23 ("Hardware I Br."). The Government disagrees, responding that "Hardware [Resources] is wrong in arguing that 'the definition of 'wood mouldings [or] millwork products' is inherently end-use based," Def. Resp. in Opp'n to Pl. Mot. for J. on the Agency R., ECF No. 32, at 15 ("Gov. I Br.") (citing Hardware I Br. at 23), and that Commerce properly explained that it does not make scope decisions based on end-use absent clear exclusionary language. Id. (citing King Supply Co., LLC v. United States, 674 F.3d 1343, 1348 (Fed. Cir. 2012)). Here, the Government states, there is no exclusionary language in the scope description. Gov. I Br. at 15–16 (citing Final Scope Ruling at 10).

Hardware Resources contends that when interpreting the threshold phrase on remand, Commerce cherry-picked language from (k)(1) sources while "simultaneously ignoring substantial record evidence that [wood moulding or

---

[3] Hardware Resources "incorporates by reference its arguments relating to [inherent] end use from its direct and response briefs [in Hardware Resources I]." Hardware Br. at 15 (citing Hardware I Br. at 22–23 and Hardware Resources I Reply Br. at 5–9).

millwork product] is inherently defined by end use."  Hardware Br. at 12.  The (k)(1)

sources include the Petition, ITC investigation, and a previous Commerce

determination.  Id.; see also 19 C.F.R. § 351.225(k)(1).  Commerce did not

unreasonably "cherry-pick" from these sources, as Hardware Resources suggests.

See Hardware Br. at 6.  Commerce's reading of the threshold phrase as to not

include an end-use requirement is supported by substantial evidence.

The Federal Circuit in King Supply instructs that "when an end-use

requirement applies to a scope, Commerce must use express end-use terms in the

language of the scope and the exclusionary language must leave no reasonable

doubt that the products were intended to be out of scope."  674 F.3d at 1348

("[W]hen Commerce intends to impose end-use restrictions, Commerce consistently

uses express terms such as 'only' or 'solely' to indicate restrictions on end uses for

certain products.")

The opening line of the Order requires that "the merchandise subject to this

investigation consists of wood mouldings and millwork products that are made of

wood."  Final Scope Ruling at 2.  The next paragraph of the Order reads "[t]he

covered products include, but are not limited to, the following: interior and exterior

door frames . . . base mouldings, casing, trim, panel strips . . ." and provides for

exclusions like "exterior fencing."  Id. at 2–3.

The scope does not include the exclusionary language that King Supply

requires. 674 F.3d at 1348 (citations omitted).  Hardware Resources argues that

despite missing the requisite exclusionary language, "the definition of 'wood

mouldings [or] millwork products' is inherently end-use based." Hardware I Br. at 22–23. Specifically, "the opening sentence [of the scope] first requires that merchandise be a moulding or millwork product and only then goes on to clarify what kinds of moulding or millwork products are subject to the Orders based on physical characteristics." Id. In Hardware Resources I, this court agreed with Hardware Resources that the scope's threshold phrase must be given meaning but remanded to Commerce to apply the proper interpretive guidance to determine what the threshold phrase means. 744 F. Supp. 3d. at 1366. Commerce, in turn, analyzed the threshold phrase and concluded that the phrase did not incorporate an end-use requirement. See Remand Results at 10–11.

In response to Commerce's Remand Results, Hardware Resources first argues petitioner intended for the scope to include an end-use requirement, and that Commerce unlawfully ignored statements by petitioner demonstrating such intent. Hardware Br. at 13–14 (citing Petition at 6–7). Specifically, Hardware Resources contends that language from the Petition guides the Orders to limit in-scope merchandise to "wood for use in functional and decorative applications in residential and non-residential construction and blanks that were later machined or moulded into a final profile." Id. at 14. Hardware Resources pointed out such petitioner language to Commerce in response to Commerce's Draft Remand Results. Remand Results at 14. In the Remand Results, Commerce explained that petitioner's statement to which Hardware Resources referred came from the "Technical Characteristics and Uses" section of the Petition. Id. at 22. Hardware

Resources argues Commerce's explanation is unreasonable because Commerce *did* use language from the "Technical Characteristics and Uses" section of the Petition to interpret the threshold phrase. Hardware Br. at 14 (citing Remand Results at 22) ("Commerce failed to justify why it is appropriate for it to select one sentence from the same section, while ignoring the rest of that section")).

The Government argues Commerce properly explained that such end-use language in the Petition provides illustrative examples of product use, which is a requirement for all petition filings. Gov. Br. at 10 (citing Remand Results at 22). The Government further contends that Commerce's reliance on the "Technical Characteristics and Uses" section of the Petition to interpret the threshold phrase was not inconsistent. Gov. Br. at 21 ("[T]he language in Commerce's interpretation [of the threshold phrase] 'clearly described' wood mouldings and millwork products . . . [b]y contrast, the listed examples of uses did not establish the end-use restriction requested by Hardware Resources" (citing PDM at 8, 16–18)).

Commerce did not, as Hardware Resources argues, "fail[] to justify," its choice to use language from the "Technical Characteristics and Uses" section of the Petition to interpret the threshold phrase. See Hardware Br. at 14. Commerce responded to Hardware Resources' comment concerning its use of this section and provided reasonable justification for its conclusion that petitioner's language only provided examples of product use. Commerce explained that the language Hardware Resources cites to is part of the Petition section in which the "end-use descriptions are examples of purposes for which the products within the scope could

be used, and is a requirement under 19 CFR 351.202(b)(5) for all petition filings."

Remand Results at 22 (citing 19 C.F.R. § 351.202(b)(5)). "As such," Commerce

stated, "we do not find it sufficient that such record evidence, which is required in

every filed petition, is indicative of defining the scope on end use." Id. Commerce

explained that the Petition's language did not meet King Supply's requirement that

"Commerce must use express end-use terms in the language of the scope and the

exclusionary language must leave no reasonable doubt that the products were

intended to be out of scope." Id. Thus, Commerce responded to Hardware

Resources and explained its interpretation. The mere fact that petitioner provided

examples of end-uses in the "Technical Characteristics and Uses" section of the

Petition does not overcome the requirement from King Supply that the scope

language must be explicit about any exclusions that are based on end-use.

Second, Hardware Resources argues Commerce ignored language from the

original ITC proceeding that would "undercut its result." Hardware Br. at 17.

Hardware Resources contends that the underlying investigation and industry

witnesses before the ITC provide support that the threshold phrase should include

an end-use requirement. Id. at 17–18. For example, Hardware Resources points to

the ITC's statement that WMMP are used "in a wide variety of functional and

decorative applications," id. (citing ITC Report at 8, I-12), noting that "Commerce

has not cited to any record evidence that the ITC considered products like

Hardware Resources' edge-glued boards . . . within . . . [WMMP]." Id. at 19.

According to Hardware Resources, "Commerce may not selectively adopt certain

language that supports its position, while ignoring the substantial evidence that contradicts it." Id. at 17 (citing Star Pipe Prods. v. United States, 365 F. Supp. 3d 1277, 1284, 1286 (CIT 2019)).

The Government argues that Hardware Resources misunderstands Commerce's and the ITC's role in AD/CVD investigations because Commerce defines the scope of the merchandise subject to the investigation, whereas the ITC defines the domestic like product and decides the question of material injury. See Gov. Br. at 24. Thus, the exemplary uses of subject merchandise in the ITC Report identified by Hardware Resources do not impose end-use restrictions in the scope language. Gov. Br. at 23 (citing Hardware Br. at 17–18).

Hardware Resources commented that Commerce's Draft Remand Results "ignore ample evidence from the [ITC] investigation phase." Remand Results at 23 (citing Hardware Br. at 17–18). In response, the Government explained that Commerce "defines the scope of the merchandise subject to an investigation with deference to the petitioner, and the ITC defines the domestic like product." Gov. Br. at 24. Further, Commerce examined the ITC language and explained that the ITC provides many examples of wood moulding and millwork product. Commerce emphasized that the ITC Report stated it is "not feasible to discuss them (the uses) all," thereby not restricting the in-scope merchandise by specific end-use. Remand Results at 23–24 (citing ITC Report at I-12 n.20). Commerce also explained that the ITC statements support a broader view of in-scope merchandise than Hardware Resources puts forth, pointing out that the ITC stated that "millwork" "is a general

term referring to woodwork that is produced in a mill." Id. at 24–25. Commerce

summarized,

> the scope at issue contains no express end-use requirement, and,
> therefore, Commerce cannot read into the scope an end-use requirement
> on the basis of the ITC's non-exhaustive "outline of the possible products
> classified as millwork and mouldings," in its domestic industry injury
> determination.

Remand Results at 25–26. Thus, Commerce's interpretation of the ITC's exemplary

uses for WMMP is reasonable and its reference to the ITC is supported by

substantial evidence. Commerce considered Hardware Resources' argument,

responded to it in the Remand Results, and reasonably viewed a non-exhaustive list

of examples as illustrative rather than instructive of end-use.

Additionally, Commerce references Hardware Resources' merchandise

description from its Scope Ruling Application that "the edge-glued boards will be

further processed into cabinet parts by Hardware Resources, though they could be

used in other applications." Remand Results at 26 (citing Scope Ruling Application

at 7). Commerce explained that such description of the merchandise is consistent

with the ITC report that

> [WMMP] are "wood-constructed products used mainly in residential and
> non-residential buildings . . . for both interior and exterior applications."
> As such, we find the ITC report does not detract from either our
> interpretation of the scope phrase "[WMMP]" or our determination that
> Hardware Resources' edge-glued boards fall within the scope.

Id. Hardware Resources' description of its merchandise, considered by

Commerce, also undercuts its end-use argument given that the merchandise

can be "used in other applications." Scope Ruling Application at 7.

Third, Hardware Resources argues that Commerce's interpretation of the scope language "ignored" and "is wholly at odds" with its previous scope determination in Mem. from Max Goldman to James Maeder Re: Req. by Loveday Lumber Company, Inc., P.R. 3, Ex. 10, at 9 (May 16, 2022) ("Loveday Scope Ruling or Loveday." Hardware Br. at 21. Hardware Resources, in its comments on Commerce's Draft Remand Results, argued that Commerce "fail[s] to provide any reasonable support for Commerce's departure from its determination in the Loveday Scope Ruling that an item is not covered by the scope of WMMP case where it is not intended to be later manufactured into a moulding or millwork product." Hardware I Br. at 15. In its briefing before the court, Hardware Resources asserts that Loveday "unequivocally affirms that the intended use of the product governs whether that product is subject to [these Orders]." Hardware Br. at 21–22. In response, the Government argues that Commerce properly considered Loveday, and Hardware Resources misunderstands Loveday. Gov. Br. at 26–27.

Contrary to Hardware Resources' arguments, Commerce considered the Loveday Scope Ruling and explained its "departure" from that determination. Commerce explained that Loveday Lumber's products are physically different from Hardware Resources'. Remand Results at 27–29 (citing Loveday Scope Ruling at 9). Commerce determined that Loveday Lumber's product was not a "moulding or millwork blank," and had to consider if it was a "blank." Id. at 27–28. Here, Commerce examined whether Hardware Resources' merchandise was a "moulding or millwork product" that is "made of wood," "finger jointed," and "continuously

shaped." See generally Final Scope Ruling. Next, the petitioner in Loveday put forward a definition of the term "blank," which was a term in contention. Loveday Scope Ruling at 9. "Blank" is not in contention here. In distinguishing the Loveday Scope Ruling from the present case, Commerce explained "[t]he information before Commerce regarding 'moulding and millwork blanks' supported Commerce's conclusion in Loveday," and Commerce's "interpretation of 'wood moulding and millwork products' is not inconsistent with Loveday as our review of the (k)(1) sources did not indicate that the scope phrase carries an express end-use restriction." Remand Results at 28. Thus, the court concludes that Commerce reasonably considered the Loveday Scope Ruling and distinguished it from the present case.

## II.    Commerce acted reasonably in determining that Hardware Resources' product is continuously shaped

### (A)    Hardware Resources' product is grooved

Both Hardware Resources and the Government agree that according to the Harmonized Tariff Schedule of the United States ("HTSUS"), if a product has a "groove," that "groove" can provide the "continuous shaping" required by the scope of the Orders. Hardware Br. at 25; Gov. Br. at 29–30. Where there is disagreement, however, is whether Commerce reasonably concluded that Hardware Resources' edge-glued boards are "grooved" to satisfy the scope's "continuous shaping" requirement. Hardware Br. at 25–26; Gov. Br. at 31.

Hardware Resources argues that Commerce erred in deciding that its edge-glued boards are "groove[d]" for two reasons: because "the mark is added as a

temporary guide for where the groove is to be added *after importation*," and

Commerce unreasonably relied on an out-of-context definition of a "dado" by

petitioner. Hardware Br. at 25–27.[4] Hardware Resources contends that Commerce

did not address either of these arguments in the Remand Results. Id. at 26.[5]

The Government responds that Commerce reasonably relied on petitioner's

description of a "groove," despite the description being from petitioner's "dado"

definition. Gov. Br. at 29–30. Such a description applies broadly and does "'not

change depending on the context.'" Gov. Br. at 30 (citing Remand Results at 30).

When imported into the United States, Hardware Resources' edge-glued

boards have "a small mark ('score') of approximately 1 mm . . . added by a straight

saw along the length of the one side of the board." Scope Ruling Application at 4.

Hardware Resources described the mark as a "guide" to determine which side of the

board will have a groove "*added after import.*" Id. at 7. The edge-glued boards also

have corners that are "lightly sanded . . . to 1/16 of an inch" and are "planed to 5/8

inches thick." Id. at 7, 9[6].

---

[4] In the original investigations, petitioner described the term "endwork/dado" as "a slot or trench cut into the surface of a piece of machinable material, usually wood . . . , A dado is cut across, or perpendicular to, the grain and is thus differentiated from a groove which is cut with, or parallel to the grain." Scope Ruling Application, at 5, Ex. 9.

[5] Hardware Resources also argues that "cut" and "mark" are not listed as examples of continuous shaping in the HTSUS. Hardware I Br. at 30–31. That Hardware Resources describes the indentation in its edge-glued board as a "mark" does not undermine Commerce's conclusion, based on (k)(1) sources, that the indentation at issue here constitutes "continuous shaping." See Remand Results at 30 ("Given the information before us, we continue to determine that the 1 mm cut or mark, as described by Hardware Resources, is different from a 'groove' in name only, rather than any physical characteristic").

[6] Commerce also references Hardware Resources' description that its boards are "planed to 5/8 inches thick," and "sanded to smooth the corners to 1/16 of an inch." Remand Results at 31 (citing Scope Ruling Application at Ex. 3a). "Both planing, a form of surfacing, and sanding to smooth corners' are characteristics which constitute 'continuously shaping' based on (k)(1) sources." Id. Commerce not only considered the mark along the edge, but also the planing and sanding. Given

In its <u>Final Scope Ruling</u>, Commerce determined that Hardware Resources'
edge-glued boards are within the scope of the Orders.  <u>Final Scope Ruling</u> at 8.
Commerce reasonably relied on language from the Petition, which cited to the
HTSUS, to determine that "continuously shaped wood" includes wood boards that
have a "groove."  <u>Id.</u> at 8–9.

Commerce considered Hardware Resources' description of the edge-glued
boards at the time of importation as having a "small mark" on one side of the board.
<u>See</u> Remand Results at 8; <u>Scope Ruling Application</u> at 4, Ex. 1.  Commerce found no
material difference between the subject merchandise's score and a "groove."
Remand Results at 29–30.  Commerce referenced petitioner's definition of a "groove"
in the context of petitioner defining "endwork/dados" as a "cut with or parallel to the
grain."  <u>Id.</u>

In response to Hardware Resources' argument that petitioner's definition of a
"groove" was taken out of context and unreasonably applied here, Commerce
acknowledged that the description was not a "technical specification for 'groove'"
and was, as Hardware Resources pointed out, part of about a discussion regarding
"endwork/dados."  <u>Id.</u> at 29–30.  Commerce explained that the context in which the
term "groove" was described does not change how that description applies to
"groove" generally.  <u>Id.</u>

---

that Commerce reasonably concluded the mark along the merchandise's edge constitutes the
requisite continuous shaping under the scope definition, the court does not address whether this
additional factor supports Commerce's ultimate conclusion regarding the Hardware Resources'
merchandise.

Further, Hardware Resources' argument that the score is not a "groove" because of the temporary nature of the mark does little to undermine Commerce's conclusion that the mark is a "groove," which Commerce reasonably explained in the Remand Results. Remand Results at 13, 29–30. Commerce's determination that Hardware Resources' merchandise is continuously shaped due to the mark along its edge is supported by substantial evidence.

### (B) Commerce's determination was not inconsistent with Loveday

Hardware Resources argues that Commerce's scope ruling in Loveday is inconsistent with its "continuously shaped" determination here. In Loveday, because "wood products [were] produced with a straight saw rather than moulder or radial saw," Commerce concluded that the wood products were not continuously shaped. Loveday at 9. Hardware Resources contends that its product is similarly cut with a straight saw and, thus, should not be considered continuously shaped, like the product in Loveday. Hardware I Br. at 32–33.

The Government argues that Commerce properly considered and reasonably differentiated Loveday from Hardware Resources. Gov. Br. at 26–27; see Remand Results at 27–28.

In the Final Scope Ruling, Commerce examined Loveday and explained that

> although a similar straight saw is used, the saw is used to make a groove that creates a product that is indistinguishable from a millwork product at time of entry. Additionally . . . the type of saw was relevant to the determination made in the Loveday Lumber Scope.

Final Scope Ruling at 9.

In the Remand Results, Commerce distinguished Hardware Resources'
edge-glued boards from the Loveday merchandise by explaining that Hardware
Resources' boards are cut with a straight saw to make a "groove," thereby
demonstrating that unlike Loveday's "rough sawn and straight cut product," the
subject merchandise here has "a fine detail along the length of the board."  Remand
Results at 28.  Commerce reasonably considered Loveday and distinguished the
product under review in that ruling from Hardware Resources' edge-glued boards,
which are not "rough and unfinished."  See id. (citing Scope Ruling Application at 4,
9, 10).  Commerce reasonably explained that the type of saw was relevant in
Loveday, and thus it became one of the factors that Commerce relied on to
determine if the merchandise was continuously shaped; here, the type of saw was
not relevant.  Final Scope Ruling at 9.  Commerce also properly responded to
interested party comments in the Final Scope Ruling and Remand Results.  See
Final Scope Ruling at 9; see Remand Results at 27–28.

III.    Commerce acted reasonably when it determined that Hardware Resources'
        product's UV coating does not remove it from the scope

Hardware Resources contends the UV coating is a "critical differentiating
factor" that "disqualifies the use of Hardware Resources' edge-glued boards from
being used as millwork or mouldings."  Hardware I Br. at 35–37.  Hardware
Resources notes that the UV coating is distinguishable from the coating described
in the scope language because, unlike the other coating materials that are included
within the scope, "Hardware Resource's edge-glued boards cannot be used in
decorative or functional applications listed in the Petition and other sources

gathered during the investigation because they have a UV coating that prevents them for being further painted or stained in the way that wood mouldings and millwork are." Id. at 25.  The Government disagrees with Hardware Resources and asserts that the UV coating actually "squarely places [the boards] within the scope of the Orders." Gov. Br. at 30.

The scope states that products, like edge-glued wood, are "covered by the scope whether imported raw, coated (e.g., gesso, polymer, or plastic), primed, painted, stained, wrapped (paper or vinyl overlay), any combination of the aforementioned surface coatings, treated, or which incorporate rot-resistant elements (whether wood or composite)." Final Scope Ruling at 2.  Thus, a product with a UV coating remains in scope.  The court concludes that Commerce, after considering the plain language of the scope and the (k)(1) sources, reasonably determined that the scope does not carry an end-use requirement and thus reasonably rejected Hardware Resources' argument that a UV coating signifies that its product cannot be used in the way in-scope merchandise can.

## CONCLUSION

For the foregoing reasons, Commerce's remand redetermination, ECF No. 53, is sustained.  Judgment will be entered accordingly.

/s/     Joseph A. Laroski, Jr.
Joseph A. Laroski, Jr., Judge

Dated: April 21, 2026
         New York, New York